FILED

10 JUL -6 PH 12: 53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

1  David Caravantes, Pro Se
2  5189 Argonne Court
   San Diego, California 92117
3  Telephone: 858-490-1331
   Facsimile:  858-490-9191
4  E-Mail: dave@detomasenergy.com

8            IN THE UNITED STATES DISTRICT COURT

9         OF THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CARAVANTES, an individual, | CASE NO: **10 CV 1407 IEG   AJB** |
| Plaintiff, pro se, | VERIFIED COMPLAINT FOR: |
| v. | 1. TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF; |
| CALIFORNIA RECONVEYANCE COMPANY, a California corporation; WASHINGTON MUTUAL BANK, FA, a Federal Savings Bank organized and existing under the laws of the United States; JPMORGAN CHASE BANK, N.A., a National Banking Association organized and existing under the laws of the United States; CHASE HOME FINANCE LLC, a Delaware Limited Liability Company; VREJ JOUKADARIAN, an individual; CLEMENT J. DURKIN, an individual; DEBORAH BRIGNAC, an individual; ANN THORN, an individual; and DOES 1-20, inclusive, | 2. VIOLATIONS OF TRUTH IN LENDING ACT (15 U.S.C. §§ 1601 *et seq.*); 3. VIOLATIONS OF RESPA(12 U.S.C. §§ 2605 *et seq.*); 4. VIOLATIONS OF HOEPA (15 U.S.C. § 1639; 12 C.F.R. §§ 226.32 *et seq.*); 5. VIOLATIONS OF CALIFORNIA ROSENTHAL ACT (CAL. CIV. C. §§ 1788 *et seq.*; 6. SLANDER OF TITLE (x2) 7. CIVIL CONSPIRACY; |
| Defendants. | 8. UNFAIR BUSINESS PRACTICES (CAL. BUS. & P. CODE §§ 17200); 9. VIOLATION OF RICO (x4); 10. VIOLATION OF CAL. CIV. C. § 2923.5; 11. VIOLATION OF CAL. CIV. C. § 2923.54; 12. VIOLATION OF CAL. COMM. CODE §§ 3301 *et seq.*; 13. BREACH OF FIDUCIARY DUTY. |
| | DEMAND FOR JURY TRIAL |

PLAINTIFF'S VERIFIED COMPLAINT

1

Plaintiff DAVID CARAVANTES (hereinafter referred to as "Plaintiff"), representing himself pro se, for his Verified Complaint (hereinafter "Complaint") against Defendants CALIFORNIA RECONVEYANCE COMPANY (hereinafter "CRC"), a California corporation, WASHINGTON MUTUAL BANK, FA (hereinafter "WaMu"), a Federal Savings Bank organized and existing under the laws of the United States, JPMORGAN CHASE BANK, N.A. (hereinafter "JPMorgan"), National Banking Association organized and existing under the laws of the United States, CHASE HOME FINANCE LLC (hereinafter "Chase Home Finance"), a Delaware limited liability company, VREJ JOUKADARIAN (hereinafter "Joukadarian"), an individual, CLEMENT J. DURKIN (hereinafter "Durkin"), an individual, DEBORAH BRIGNAC (hereinafter "Brignac"), an individual, ANN THORN (hereinafter "Thorn"), an individual, and DOES 1-20, inclusive, pleads as follows:

## JURISDICTION AND VENUE

1. Plaintiff's claims against Defendants include violations of federal statutes commonly known as TILA, RESPA, HOEPA, and RICO, with additional claims under California state law. These claims all arise out of the same controversy and sequence of events.

2. The real property which is the subject of this Complaint is located within the County of San Diego, State of California.

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367, 15 U.S.C. §§ 1601 *et seq.*, 15 U.S.C. § 1639, 12 U.S.C. §§ 2601 *et seq.*, and 18 U.S.C. §§ 1961 *et seq.*

4. Venue is proper in the Southern District of California under 28 U.S.C. § 1391(b)(2), as it is the judicial district in which a substantial part of the events giving rise to the claim occurred, and all of the property that is the subject of the action is situated in this district.

## THE PARTIES

5. Plaintiff is, and at all times herein mentioned was, an individual residing in the State of California, County of San Diego. He is, and at all times herein mentioned was, the owner and resident of the real property that is the subject of this Complaint, the location of which is commonly known as 5189 Argonne Court, San Diego, California, 92117 (hereinafter the

1   "Property").

2       6.    Plaintiff is informed and believes and thereon alleges that at all times herein

3   mentioned in this Complaint, Defendant CRC was and is a California corporation, doing

4   business in San Diego County, California, in the business of the collection of consumer debts,

5   either on behalf of itself or others, and it is therefore under the authority of the California

6   Rosenthal Act ("Rosenthal Act"), California Civil Code §§ 1788 *et seq*.  On information and

7   belief, Plaintiff further alleges that Defendant CRC provides other real estate services that may

8   be regulated by RESPA, TILA, the Rosenthal Act, or other state and/or federal statutes, the

9   specific extent and nature of which are unknown at this time, but which are subject to discovery

10  and with respect to which the specifics will be alleged by amendment to this Complaint when

11  ascertained.

12      7.    Plaintiff is informed and believes and thereon alleges that at all times herein

13  mentioned in this Complaint, Defendant WaMu was a Federal Savings Bank organized and

14  existing under the laws of the United States.  In or around September 2008, WaMu was closed

15  by the Office of Thrift Supervision and the FDIC named receiver.  At the time the subject loan

16  was transacted, WaMu conducted wholesale consumer loan operations in San Diego County,

17  California and was in the business of originating consumer credit transactions described in the

18  Federal Truth in Lending Act ("TILA") and in the business of being a "servicer" of "federally

19  related mortgage loans" as those terms are defined in the Real Estate Settlement Procedures Act

20  ("RESPA"), 12 U.S.C. §§ 2602(l) and 2605(i)(2).  Plaintiff is also informed and believes and

21  thereon alleges that at all times herein mentioned in this Complaint, Defendant WaMu was in the

22  business of home-equity lending governed by the Home Ownership and Equity Protection Act

23  ("HOEPA"), 15 U.S.C. § 1639 and 12 C.F.R. §§ 226.32 *et seq*.  Plaintiff is further informed and

24  believes and thereon alleges that Defendant WaMu was in the collection of consumer debts,

25  either on behalf of itself or others, and it is therefore under the authority of the California

26  Rosenthal Act ("Rosenthal Act"), California Civil Code §§ 1788 *et seq*.  Plaintiff is further

27  informed and believes and thereon alleges that at all times herein mentioned, Defendant WaMu

28  was in the business of providing "settlement services" with respect to "federally related

PLAINTIFF'S VERIFIED COMPLAINT

3

1   mortgage loans" as those terms are defined in RESPA, 12 U.S.C. §§ 2602(1) and (3).  On

2   information and belief, Plaintiff further alleges that Defendant WaMu provided other real estate

3   services that may be regulated by TILA, RESPA, HOEPA, the Rosenthal Act, or other state

4   and/or federal statutes, the specific extent and nature of which are unknown at this time, but

5   which are subject to discovery and with respect to which the specifics will be alleged by

6   amendment to this Complaint when ascertained.

7        8.    Plaintiff is informed and believes and thereon alleges that at all times herein

8   mentioned in this Complaint, Defendant JPMorgan was and is a National Banking Association

9   organized and existing under the laws of the United States, doing business in San Diego County,

10   California, in the business of originating consumer credit transactions described in the Federal

11   Truth in Lending Act ("TILA").  Plaintiff is also informed and believes and thereon alleges that

12   at all times herein mentioned in this Complaint, Defendant JPMorgan was and is in the business

13   of home-equity lending governed by the Home Ownership and Equity Protection Act

14   ("HOEPA"), 15 U.S.C. § 1639 and 12 C.F.R. §§ 226.32 et seq. Plaintiff is further informed and

15   believes and thereon alleges that at all times herein mentioned, Defendant JPMorgan was and is

16   in the business of being a "servicer" of "federally related mortgage loans" as those terms are

17   defined in the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602(l) and

18   2605(i)(2), and was and is in the collection of consumer debts, either on behalf of itself or others,

19   and it is therefore under the authority of the California Rosenthal Act ("Rosenthal Act"),

20   California Civil Code §§ 1788 et seq.  Plaintiff is further informed and believes and thereon

21   alleges that at all times herein mentioned, Defendant JPMorgan was and is in the business of

22   providing "settlement services" with respect to "federally related mortgage loans" as those terms

23   are defined in RESPA, 12 U.S.C. §§ 2602(1) and (3).  On information and belief, Plaintiff further

24   alleges that Defendant JPMorgan provides other real estate services that may be regulated by

25   RESPA, TILA, the Rosenthal Act, or other state and/or federal statutes, the specific extent and

26   nature of which are unknown at this time, but which are subject to discovery and with respect to

27   which the specifics will be alleged by amendment to this Complaint when ascertained.

28   JPMorgan assumed the assets and certain liabilities of Defendant WaMu after WaMu entered

PLAINTIFF'S VERIFIED COMPLAINT

1   receivership.

2        9.    Plaintiff is informed and believes and thereon alleges that at all times herein

3   mentioned in this Complaint, Defendant Chase Home Finance was a foreign limited liability

4   company organized and existing under the laws of Delaware and doing business in San Diego

5   County, California.  Plaintiff is further informed and believes and thereon alleges that at all times

6   herein mentioned, Defendant Chase Home Finance was and is in the business of being a

7   "servicer" of "federally related mortgage loans" as those terms are defined in the Real Estate

8   Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602(l) and 2605(i)(2), and was and is in

9   the collection of consumer debts, either on behalf of itself or others, and it is therefore under the

10  authority of the California Rosenthal Act ("Rosenthal Act"), California Civil Code §§ 1788 *et*

11  *seq*.  Plaintiff is further informed and believes and thereon alleges that at all times herein

12  mentioned, Defendant Chase Home Finance was and is in the business of providing "settlement

13  services" with respect to "federally related mortgage loans" as those terms are defined in

14  RESPA, 12 U.S.C. §§ 2602(1) and (3).  On information and belief, Plaintiff further alleges that

15  Defendant Chase Home Finance provides other real estate services that may be regulated by

16  RESPA, TILA, the Rosenthal Act, or other state and/or federal statutes, the specific extent and

17  nature of which are unknown at this time, but which are subject to discovery and with respect to

18  which the specifics will be alleged by amendment to this Complaint when ascertained.

19       10.    Plaintiff is informed and believes and thereon alleges that Defendant Joukadarian,

20  at all times herein mentioned in this Complaint, was an individual residing in the State of

21  California.

22       11.    Plaintiff is informed and believes and thereon alleges that Defendant Durkin, at

23  all times herein mention in this Complaint, was an individual residing in the State of Florida.

24       12.    Plaintiff is informed and believes and thereon alleges that Defendant Brignac, at

25  all times herein mentioned in this Complaint, was an individual residing in the State of

26  California.

27       13.    Plaintiff is informed and believes and thereon alleges that Defendant Thorn, at all

28  times herein mentioned in this Complaint, was an individual residing in the State of Florida.

PLAINTIFF'S VERIFIED COMPLAINT

14.     Plaintiff is ignorant of the true names and capacities of the defendants sued herein under the fictitious names Does 1 through 20, inclusive, and Plaintiff will amend this Complaint to allege such names and capacities as soon as they are ascertained.  Plaintiff is informed and believed and thereon alleges that each of said fictitiously named defendants is responsible in some manner for the acts complained of herein.

15.     Plaintiff is informed and believes and thereon alleges that Defendants and each of them at all times herein relevant were, and still are, agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

## REQUEST FOR INJUNCTIVE RELIEF

16.     Immediate injunctive relief is warranted in this action because Plaintiff is scheduled to lose his home pursuant to a trustee's sale that has been noticed for 10:00 a.m. on Tuesday, July 6, 2010.  However, Plaintiff contends that neither Defendant CRC nor Defendant JPMorgan is the person entitled to enforce the Note and foreclose on the Property, and that the Notice of Default and Notice of Sale, as described in the facts below and in the Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (the "Application"), are invalid, and that as a result of said invalidity, the Notice of Default and Notice of Sale should be rescinded and the trustee's sale prevented from taking place.  If injunctive relief is not immediately granted, Plaintiff will be deprived of his residence in and possession of his home before the Court has the opportunity to adjudicate the issues raised in this Complaint, and Plaintiff would be deprived of any adequate remedy, and thus irreparably harmed, for the wrongs committed by Defendants CRC, WaMu, JPMorgan and Chase Home Finance.

## FACTUAL BACKGROUND

17.     This case arises out of a loan and foreclosure related to the Property, of which Plaintiff is the rightful owner.

18.     Plaintiff became the owner of legal title to the Property on or about August 15, 2007.  He acquired the Property via a loan from Defendant WaMu.  The terms of the loan were memorialized in a promissory note ("the Note"), which was in turn secured by a Deed of Trust

PLAINTIFF'S VERIFIED COMPLAINT

1   on the Property.

2       19.    The Deed of Trust was recorded in San Diego County on August 27, 2007 as

3   instrument number 2007-0569430 ("Deed of Trust"). The Deed of Trust identified Defendant

4   WaMu as the lender and provided that payments were to be made to Defendant WaMu.

5   Defendant CRC was named as Trustee.

6       20.    When the loan was consummated, Plaintiff did not receive required documents

7   and disclosures, including, but not limited to, the Truth in Lending Disclosure statement

8   containing required material disclosures and the required number of copies of the Notice of Right

9   to Cancel containing the dates that the rescission period expires. Plaintiff is entitled to damages

10  for violations that occurred at the time of consummation of the loan transaction.

11      21.    Plaintiff's income decreased dramatically in or around 2008 when certain

12  information concerning Plaintiff was reported by the media. Said information irreparably

13  damaged Plaintiff's reputation in his field and led to his inability to work in said field. Plaintiff

14  has filed a separate, unrelated lawsuit concerning these damaging representations. Plaintiff has

15  been in and out of work since that point, and has not had consistent income, though his financial

16  situation has started to improve recently.

17      22.    In or around September 2008, as stated above, Defendant WaMu closed.

18  Subsequently, Defendant JPMorgan purchased the assets and certain liabilities of Defendant

19  WaMu. Plaintiff received a form letter stating that Defendant WaMu had become Defendant

20  JPMorgan. The letter did not state anything about whether or not Defendant JPMorgan had

21  become the beneficiary under the Deed of Trust. Plaintiff was never received notice of any

22  change in beneficiary. Plaintiff subsequently received statements from Defendant Chase Home

23  Finance, and Plaintiff directed payments to Defendant Chase Home Finance, assuming that

24  Defendant Chase Home Finance was the new servicer.

25      23.    In or around November 2009, Plaintiff received a letter from Chase Home

26  Ownership Preservation Office stating that many Americans are experiencing difficulty with

27  their mortgage payments, and that *if* Plaintiff was experiencing financial difficulty there were

28  some options available to him that would allegedly assist Plaintiff with making payments.

PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff subsequently received a few similar letters, with the most recent letter being dated June 8, 2010. None of these letters discussed Plaintiff's actual financial situation, but merely listed potential options and included forms for Plaintiff to complete and return with certain documentation such as pay stubs. The letters had the well-known "Chase" logo at the top, but did not specify if the Chase Home Ownership Preservation Office was part of Defendant Chase Home Finance or Defendant JPMorgan. Plaintiff was aware of other individuals who had attempted to use these options with other banks who had had extreme difficulty with the process, and was reluctant to exercise these options, instead remaining hopeful that his financial situation would improve and allow him to resume payment. A copy of the June 8, 2010 letter is attached hereto as Exhibit 1.

24. On or about January 25, 2010, Defendant Chase Home Finance mailed to Plaintiff a letter titled "Notice of Collection Activity" alleging that Plaintiff was in default under the terms of the Note. The letter did not attempt to discuss any options available to Plaintiff to avoid foreclosure other than paying the full amount allegedly due. A copy of the Notice of Collection Activity is attached hereto as Exhibit 2.

25. On or about March 10, 2010, Defendant CRC recorded a Notice of Default on the Property ("Notice of Default"). In this Notice of Default, which was executed on March 2, 2010, Defendant WaMu is identified as the beneficiary under the Deed of Trust. Notably, the Notice of Default states that the "beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary" and that the "present beneficiary" had executed and delivered to Defendant CRC as Trustee a Declaration and Demand for Sale. The Notice of Default was signed by Defendant Joukadarian on behalf of Defendant CRC, as Trustee. A copy of the Notice of Default is attached hereto as Exhibit 3. After recordation in San Diego County, California, the Notice of Default and Declaration of Compliance were mailed to Defendant CRC's offices in Chatsworth, California.

26. Interestingly, the Notice of Default Declaration of Compliance was signed by Defendant Durkin, for Defendant JPMorgan, not by Defendant WaMu, which implies that Defendant JPMorgan is the current beneficiary instead of Defendant WaMu. There are no

1  documents evidencing a substitution of beneficiary other than the abovementioned form letter

2  that Plaintiff received that stated merely that Defendant WaMu had become Defendant

3  JPMorgan.

4      27.    The Declaration of Compliance indicates that the "mortgagee, beneficiary or

5  authorized agent tried with due diligence but was unable to contact the borrower" to discuss

6  Plaintiff's financial situation and discuss options to avoid foreclosure as required by California

7  Civil Code § 2923.5, and that more than thirty days had elapsed since due diligence was

8  completed.

9      28.    Apart from the abovementioned, nonspecific letters to Plaintiff from Chase Home

10  Ownership Preservation Office, neither Defendant WaMu, Defendant JPMorgan, nor Defendant

11  Chase Home Finance sent any letters or made any phone calls to Plaintiff concerning his

12  personal financial situation and options to avoid foreclosure that were specifically available to

13  him. The only documents Plaintiff has received concerning his personal financial situation are

14  the Notice of Collection Activity, the Notice of Default, and the Notice of Trustee's Sale

15  (discussed below).  Even if the nonspecific letters qualify as an attempt to contact Plaintiff to

16  discuss his financial situation and options to avoid foreclosure, the most recent letter was dated

17  June 8, 2010, such that thirty days have not elapsed since due diligence was attempted.

18      29.    In or around March, 2010, Plaintiff began investigating his legal rights concerning

19  the foreclosure and retained a mortgage auditing firm.

20      30.    On March 23, 2010, Plaintiff sent a Qualified Written Request ("QWR") letter via

21  certified mail to Defendants CRC, JPMorgan, and Chase Home Finance.  This letter clearly

22  stated that it was a "RESPA Qualified Written Request, Complaint, Dispute of Alleged Debt,

23  Request for Verification, Validation, and TILA Request," and made several specific requests for

24  documentation and information concerning the loan transaction at issue in this case.  A copy of

25  the QWR is attached hereto as Exhibit 4.

26      31.    On or around March 26, 2010, Defendant CRC sent a letter to Plaintiff

27  acknowledging receipt of the QWR and stating that Defendant CRC had forwarded the letter to

28  Defendant JPMorgan.  Also on or around March 26, 2010, Defendant Chase Home Finance sent

PLAINTIFF'S VERIFIED COMPLAINT

1  a letter to Plaintiff acknowledging receipt of the QWR and stating that a further response would

2  be forthcoming. Copies of the acknowledgement letters from Defendant CRC and Defendant

3  Chase Home Finance are attached hereto as Exhibits 5 and 6, respectively.

4       32.     On May 10, 2010, Plaintiff sent a letter to Defendant CRC and Defendant

5  Joukadarian, as well as Carla Dodd and Jenny Dang, all of whom were named as described

6  above on documentation Plaintiff had received from Defendant CRC.  In this letter, Plaintiff

7  informed these defendants that he had retained the mortgage auditing firm, that the firm had

8  informed Plaintiff that Defendant JPMorgan had violated numerous laws in regards to the loan

9  documents, that neither Defendant CRC nor Defendant JPMorgan have standing to foreclose and

10  that neither can demonstrate that they have been harmed by Plaintiff's default, and that

11  Defendants CRC and Joukadarian, as well as Carla Dodd and Jenny Dang, would be named as

12  co-defendants in a lawsuit against Defendant JPMorgan if Defendant CRC proceeds with the

13  foreclosure process.  A copy of the aforementioned letter is attached hereto as Exhibit 7.

14       33.     On or around June 3, 2010, Defendant Chase Home Finance sent an incomplete

15  response to the QWR in which it repeatedly stated that information or documentation requested

16  was proprietary or unavailable.  As the response was signed with an illegible scrawl, Plaintiff has

17  no way to determine who prepared the response in order to attempt to clarify the statements

18  made in the response or obtain further information.  This response stated that Defendant

19  JPMorgan is the "investor," but does not define this term or state that Defendant JPMorgan was

20  the beneficiary, and states that Defendant Chase Home Finance is the servicer.  A copy of the

21  response to the QWR is attached hereto as Exhibit 8.

22       34.     Defendant CRC executed a Notice of Trustee's Sale ("Notice of Sale") on June

23  11, 2010.  The copy received by Plaintiff does not indicate if or when the Notice of Sale was

24  recorded.  The Notice of Sale was posted on Plaintiff's door on or about June 11, 2010, and

25  Plaintiff received a copy in the mail on or about June 12, 2010.  A copy of the Notice of Sale and

26  what purports to be the declaration that Defendant JPMorgan is exempt from notice requirements

27  under California Civil Code Section 2923.53 are attached hereto as Exhibit 9.

28  / / /

PLAINTIFF'S VERIFIED COMPLAINT

1         The Notice of Sale states that the sale is scheduled to take place on July 6, 2010, at 10:00

2  a.m., and is signed by Defendant Brignac for Defendant CRC, as Trustee, using a stamp or

3  electronic signature of some kind. The Notice of Sale requests that, after recordation in San

4  Diego County, California, the Notice of Sale and declaration be mailed to Defendant CRC's

5  offices in Chatsworth, California.

6      35.    The Notice of Sale was accompanied by what appears to be the declaration

7  required by California Civil Code Section 2923.54 stating whether or not the mortgage loan

8  servicer has an exemption under California Civil Code Section 2923.53 that is current and valid

9  on the date the Notice of Sale is filed. Interestingly, this declaration was neither signed nor

10  dated. It merely states, type-written:

11               JP Morgan Chase Bank,

12               National Association

13               Name: Ann Thorn

14               Title: First Vice President

15  This language makes it appear as though Defendant JPMorgan is the servicer of the Note rather

16  than Defendant Chase Home Finance.

17      36.    As noted in paragraphs 25 and 26, *supra*, it is difficult to determine whether

18  Defendant WaMu or Defendant JPMorgan directed Defendant CRC to conduct the Trustee's

19  Sale of the Property, ostensibly to collect the unpaid balance on the Note secured by the Deed of

20  Trust. Plaintiff is informed and believes, and thereon alleges, based on the language in the

21  Notice of Default as stated above and the fact that Plaintiff received nothing from either

22  Defendant WaMu or Defendant JPMorgan stating that Defendant JPMorgan was the new

23  beneficiary, that Defendant JPMorgan is not and was not the holder of the Note, nor is it or was

24  it in possession of the Note properly endorsed to it, nor was it or is it otherwise entitled by law to

25  initiate foreclosure under the Deed of Trust or to direct Defendant CRC to foreclose and sell the

26  property due to irregularities that render the Notice of Default and Notice of Sale invalid.

27  / / /

28  / / /

PLAINTIFF'S VERIFIED COMPLAINT

37.     Plaintiff is informed and believes, and thereon alleges that Defendant WaMu is not entitled by law to initiate foreclosure under the Deed of Trust due to irregularities that render the Notice of Default and Notice of Sale invalid.

38.     Plaintiff is informed and believes, and thereon alleges, that Defendants CRC, WaMu, and JPMorgan knew or reasonably should have known that they have no right to foreclose and conduct the sale due to irregularities in the Notice of Default and Notice of Sale that render them invalid.

39.     Moreover, even if the Notice of Default and Notice of Sale are accepted at face value as valid and accurate, the lack of a date on the declaration accompanying the Notice of Sale alone demonstrates that, at a minimum, Defendants CRC, WaMu, and/or JPMorgan violated the requirement under California Civil Code section 2923.54 that the declaration state whether or not the mortgage servicer had an exemption from the notice requirements that was current and valid as of the date the Notice of Sale was filed.  In addition, if Defendant Chase Home Finance is the servicer as opposed to Defendant JPMorgan, the declaration thus was not signed by the servicer.  As such, the Notice of Sale, and any sale conducted pursuant to that notice, is void, even assuming, *arguendo*, that Defendant WaMu or Defendant JPMorgan did have the right to foreclose upon the property.

40.     Plaintiff alleges on information and belief that Defendants, and each of them, in so acting in this case and with respect to numerous other mortgages or Deed of Trust security instruments, engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of California to foreclose on properties when they do not have the right to do so.  On information and belief, Plaintiff alleges that Defendants engage in this practice relying on the assumption that property owners affected generally do not have legal or financial wherewithal to contest the right of Defendants to foreclose.

41.     On information and belief, Plaintiff alleges in all of the wrongful acts alleged herein, Defendants and each of them have utilized the United States mail in furtherance of their pattern of conduct to unlawfully collect on negotiable instruments when they were not entitled under the law to do so or, assuming *arguendo* that they were so entitled, to profit from these

PLAINTIFF'S VERIFIED COMPLAINT

12

1   actions in amounts exceeding their rights under the Note.

2       42.    On information and belief, Plaintiff alleges Defendant JPMorgan, in committing

3   the acts alleged in this Complaint, and in other cases, is engaging in a pattern of unlawful

4   activity. In pursuing non-judicial foreclosure, Defendant JPMorgan represented that they had the

5   right to payment under the Note, payment of which was secured by the Deed of Trust, whereas,

6   in fact, Defendant JPMorgan was not in possession of the Note and/or was neither a holder of the

7   Note nor a non-holder of the Note entitled to payment, as those terms are used in California

8   Commercial Code §§ 3301 and 3309, but rather was at most the servicer, and therefore

9   Defendant JPMorgan is proceeding to foreclose without right under the law.

10      43.    On information and belief, Plaintiff alleges that Defendants misrepresented facts

11   intending to force Plaintiff to either pay large sums of money to Defendants to which they were

12   not entitled, or to abandon the Property to foreclosure sale, to Defendants' profit.

13      44.    Due to the imminence of the foreclosure sale, Plaintiff has been left with no other

14   choice but to file the instant Application and the Complaint in order to prevent the unlawful sale

15   of his home.

### FIRST CAUSE OF ACTION

### Violations of Truth in Lending Act – 15 U.S.C. §§ 1601 *et seq.*

### (Against Defendants WaMu and JPMorgan)

19      45.    Plaintiff incorporates here each and every allegation set forth above.

20      46.    The loan transaction at issue is a consumer credit transaction subject to the

21   provisions of TILA.

22      47.    Defendant WaMu is a "creditor" as that term is defined by 15 U.S.C. § 1602. The

23   transaction wherein Defendant WaMu extended credit to Plaintiff and such credit was secured by

24   an interest purportedly held by Defendant WaMu in the Property.

25      48.    As a consumer credit transaction, Defendant WaMu was required to provide to

26   Plaintiff mandatory Truth in Lending Disclosure statements and notice of the borrower's right to

27   rescind, specifying the date on which the three-day rescission period expires. If the lending

28   institution fails to provide the rescission information, the borrower may rescind the loan within

PLAINTIFF'S VERIFIED COMPLAINT

1   three years after it was consummated.  15 U.S.C. § 1635(a) and (f); 12 C.F.R. § 226.23(b)(5).  If

2   the borrower timely exercises his right to rescind, the security interest giving rise to the right of

3   rescission becomes void. *Id.*

4       49.     In the course of the transaction described herein, Defendant WaMu violated TILA

5   in numerous ways, including, but not limited to:  failing to deliver good faith estimates of

6   disclosures (preliminary TILDS) within three days of the loan application pursuant to 12 C.F.R.

7   § 226.19(a); failing to make required disclosures clearly and conspicuously in writing; failing to

8   provide two copies of the completed Right to Cancel pursuant to 12 C.F.R. § 226.23(b); failing

9   to provide Hazard Insurance disclosure pursuant to 12 C.F.R. § 226.4(d)(2); failure to provide

10   the Consumer Handbook on Adjustable Rate Mortgages ("CHARM") within three days of the

11   application pursuant to 12 C.F.R. § 226.19(b); placing terms prohibited by statute into the

12   transaction; and failing to disclose all finance charge details and the annual percentage rate based

13   upon properly calculated and disclosed finance charges and amounts financed.

14       50.     Because of these violations, Defendant WaMu is liable to Plaintiff in the amount

15   of twice the finance charge, actual damages to be established at trial, and costs in accordance

16   with 15 U.S.C. § 1640(a).  Plaintiff is also entitled to:  rescission of the loan transaction; an order

17   requiring Defendant WaMu to take all actions necessary to terminate any security interest in the

18   Property created under the transaction and a declaration from the Court that the security interest

19   is void; expungement of any foreclosure instruments, including but not limited to any Notice of

20   Default or Notice of Trustee's Sale, relating to the transaction from any public record; removal

21   of any derogatory information reported to any credit reporting agency or credit reporting bureau

22   relating to the transaction; the return of Plaintiff of any money given by Plaintiff to anyone,

23   including Defendant WaMu, in connection with the loan transaction; statutory damages; costs

24   and reasonable attorney's fees; and such other relief as the Court may deem just and proper.

25       51.     As a result of Defendant WaMu's misconduct, Plaintiff has suffered and

26   continues to suffer damages in an amount to be proven at trial, which he is entitled to recover.

27   Moreover, Defendant WaMu's misconduct was willful, malicious, and outrageous, and therefore

28   punitive damages are warranted and demanded.

PLAINTIFF'S VERIFIED COMPLAINT

1       52.    As a result of Defendant WaMu's misconduct, the loan was void and

2   unenforceable as of its inception, and therefore Plaintiff is entitled to rescind the loan agreement

3   and promissory note and does hereby demand rescission.

4       53.    As a result of Defendant WaMu's misconduct, Plaintiff is entitled to declaratory

5   and injunctive relief preventing Defendant WaMu from taking any action to collect on the loan,

6   and/or to foreclose upon the Property, and/or to transfer the Property.

7       54.    If it is determined that the alleged loan obligation was properly assigned or

8   otherwise transferred to Defendant JPMorgan from Defendant WaMu, Defendant JPMorgan is

9   liable to Plaintiff as described in the foregoing paragraphs for all TILA violations "apparent on

10   the face of the disclosure" pursuant to 15 U.S.C. § 1641.

11               **SECOND CAUSE OF ACTION**

12          **Violations of RESPA – 12 U.S.C. §§ 2601 *et seq.***

13       **(Against Defendants WaMu, JPMorgan, and Chase Home Finance)**

14       55.    Plaintiff incorporates here each and every allegation set forth above.

15       56.    The loan transaction between Plaintiff and Defendant WaMu is a mortgage loan

16   covered by RESPA.

17       57.    A violation of RESPA is also made unlawful under California state law by

18   Financial Code section 50505, which states: "Any person who violates any provision of

19   [RESPA] or any regulation promulgated thereunder, violates this division [California Residential

20   Mortgage Lending Act]."

21       58.    Plaintiff is not certain at this time exactly which Defendant – JPMorgan or Chase

22   Home Finance – was actually the servicer of the loan at any given time after Defendant WaMu

23   was purchased by Defendant JPMorgan, although he believed that the loan servicer was

24   Defendant Chase Home Finance at the time of the Notice of Sale.  However, due to the

25   conspiratorial nature of the misdeeds alleged herein, and also due to Defendant JPMorgan's and

26   Defendant Chase Home Finance's general failure to properly advise Plaintiff as to the roles and

27   identities of various entities that were purportedly handling his loan at any given time, these

28   allegations are made as to Defendant JPMorgan and Defendant Chase Home Finance, in addition

PLAINTIFF'S VERIFIED COMPLAINT

1    to Defendant WaMu as the original servicer.

2         59.    Defendant WaMu violated RESPA at the time of closing on the sale of the

3    Property by failing to correctly and accurately comply with disclosure requirements.

4    Specifically, Defendant WaMu:  failed to disclose all affiliated business arrangements pursuant

5    to 24 C.F.R § 3500.15; failed to provide transfer servicing disclosure at or prior to closing

6    pursuant to 24 C.F.R. § 3500.21; and failed to conspicuously make known to Plaintiff the legal

7    relationships between the parties.

8         60.    Plaintiff is informed and believes and thereon alleges that Defendant WaMu has

9    engaged in a pattern or practice of non-compliance with the requirements of the mortgage

10   servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

11        61.    As a result of Defendant WaMu's failure to comply with RESPA, Plaintiff has

12   suffered and continues to suffer damages and costs of suit.  Plaintiff is entitled to recover

13   statutory damages of $1,000.00, actual damages in an amount to be determined at trial, and costs

14   and reasonable attorney's fees.

15        62.    If it is determined that the alleged loan obligation was properly assigned or

16   otherwise transferred to Defendant JPMorgan from Defendant WaMu, Defendant JPMorgan is

17   liable to Plaintiff as described in the foregoing paragraphs.

18        63.    In addition, pursuant to 12 U.S.C. § 2605(e)(2), after conducting an investigation

19   in response to a QWR, a servicer *shall* provide the borrower with a written explanation or

20   clarification that includes:  (1) "to the extent applicable, a statement of the reasons for which the

21   servicer believes the account of the borrower is correct as determined by the servicer"; and (2)

22   "information requested by the borrower or an explanation of why the information requested is

23   unavailable or cannot be obtained by the servicer."

24        64.    As discussed above, it is unclear whether Defendant Chase Home Finance or

25   Defendant JPMorgan is the servicer.  However, in response to Plaintiff's QWR, Defendant Chase

26   Home Finance did not provide a statement of the reasons for which they believe Plaintiff's

27   account is correct – they merely state that it is their position that Plaintiff has undertaken a

28   "valid, binding and legally enforceable obligation to Chase." Defendant Chase Home Finance

PLAINTIFF'S VERIFIED COMPLAINT

1  also did not provide all information requested by Plaintiff or, if not provided, any explanation of

2  *why* the information is unavailable or cannot be obtained except to state that "[a]ny documents or

3  information requested but not included with this package are unavailable or considered

4  proprietary, and will not be provided." Defendant JPMorgan did not provide any response to the

5  QWR.

6        65.     Due to Defendant Chase Home Finance's inadequate response, Defendant Chase

7  Home Mortgage is in violation of 12 U.S.C. § 2605(e)(2), Plaintiff has suffered and continues to

8  suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages of $1,000.00,

9  actual damages in an amount to be determined at trial, and costs and reasonable attorney's fees.

10  If it is determined that Defendant JPMorgan is the servicer, Plaintiff is entitled to recover

11  statutory damages of $1,000.00, actual damages in an amount to be determined at trial, and costs

12  and reasonable attorney's fees from Defendant JPMorgan due to Defendant JPMorgan's failure

13  to respond to the QWR.

14  **THIRD CAUSE OF ACTION**

15  **Violations of HOEPA – 15 U.S.C. § 1639 and 12 C.F.R. §§ 226.32 *et seq.***

16  **(Against Defendants WaMu and JPMorgan)**

17        66.     Plaintiff incorporates here each and every allegation set forth above.

18        67.     Under HOEPA, a special disclosure notice must be delivered to the consumer at

19  least three business days prior to the closing of the loan. 15 U.S.C. § 1639(b); 12 C.F.R. §

20  226.31(c). The notice must inform the consumer that the homeowner is not bound to enter into

21  the loan, and that if the homeowner does enter the loan, the homeowner could lose his home and

22  any money he has invested in the home.

23        68.     HOEPA also requires that the lender notify the buyer of the regular monthly (or

24  other periodic) payment and the amount of any balloon payment. HOEPA further requires that

25  for variable-rate transactions the lender must provide a statement that the interest rate and the

26  monthly payment may increase, and provide the amount of the single maximum monthly

27  payment, based on the maximum interest rate required to be disclosed under 12 C.F.R. § 226.30.

28  / / /

PLAINTIFF'S VERIFIED COMPLAINT

69.     Here, there is no evidence demonstrating that Defendant WaMu sent a HOEPA notice to Plaintiff or that Plaintiff received it.  There is also no evidence that Defendant WaMu notified Plaintiff of the regular payment and balloon payment.  Furthermore, there is no evidence that Defendant WaMu provided the statement that the interest rate and monthly payment may increase or provide the amount of the single maximum monthly payment based on the maximum interest rate as discussed above.  Therefore, unless Defendant WaMu can provide conclusive proof to the contrary concerning the foregoing, Defendant WaMu has violated HOEPA and cannot legally foreclose on Plaintiff's Property.

70.     If it is determined that the alleged loan obligation was properly assigned or otherwise transferred to Defendant JPMorgan from Defendant WaMu, Defendant JPMorgan is liable to Plaintiff as described in the foregoing paragraphs.

## FOURTH CAUSE OF ACTION

### California Rosenthal Act – California Civil Code §§ 1788 *et seq.*

### (Against Defendants CRC, WaMu, JPMorgan, and Chase Home Finance)

71.     Plaintiff incorporates here each and every allegation set forth above.

72.     Defendant CRC's, Defendant WaMu's, Defendant JPMorgan's, and Defendant Chase Home Finance's actions constitute a violation of the Rosenthal Act in that they threatened to take actions not permitted by law, including, but not limited to:  attempting to foreclose on a void security interest; causing to be recorded a Notice of Default and a Notice of Sale that they knew or should have known were irregular and thus invalid; and using unfair and unconscionable means in an attempt to collect a debt such as recording the invalid Notices of Default and Sale.

73.     Defendant CRC's, Defendant WaMu's, Defendant JPMorgan's, and Defendant Chase Home Finance's actions have caused Plaintiff actual damages, including but not limited to, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

74.     As a result of Defendant CRC's, Defendant WaMu's, Defendant JPMorgan's. and Defendant Chase Home Finance's violations, Plaintiff is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs and reasonable

PLAINTIFF'S VERIFIED COMPLAINT

1  attorney's fees.

## FIFTH CAUSE OF ACTION

### Slander of Title

### (Against Defendants CRC, WaMu, JPMorgan, Joukadarian, and Durkin)

75.     Plaintiff incorporates here each and every allegation set forth above.

76.     Defendants CRC, WaMu, JPMorgan, Joukadarian, and Durkin disparaged Plaintiff's exclusive valid title in January and February 2010, by and through the preparing, posting, publishing, and recording of the Notice of Default and its related Notice of Default Declaration.  Said Defendants knew or should have known that such documents were improper in that the declaration accompanying the Notice of Default is supposed to be signed by the present beneficiary, but this declaration was signed by Defendant Durkin for Defendant JPMorgan, who is at most the servicer and not the beneficiary as named in the Notice of Default as discussed above.  The servicer does not have the power to enforce the Note or the Deed of Trust unless they hold the note.

77.     Furthermore, "due diligence" under California Civil Code § 2923.5(g) requires that the mortgagee, beneficiary or authorized agent first attempt to contact the borrower through first-class mail, followed by three attempts to contact the borrower by telephone.  Even if the abovementioned non-specific letters qualify as due diligence letters under this section, none of the Defendants attempted to contact Plaintiff by telephone.

78.     Because none of the Defendants attempted to contact Plaintiff by telephone, Defendants have not exercised due diligence as defined by California Civil Code § 2923.5(g), and the Notice of Default is invalid.

79.     These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property.  By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

80.     As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a

PLAINTIFF'S VERIFIED COMPLAINT

1  cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an

2  amount to be proved at trial.  As a further proximate result of Defendants' conduct, Plaintiff has

3  incurred expenses in order to clear title to the Property.  Moreover, these expenses are

4  continuing, and Plaintiff will incur additional charges for such purposes until the cloud on

5  Plaintiff's title to the Property has been removed.  The amounts of future expenses and damages

6  are not ascertainable at this time.

7       81.  As a further direct and proximate result of Defendants' conduct, Plaintiff has

8  suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress,

9  resulting in the loss of sleep and other injuries to his health and well-being, and continues to

10  suffer such injuries on an ongoing basis.  The amount of such damages shall be proven at trial.

11       82.  At the time that the false and disparaging documents were created and published

12  by Defendants, Defendants knew the documents were false and created and published them with

13  the malicious intent to injure Plaintiff and deprive him of his exclusive right, title, and interest in

14  the Property, and to obtain the Property for their own use by unlawful means.

15       83.  The conduct of the Defendants in publishing the documents descried above was

16  fraudulent, oppressive, and malicious.  Therefore, Plaintiff is entitled to an award of punitive

17  damages in an amount sufficient to punish Defendants for their malicious conduct and deter such

18  misconduct in the future.

19                 **SIXTH CAUSE OF ACTION**

20                     **Slander of Title**

21     **(Against Defendants CRC, WaMu, JPMorgan, Brignac, and Thorn)**

22       84.  Plaintiff incorporates here each and every allegation set forth above.

23       85.  Defendants CRC, WaMu, JPMorgan, Brignac, and Thorn disparaged Plaintiff's

24  exclusive valid title in May 2010, by and through the preparing, posting, publishing, and

25  recording of the Notice of Sale and its related declaration.  Said Defendants knew or should have

26  known that such documents were improper in that it was required to be accompanied by a

27  declaration stating whether or not the mortgage servicer had an exemption from the notice

28  requirements that was current and valid as of the date the Notice of Sale was filed pursuant to

PLAINTIFF'S VERIFIED COMPLAINT

California Civil Code Section 2923.54. As noted above, this declaration was neither signed nor dated by Defendant Thorn for Defendant JPMorgan, and thus does not demonstrate that Defendant Thorn had personal knowledge in June 2010 of whether or not there was a current and valid exemption in June of 2010 when the Notice of Sale was executed and recorded.

86.    Furthermore, if it is determined that Defendant Chase Home Finance is the servicer and not Defendant JPMorgan, there is no declaration pertaining to Defendant Chase Home Finance as servicer at all, thus rendering the declaration of Notice of Sale invalid.

87.    These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

88.    As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial. As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purposes until the cloud on Plaintiff's title to the Property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

89.    As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

90.    At the time that the false and disparaging documents were created and published by Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive him of his exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

/ / /

91.     The conduct of the Defendants in publishing the documents descried above was fraudulent, oppressive, and malicious.  Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## SEVENTH CAUSE OF ACTION

### Civil Conspiracy

### (Against Defendants CRC, WaMu, JPMorgan, and Chase Home Finance)

92.     Plaintiff incorporates here each and every allegation set forth above.

93.     Plaintiff is informed and believes, and thereon alleges, that Defendants CRC, WaMu, JPMorgan, and Chase Home Finance conspired and agreed to implement a scheme to defraud and victimize Plaintiff through the unlawful acts alleged herein.

94.     Plaintiff is informed and believes, and thereon alleges, that these Defendants did the acts and things alleged herein pursuant to and in furtherance of their conspiracy to defraud and victimize Plaintiff.

95.     Plaintiff is informed and believes that the Defendants sued herein under fictitious names committed acts in furtherance of the conspiracy, and/or lent aid and encouragement to their co-conspirators, and/or ratified and adopted the acts of their co-conspirators, and are thus jointly and severally liable for all harm to Plaintiff resulting from the conspiracy.

96.     As the direct and proximate result of Defendants' conspiracy to defraud and victimize Plaintiff, Plaintiff has suffered damages, including, but not limited to, direct monetary loss, consequential damages, and emotional distress.

97.     In conspiring to defraud and victimize Plaintiff, and in committing the wrongful acts alleged herein, Defendants acted with malice, oppression, and fraud, thus justifying an award of exemplary damages in an amount sufficient to punish their wrongful conduct and deter such misconduct in the future.

/ / /

/ / /

/ / /

PLAINTIFF'S VERIFIED COMPLAINT

22

## EIGHTH CAUSE OF ACTION

### Unfair Business Practices – California Business & Professions Code § 17200

### (Against All Defendants)

98.     Plaintiff incorporates here each and every allegation set forth above.

99.     Plaintiff is informed and believes and thereon alleges that Defendants committed unlawful, unfair, and/or fraudulent business practices, as defined by California Business & Professions Code § 17200, by engaging in the unlawful, unfair, and/or fraudulent business practices alleged herein.

100.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries according to proof at trial.

101.    Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.

102.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

### NINTH CAUSE OF ACTION

### RICO – 18 U.S.C. §§ 1961 *et seq.*

### (Against All Defendants)

103.    Plaintiff incorporates here each and every allegation set forth above.

104.    Defendant CRC is an enterprise engaged in and the activities of which affect interstate commerce.

105.    Defendants WaMu, JPMorgan, Chase Home Finance, Joukadarian, Durkin, Brignac, and Thorn are persons within the meaning of 18 U.S.C. § 1961(3), and as persons associated with Defendant CRC, conducted and participated, directly or indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

106.    The predicate acts which constitute this pattern of racketeering activity were part of a scheme to wrongfully foreclose upon the Property without legal right, and therefore acquire

PLAINTIFF'S VERIFIED COMPLAINT

1    title to the property through deception and fraud, for the profit of the enterprise, as described

2    herein.  For the purposes of executing this scheme, the Defendants placed in post offices and/or

3    in authorized repositories matter and things to be sent or delivered by the Postal Service, caused

4    matter and things to be delivered by commercial interstate carrier, and received matter and things

5    from the Postal Service or commercial interstate carriers, including, but not limited to, default

6    and foreclosure related notices.  These notices were false, misleading, and contrary to law, as

7    described herein, and were deliberately designed to compel Plaintiff either to part with large

8    sums of money or to abandon the Property, for the profit of the enterprise.

9        107.    These acts of racketeering, occurring within ten years of one another, constitute a

10   pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

11       108.    Plaintiff was injured by reason of this violation of 18 U.S.C. § 1962, in that, as a

12   direct and proximate result of Defendants' complained of acts, Plaintiff has suffered and

13   continues to suffer damages, including, but not limited to, monetary damages and emotional

14   distress, in an amount to be proven at trial.

15       109.    By reason of Defendants' violation of 18 U.S.C. § 1962, Plaintiff is entitled,

16   pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained, costs of suit, and reasonable

17   attorney's fees.

18                               **TENTH CAUSE OF ACTION**

19                             **RICO – 18 U.S.C. §§ 1961 *et seq.***

20                               **(Against All Defendants)**

21       110.    Plaintiff incorporates here each and every allegation set forth above.

22       111.    Defendant WaMu is an enterprise engaged in and the activities of which affect

23   interstate commerce.

24       112.    Defendants CRC, JPMorgan, Chase Home Finance, Joukadarian, Durkin,

25   Brignac, and Thorn are persons within the meaning of 18 U.S.C. § 1961(3), and as persons

26   associated with Defendant WaMu, conducted and participated, directly or indirectly, in the

27   conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of

28   18 U.S.C. § 1962(c).

PLAINTIFF'S VERIFIED COMPLAINT

113.    The predicate acts which constitute this pattern of racketeering activity were part of a scheme to wrongfully foreclose upon the Property without legal right, and therefore acquire title to the property through deception and fraud, for the profit of the enterprise, as described herein.  For the purposes of executing this scheme, the Defendants placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to, default and foreclosure related notices.  These notices were false, misleading, and contrary to law, as described herein, and were deliberately designed to compel Plaintiff either to part with large sums of money or to abandon the Property, for the profit of the enterprise.

114.    These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

115.    Plaintiff was injured by reason of this violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of Defendants' complained of acts, Plaintiff has suffered and continues to suffer damages, including, but not limited to, monetary damages and emotional distress, in an amount to be proven at trial.

116.    By reason of Defendants' violation of 18 U.S.C. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained, costs of suit, and reasonable attorney's fees.

### ELEVENTH CAUSE OF ACTION

### RICO – 18 U.S.C. §§ 1961 *et seq.*

### (Against All Defendants)

117.    Plaintiff incorporates here each and every allegation set forth above.

118.    Defendant JPMorgan is an enterprise engaged in and the activities of which affect interstate commerce.

119.    Defendants CRC, WaMu, Chase Home Finance, Joukadarian, Durkin, Brignac, and Thorn are persons within the meaning of 18 U.S.C. § 1961(3), and as persons associated with Defendant JPMorgan, conducted and participated, directly or indirectly, in the conduct of

PLAINTIFF'S VERIFIED COMPLAINT

1  the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §

2  1962(c).

3       120.    The predicate acts which constitute this pattern of racketeering activity were part

4  of a scheme to wrongfully foreclose upon the Property without legal right, and therefore acquire

5  title to the property through deception and fraud, for the profit of the enterprise, as described

6  herein. For the purposes of executing this scheme, the Defendants placed in post offices and/or

7  in authorized repositories matter and things to be sent or delivered by the Postal Service, caused

8  matter and things to be delivered by commercial interstate carrier, and received matter and things

9  from the Postal Service or commercial interstate carriers, including, but not limited to, default

10  and foreclosure related notices. These notices were false, misleading, and contrary to law, as

11  described herein, and were deliberately designed to compel Plaintiff either to part with large

12  sums of money or to abandon the Property, for the profit of the enterprise.

13       121.    These acts of racketeering, occurring within ten years of one another, constitute a

14  pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

15       122.    Plaintiff was injured by reason of this violation of 18 U.S.C. § 1962, in that, as a

16  direct and proximate result of Defendants' complained of acts, Plaintiff has suffered and

17  continues to suffer damages, including, but not limited to, monetary damages and emotional

18  distress, in an amount to be proven at trial.

19       123.    By reason of Defendants' violation of 18 U.S.C. § 1962, Plaintiff is entitled,

20  pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained, costs of suit, and reasonable

21  attorney's fees.

22  **TWELFTH CAUSE OF ACTION**

23  **RICO – 18 U.S.C. §§ 1961 *et seq.***

24  **(Against All Defendants)**

25       124.    Plaintiff incorporates here each and every allegation set forth above.

26       125.    Defendant Chase Home Finance is an enterprise engaged in and the activities of

27  which affect interstate commerce.

28  / / /

PLAINTIFF'S VERIFIED COMPLAINT

126. Defendants CRC, WaMu, JPMorgan, Joukadarian, Durkin, Brignac, and Thorn are persons within the meaning of 18 U.S.C. § 1961(3), and as persons associated with Defendant Chase Home Finance, conducted and participated, directly or indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

127. The predicate acts which constitute this pattern of racketeering activity were part of a scheme to wrongfully foreclose upon the Property without legal right, and therefore acquire title to the property through deception and fraud, for the profit of the enterprise, as described herein. For the purposes of executing this scheme, the Defendants placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to, default and foreclosure related notices. These notices were false, misleading, and contrary to law, as described herein, and were deliberately designed to compel Plaintiff either to part with large sums of money or to abandon the Property, for the profit of the enterprise.

128. These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

129. Plaintiff was injured by reason of this violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of Defendants' complained of acts, Plaintiff has suffered and continues to suffer damages, including, but not limited to, monetary damages and emotional distress, in an amount to be proven at trial.

130. By reason of Defendants' violation of 18 U.S.C. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained, costs of suit, and reasonable attorney's fees.

## THIRTEENTH CAUSE OF ACTION

### Violation of California Civil Code § 2923.5

### (Against Defendants CRC, WaMu, and JPMorgan)

131. Plaintiff incorporates here each and every allegation set forth above.

PLAINTIFF'S VERIFIED COMPLAINT

132.    Defendants CRC, WaMu, and JPMorgan are asserting a right to conduct a foreclosure sale pursuant in part to the Notice of Default and Declaration of Compliance that were recorded on March 10, 2010.  Pursuant to California Civil Code § 2923.5, a notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h).

133.    Said Defendants knew or should have known that such documents were improper in that the declaration is supposed to be signed by the present beneficiary, but this declaration was signed by Defendant Durkin for Defendant JPMorgan, who is at most the servicer and not the beneficiary as described in the Notice of Default.  The servicer does not have the power to enforce the Note or the Deed of Trust unless they hold the note.

134.    Furthermore, "due diligence" under California Civil Code § 2923.5(g) requires that the mortgagee, beneficiary or authorized agent first attempt to contact the borrower through first-class mail, followed by three attempts to contact the borrower by telephone.  Even if the abovementioned non-specific letters qualify as due diligence letters under this section, none of the Defendants attempted to contact Plaintiff by telephone.

135.    Because none of the Defendants attempted to contact Plaintiff by telephone, Defendants have not exercised due diligence as defined by California Civil Code § 2923.5(g).

136.    Due to the foregoing, the Notice of Default is invalid and Defendants have no right to proceed with the trustee's sale scheduled for July 6, 2010.  Plaintiff requests that the Court grant declaratory relief by ordering the expungement of said Notice of Default from all records.

### FOURTEENTH CAUSE OF ACTION

### Violation of California Civil Code § 2923.54

### (Against Defendants CRC, WaMu, and JPMorgan)

137.    Plaintiff incorporates here each and every allegation set forth above.

138.    Defendants CRC, WaMu, and JPMorgan are asserting the right to conduct a foreclosure sale pursuant to the Notice of Sale that dated June 11, 2010.  Pursuant to California

PLAINTIFF'S VERIFIED COMPLAINT

Civil Code § 2923.54(a), a notice of sale "**shall** include a declaration from the mortgage loan servicer," stating, in part:

> Whether or not the mortgage loan servicer has obtained from
> the commissioner a final or temporary order of exemption pursuant to Section
> 2923.53 **that is current and valid on the date the notice of sale is filed**.
> (emphasis added.)

139.   Said Defendants know or should know that such documents are improper in that it was required to be accompanied by a declaration stating whether or not the mortgage servicer had an exemption from the notice requirements that was current and valid as of the date the Notice of Sale was filed pursuant to California Civil Code Section 2923.54.  As noted above, this declaration was neither signed nor dated by Defendant Thorn for Defendant JPMorgan, and thus does not demonstrate that Defendant Thorn had personal knowledge in June 2010 of whether or not there was a current and valid exemption in June of 2010 when the Notice of Sale was executed.

140.   Furthermore, if it is determined that Defendant Chase Home Finance is the servicer and not Defendant JPMorgan, there is no declaration pertaining to Defendant Chase Home Finance as servicer at all, thus rendering the declaration of Notice of Sale invalid.

141.   Due to the foregoing, the Notice of Sale is invalid and Defendants have no right to proceed with the trustee's sale scheduled for July 6, 2010.  Plaintiff requests that the Court grant declaratory relief by ordering the expungement of said Notice of Sale from all records.

## FIFTEENTH CAUSE OF ACTION

### Violation of Commercial Code §§ 3301 *et seq.*

### (Against Defendant JPMorgan)

142.   Plaintiff incorporates here each and every allegation set forth above.

143.   California Commercial Code § 3301 specifically identifies the persons who are entitled to enforce as security interest, such as instituting a foreclosure sale under a deed of trust. The statute is exclusive rather than inclusive in nature, and those who are not identified do not have the right to enforce such an interest.

PLAINTIFF'S VERIFIED COMPLAINT

144.    In the Notice of Default, which was executed on March 2, 2010, Defendant WaMu is identified as the beneficiary under the Deed of Trust.  Notably, the Notice of Default states that the "beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary."  Plaintiff has received no notice of any assignment or other transfer of the Note.

145.    Therefore, Plaintiff is informed and believes and thereon alleges that Defendant JPMorgan is not the "person entitled to enforce" the security interest on the Property, as that term is defined in Commercial Code § 3301.

146.    Due to the foregoing, the Notice of Default and Notice of Sale are invalid and Defendants CRC and JPMorgan have no right to proceed with the trustee's sale scheduled for July 6, 2010.  Plaintiff requests that the Court grant declaratory relief by ordering the expungement of said Notice of Default and Notice of Sale from all records.

### SIXTEENTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendants WaMu and JPMorgan)

147.    Plaintiff incorporates here each and every allegation set forth above.

148.    In a mortgage transaction, the lender owes the borrower a fiduciary duty.  This duty requires the lender to deal with the consumer in good faith.  This means, at very least, that the lender must disclose all the terms and conditions of the loan to the borrower.  The lender must also perform its own due diligence to determine if the borrower is being placed in a loan that is suitable given the borrower's financial situation.  If the lender knows or should know that the borrower is likely to default on the loan, they have a duty not to place the borrower in that loan.

149.    Here, Defendant WaMu was in a fiduciary relationship with Plaintiff.  Defendant WaMu knew, or should have known, that Plaintiff would likely default on the loan yet issued the loan anyway, especially in light of the fact that Defendant WaMu designated a default company – Defendant CRC – as the trustee from the beginning.  Defendant WaMu breached its fiduciary duty when it knowingly placed Plaintiff into a loan without regard to Plaintiff's ability to repay

PLAINTIFF'S VERIFIED COMPLAINT

1 the loan. This violation will subject Defendant WaMu to damages, attorney's fees, cost of suit,

2 and other legal and equitable relief.

3    150.    Plaintiff is informed and believes, and thereon alleges, that as a result of the

4 conduct of Defendant WaMu, Plaintiff is entitled to rescind the loan transaction, recover certain

5 amounts already paid, including interest, finance charges, and closing costs, offset these damages

6 against amounts owing on the loan, and collect statutory damages and attorney's fees.

7    151.    If it is determined that the alleged loan obligation was properly assigned or

8 otherwise transferred to Defendant JPMorgan from Defendant WaMu, Defendant JPMorgan is

9 liable to Plaintiff as described in the foregoing paragraphs.

10                               **REQUEST FOR JURY TRIAL**

11    Plaintiff requests a trial by jury of all issues triable as a matter of right by a jury.

12

13 WHEREFORE, Plaintiff prays for judgment and an order against Defendants as follows:

14    A.    That judgment be entered in her favor and against Defendants, and each of them.

15    B.    For an order requiring Defendants to show cause, if they have any, why they

16          should not be enjoined as set forth below, during the pendency of this action.

17    C.    For an order and judgment stating that the Deed of Trust is adjudged void and of

18          no legal force and effect and shall be cancelled, stricken, and/or rescinded

19          forthwith.

20    D.    For a temporary restraining order, preliminary injunction, and permanent

21          injunction directing Defendants WaMu, JPMorgan, Chase Home Finance, and

22          CRC, or anyone acting under or in concert with them, from collecting on the

23          subject loan and from selling the Property at Trustee's Sale.

24    E.    For an order stating that Defendants engaged in unfair business practices.

25    F.    For an order stating that the Deed of Trust, Notice of Default, and Notice of

26          Trustee's Sale constitute slander of title to Plaintiff and the Property.

27    G.    For damages, disgorgement, and injunctive relief under California's common and

28          statutory law of unfair business practices.

PLAINTIFF'S VERIFIED COMPLAINT

H.   For an order declaring that the Notice of Default and Notice of Sale in invalid and ordering the expungement of said Notice of Default and Notice of Sale from all records.

I.   For compensatory and statutory damages, attorney's fees and costs according to proof at trial.

J.   For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct.

K.   For such other and further relief as the Court may deem just and proper.

Dated this ___6___ day of ___July___, 2010.

Respectfully Submitted,

_____
DAVID CARAVANTES, pro se Plaintiff
5189 Argonne Court
San Diego, California 92117

1

## VERIFICATION

2   I, DAVID CARAVANTES, am the plaintiff in the above-entitled action. I have

3   read the foregoing Complaint and know the contents thereof. The same is true of

4   my own knowledge, except as to those matters which are therein alleged on

5   information and belief, and as to those matters, I believe it to be true.

6

7   I declare under penalty of perjury that the foregoing is true and correct and that this

8   declaration was executed at ___San Diego___ , California.

9

10      Dated this __6__ day of __July__ , 2010.

11

12

13

14

15                                                 _____

16                                                 DAVID CARAVANTES

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S VERIFIED COMPLAINT

33

# Exhibit 1



**CHASE**
Homeownership Preservation Office
3415 Vision Drive
OH4-7305
Columbus, OH 43219

June 8, 2010

DAVID CARAVANTES
5189 ARGONNE CT
SAN DIEGO CA 92117-1054         24014

Dear David,

More and more Americans are struggling to keep up with their mortgage payments. If you are experiencing financial difficulty, you have a variety of options that might help you get back on track, and keep you out of foreclosure.

As the enclosed flyer explains, you have an opportunity to meet in person with specialists from Chase, your lender, at a local event. We'll walk through the options available, and work out the best solution to your current needs. This event is just one part of Chase's overall efforts to help our valued customers who are struggling in these challenging economic times. We're working with partners across the country – HUD approved non-profit counseling agents and local community leaders – to provide free foreclosure prevention assistance to homeowners who need help.

When you come to the event, please bring a short letter explaining why you need assistance at this time, and include how long you believe you will not be able to make your monthly payments. Also, please bring the documentation listed on the back of this letter. With this information in hand, we'll be able to help you faster.

If you are struggling, it's easy to start to feel as if you simply have no way out... but it doesn't have to be that way. You have options and you have a chance to get the help you need. Please join us at this upcoming event, and let's work together to help you through these challenging times. The enclosed flyer has all the details you need.

Sincerely,

CHASE Homeownership Center – La Mesa, CA

---

**Can't Make This Event?  You Do Have Other Options...**

If you are experiencing financial difficulty, we have a variety of options that might help you keep your monthly payments up to date, and keep you out of foreclosure -- but we need to talk to you to as quickly as possible. Call us today at **1-619-469-4996** -- the sooner you contact us the more options you'll have.

# Exhibit 2

Chase Home Finance LLC
FLS-7730
PO BOX 44090
Jacksonville, FL 32231-4090

January 25, 2010

**CHASE O**

001184

DAVID  CARAVANTES
5189  ARGONNE CT
SAN DIEGO  CA  92117-1054

## NOTICE OF COLLECTION ACTIVITY

RE: 3014277101
     5189  Argonne Ct
     San Diego  CA 92117

Dear Borrower:

The records of Chase Home Finance LLC ("Chase") indicate that you have failed to make the required monthly payments under the terms of your Note ("Note") and related Mortgage or Deed of Trust, whichever is applicable ("Security Instrument") since 09/01/2009.  As of today's date the total amount due and owing ("Total Amount Due") is:

|  |  |
|---|---|
| Principal & Interest Payments: | $14080.65 |
| Escrow: | $795.15 |
| Late Charges: | $563.21 |
| Outstanding Fees: | $32.55 |
| Corporate Advance: | $0.00 |
| Credits: | $0.00 |
| Total Amount Due: | $15471.56 |

You may cure this default within thirty (30) days from date of letter.  However, the amount that you owe may increase between the date of this letter and the date you reinstate the loan.  This is because of interest, late charges, advances and other amounts that may continue to accrue or will be incurred. You will also owe the amount of any monthly or other payments and late charges that may fall due after the date of this letter.  **Therefore, you may not rely on the amount shown above to be sufficient to cure your loan delinquency after today.**  It is necessary for you to contact Chase at the address or telephone number on this letter to verify the exact amount necessary to cure your delinquency and reinstate your loan no more than 24 hours before you make any payment.

Failure to cure the default within the 30-day period may result in Chase declaring the entire outstanding principal balance, accrued interest and any other fees and charges due under the terms of the Note and Security Instrument to be immediately due ("Acceleration").  If this amount is not immediately paid at such time, Chase may exercise any and all remedies available under the terms of the Note and Security Instrument and applicable law, including the commencement of foreclosure proceedings which may result in the sale of your property.

After acceleration, you will have the right to assert any grounds you may have to prove the non-existence of a default.  You may also reinstate your loan.  In addition, you will have the right in any related foreclosure proceedings to assert any defense to acceleration, the foreclosure action and, if applicable, the eventual sale of your property pursuant to a court order or trustee power of sale.

# Exhibit 3

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:   **$18.00**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

RECORDED ON:   **March 10, 2010**

AND WHEN RECORDED MAIL TO

AS DOCUMENT NO:   **10-116987**

CALIFORNIA RECONVEYANCE COMPANY

BY:   **s/ Jenny Dang**

9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

LSI TITLE COMPANY (CA)

<hr>

**Space above this line for recorder's use only**

<u>Trustee Sale No. 740587CA</u>   Loan No. 3014277101   Title Order No. 100141544-CA-MAI

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### <u>IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION</u>, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $22,751.54 as of March 02, 2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.



Trustee Sale No. 740587CA   Loan No. 3014277101   Title Order No. 100141544-CA-MAI

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY** is the duly appointed Trustee under a Deed of Trust dated 08-15-2007, executed by DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 08-27-2007, Book , Page , Instrument 2007-0569430 of official records in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust. APN: 671-360-10 Situs: 5189 ARGONNE COURT, , SAN DIEGO, CA 92117 Including the note(s) for the sum of $520,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 09/01/2009 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

SEE ATTACHED DECLARATION

DATE: March 02, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____
VREJ JOUKADARIAN
Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**Borrowers:**       DAVID CARAVANTES

**Property Address:**       5189 ARGONNE CT, SAN DIEGO CA 92117

**Loan Number:**       3014277101

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒ The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

   ☐ The real property is not an owner-occupied single family residence.

   ☐ The loan was not originated between January 1, 2003 and December 31, 2007.

   ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

   ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

   ☐ The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

JP Morgan Chase Bank, National Association

Date:  03/01/10
City/State:  Jacksonville, Florida

Clement J. Durkin



# Exhibit 4

David Caravantes
5189 Argonne Court
San Diego, CA 92117

March 23, 2010

JPMorgan Chase Bank
National Association
7301 Bay Meadows Way
Jacksonville, FL 32256

Certified Mail Number
7009 2250 0001 9577 8491

Chase Home Finance, LLC
FL5-7730
PO BOX 44090
Jacksonville, FL 32231-4090

Certified Mail Number
7009 2250 0001 9577 8484

California Reconveyance Company
9200 Oakdale Ave.
Mail Stop: N110612
Chatsworth, CA 91311

Certified Mail Number
7009 2250 0001 9577 8453

MERS, Inc.
PO BOX 2026
Flint, MI 48501-2026

Certified Mail Number
7009 2250 0001 9577 8477

## RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF ALLEGED DEBT, REQUEST FOR VERIFICATION, VALIDATION, and TILA REQUEST

NOTICE TO THE PRINCPALS IS NOTICE TO THE AGENTS
NOTICE TO THE AGENTS IS NOTICE TO THE PRINCIPAL

**This letter is a "Qualified Written Request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500, Regulation Z § 226 and the Gramm Leach Bliley Act.**

REF:   Alleged Account # **3014277101**, hereinafter referred to as the "Alleged Loan", is the reference for all questions and requests described below.

Chase Home Finance, LLC is herein referred to as "Alleged Mortgage Claimant" is the reference for all questions and requests described below.

To Whom It May Concern:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

It is my understanding that your company may have been accused or engaged in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about such

practices this mortgage company or anyone who has any interest in this matter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and disadvantaged, poor, elderly and minority Americans. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of your possession of the <u>original security instrument</u>, otherwise referred to the "promissory note" and/or "Deed of Trust" regarding any alleged loan associated with Alleged Account # **3014277101**, Chase Home Finance, LLC. **Your failure to supply me with the original security instrument, will be positive confirmation that you never created and owned one.**

I also hereby demand that you promptly provide documentation of a chain of transfer between you, the Alleged Mortgage Claimant and wherever the security is now. Should you fail to provide evidence the security instrument, I <u>will be forceed to dispute the validity of your lawful ownership, funding, entitlement right, and the current alleged debt you allege I owe.</u> By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

**To independently validate any alleged debt, I need to conduct a complete exam, audit, review and accounting of any alleged debt from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the following requests.**

I also request that you conduct your own investigation and audit of this account since its inception to validate any alleged debt you currently claim I owe. I would like you to validate said alleged debt so that it is accurate to the penny.

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements or refuse to conduct a full audit and investigation of any alleged loan associated with said account. I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

1. Increased the amounts of alleged monthly payments;
2. Increased the principal balance I allegedly owe;
3. Increased any alleged escrow payments;
4. Increased the amounts applied and attributed toward alleged interest on this account;
5. Decreased the proper amounts applied and attributed toward the alleged principal on this account; and/or
6. Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing or lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of Alleged Account # 3014277101, Chase Home Finance, LLC by mortgage auditing and predatory servicing and lending experts. This exam and audit shall review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a **Qualified Written Request** under the **Real Estate Settlement Procedures Act (RESPA)**, codified as **Title 12 § 2605(e)(1)(B)(e)** and **Regulation X § 24 C.F.R §3500.21(f)2** of the United States Code as well as a request under the Truth In Lending Act [TILA] 15 U.S.C. § 1601 et. seq. RESPA provides substantial penalties and fines for non-compliance. Under RESPA you must answer my questions in full within (20) days of receiving this qualified written request.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested must demonstrate:

A. That the loan was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and especially, the Federal Trade Commission Act, Section 5, which identifies Unfair and Deceptive Acts and Practices (UDAP) and the appropriate CA statutes;

B. That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

C. That the claimed legitimate holder in due course of any alleged monetary instrument/deed of trust/mortgage instrument/asset, who is holding such alleged note in compliance with statutes, State and Federal laws, and is entitled to the benefits of any payments;

D. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original alleged loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

E. That each servicer and/or sub-servicer of said alleged loan account in accordance with statute, laws and the terms of any alleged mortgage, monetary instrument/deed of trust/mortgage instrument, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

F. That each and every servicer and/or sub-servicer in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

G. That this mortgage account has been credited, debited, adjusted, amortized, charged correctly, and disclosed fully, commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

H. That interest and principal properly calculated and correctly applied to this loan;

I. That the principal balance has been properly calculated, amortized and accounted for and has never at any time been charged, assessed or collected of fees or expenses, from this account or any other related account arising out of the alleged loan transaction, that were not disclosed or obligated to me in any agreement.

In order to validate said alleged debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, **certified**, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on the alleged loan, account, or my name.

As such, please send to me, at the address above, copies of the documents, front and back, requested below as soon as possible:

1. Any certified or uncertified security, front and back, used for the funding of Alleged Account # 3014277101;

2. Any and all "Pool Agreement(s)" or "servicing agreements", and any and all documents pertaining thereto, the nominal lender and any Government Sponsored Entity, hereinafter ("GSE"), or other party who could claim an interest in the alleged loan;

3. Any and all "Deposit Agreement(s)" regarding Alleged Account # 3014277101, or the "Pool Agreement" including Alleged Account # 3014277101 between Chase Home Finance, LLC and any GSE;

4. Any and all "Servicing Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

5. Any and all "Custodial Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party who could claim an interest in the alleged loan;

6. Any and all "Master Purchasing Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

7. Any and all "Issuer Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

8. Any and all "Commitment to Guarantee" agreement(s), and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

9. Any and all "Release of Document agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

11. Any and all "Servicer's Escrow Custodial Account", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties including any GSE or other party, who could claim an interest in the alleged loan;

12. Any and all "Release of Interest" agreement(s), and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

13. Any Trustee agreement(s), and any and all documents pertaining thereto regarding this account or any and all pool accounts, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party who could claim an interest in the alleged loan;

14. Any documentation evidencing any trust relationship regarding any Mortgage/Deed of trust and any Note relating to this matter;

15. Any and all document(s) establishing the appointment any Trustee of record for the Mortgage/Deed of Trust and any Note;

16. Any and all document(s) establishing the date of any appointment of any Trustee Mortgage/Deed of Trust and any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s);

17. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

18. Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

19. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

20. Any documentation evidencing that this Mortgage/Deed of Trust is not a constructive trust, or any other form of trust;

21. All data, information, notations, text, figures and information contained in any mortgage servicing and accounting computer systems including, but not limited to, Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above;

22. All descriptions and legends of all Codes used in your mortgage servicing and accounting system, so that the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work;

23. All documentation of assignments, transfers, alonge, or other documents evidencing a transfer, sale or assignment of this mortgage, monetary instrument, or other document that secures payment by me to this obligation in this account from the inception of his account to the present date, including any such assignment on Mortgage Electronic Registration System, hereinafter, "MERS";

24. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage, including any such assignments on MERS;

25. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from inception of this account to the present date;

26. The front and back of each and every cancelled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account;

27. All escrow analyses conducted on this account from the inception of this account until the date of this letter;

28. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.;

29. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account;

30. All letters, statements and documents sent to me by your company;

31. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

32. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company;

33. All letters, statements and documents contained in said account file, including any servicers or sub-servicers of this mortgage from the inception of this account to the present date;

34. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument;

35. All copies of property inspection reports, appraisals, BPOs and reports done on my property;

36. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date;

37. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date;

38. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date;

39. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date;

40. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date;

So that I can conduct the audit and review of this account, and determine all proper amounts due, I further request the answers (in writing) to following questions concerning the servicing and accounting of this mortgage account from its inception to the present date:

## ACCOUNT ACCOUNTING AND SERVICING SYSTEMS

1. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that my experts can decipher the data provided.

2. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS AND CREDITS

1. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

## MORTAGAGE AND ASSIGNMENTS

1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt has been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date?

2. If NO, why not?

3. Is your company the servicers of this mortgage account or the holder in due course and the beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been records in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date?

5. If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on said alleged account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1. Have attorney fees ever been assessed to this account from the inception of this account to the present date?

2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3. Have attorney fees ever been charged to this account from the inception of this account to the present date?

4. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5. Have attorney fees ever been collected from this account from the inception of this account to the present date?

6. If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7. Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or security instrument or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9. Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10. Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13. Has interest been charged on any attorney fees assessed or charged to this account?

14. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account?

15. How much total in attorney fees have been assessed to this account from the inception to the present date?

16. How much total in attorney fees have been collected from this account from the inception to the present date?

17. How much total in attorney fees have been charged to this account from the inception to the present date?

18. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date?
2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.
3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS?
2. Has any previous servicers or sub-servicers of this alleged mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS?
3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time?
4. Are late fees considered interest?
5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.
6. Were any of these expenses or damages charged or assessed to this account in any other way?
7. If yes, please describe what expenses or damages were charged or assessed to this account.
8. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.
9. Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.
10. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust, or security instrument or any agreement I signed that authorized the assessment or collection of late fees.
11. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.
12. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.
13. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.
14. Has interest been charged on any late fee assessed or charged to this account?
15. Is interest allowed to be assessed or charged on late fees to this account?
16. Have any late charges been assessed to this account?

17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19. Have late charges been collected on this account from the inception of this account to the present date?

20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

## PROPERTY INSPECTIONS

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on my property from the inception of this account to the present date?

2. If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3. If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4. Please tell me the price charged for each property inspection.

5. Please tell me the date of each property inspection.

6. Please tell me the name and address of each company and person who conducted each property inspection on my property.

7. Please tell me why property inspections were conducted on my property.

8. Please tell me how property inspections are beneficial to me.

9. Please tell me how property inspections are protective of my property.

10. Please explain to me your policy on property inspections.

11. Do you consider the payment of inspection fees as a cost of collection?

12. If yes, why?

13. Do you use property inspections to collect debts?

14. Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe?

15. If yes, please answer when and why?

16. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust security instrument or any agreement I signed that authorized the assessment or collection of property inspection fees.

17. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance?

18. If yes, why?

19. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee?

20. If yes, why?

21. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?
25. Has interest been charged on any inspection fees assessed or charged to this account?
26. If yes, when and how much was charged?
27. Is interest allowed to be assessed or charged on inspection fees to this account?
28. How much total in inspection fees have been assessed to this account from the inception of this account to the present date?
29. How much total in inspection fees has been collected on this account from the inception of this account to the present date?
30. Please forward to me copies of all property inspections made on my property in this mortgage account file.
31. Has any fee charged or assessed for property inspections been placed into an escrow account?

## BPO FEES

1. Have any BPOs (Broker Price Opinions) been conducted on my property?
2. If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.
3. Please tell me the price of each BPO.
4. Please tell me who conducted the BPO.
5. Please tell me why BPOs were conducted on my property.
6. Please tell me how BPOs are beneficial to me.
7. Please tell me how BPOs are protective of my property.
8. Please explain your policy on BPOs.
9. Have any BPO fees been assessed to this account?
10. If yes, how much in total BPO fees have been assessed to this account?
11. Have any BPO fees been charged to this account?
12. If yes, how much in total BPO fees have been charged to this account?
13. Please tell me specifically, in writing, the clause, provision, paragraph, section or sentence, if any, in the note, mortgage, deed of trust or any agreement I signed or executed that authorized the assessment, charge or collection of a BPO fee from me.
14. Please send to me copies of all BPO reports that have been done on my property.
15. Has any fee charged or assessed for a BPO been placed into an escrow account?

## FORCE-PLACED INSURANCE

1. Have you placed or ordered any force-placed insurance policies on my property?
2. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed, security instrument or note.
3. Please tell me the price of each policy.
4. Please tell me the agent for each policy.
5. Please tell me why each policy was placed on my property.
6. Please tell me how the policies are beneficial to me.
7. Please tell me how the policies are protective of my property.
8. Please explain to me your policy on force-placed insurance.
9. Have any force-placed insurance fees been assessed to this account?
10. If yes, how much in total force-placed insurance fees have been assessed to this account.
11. Have any force-placed insurance fees been charged to this mortgage or escrow account?
12. If yes, how much in total force-placed insurance fees have been charged to this mortgage or escrow account?
13. Please identify for me in writing the clause, provision, paragraph, section or sentence of any note, mortgage, deed of trust, security instrument or any agreement I signed or executed that authorized the assessment, charge or collection of force-placed insurance fees from me.
14. Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15. Do you have any relationship with the carrier that issued any policies on my
16. Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.
17. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired?
18. Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question concerning the servicing of this account from its inception to the present date.

1. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2. Did the originator or previous servicers of this account have a warehouse account agreement or contract with your company or an affiliate of your company?

3. Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4. Please identify for me where the **originals of this entire account file** are currently located and how they are being stored, kept and protected.

5. **Where is the original monetary instrument or mortgage that I signed located?** Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

6. Where is the original deed of trust/security instrument or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

7. Since the inception of this account/loan, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8. Since the inception of this account/loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9. Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this alleged mortgage account.

11. Has this alleged mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this alleged mortgage has been a part of from the inception of this account to the present date.

12. Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this alleged mortgage account is located?

13. Has there been any electronic assignment of this alleged mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned mortgage servicing rights to this account

as well as the beneficial interest to the payments of alleged principal and alleged interest on this alleged loan.

14. Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17. How much was paid for this individual mortgage account by you, or any company you represent?

18. If part of a mortgage pool, what was the principal balance used by you, and your company to determine payment for this individual mortgage loan?

19. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

20. To whom did you issue a check or payment for obtaining this a mortgage loan?

21. Please provide me with copies of the front and back of any and all canceled checks.

22. Did any investor approve of the foreclosure of my property?

23. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24. Please identify all persons who would approve the foreclosure of my property.

Please produce the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document requests and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA request for accounting and legal records and Dispute of Debt letter will be sent to Federal Trade Commission (FTC), Housing and Urban Development (HUD), Office of Thrift Supervision, all relevant state and federal regulators and other consumer advocates, as well as my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct any abuse(s) or scheme(s) that may be uncovered and documented.

## Default Provision(s) under this QUALIFIED WRITTEN REQUEST

"Chase Home Finance, LLC, or any agents, transfers or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points contained here in this RESPA REQUEST", agrees and consents to including, but not limited to, any violations of law, and/or immediate termination/removal of any and all right, title and interest (liens) in any property or collateral connected to DAVID CARAVANTES or Account #3014277101, and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST.

1. David Caravantes' right, due to breach of contract and fiduciary responsibility by fraud and/or misrepresentation, to revocation and rescission of any and all power(s) of attorney or appointment of Chase Home Finance, LLC may have or may have had in connection with Account #3014277101, and any property and/or real estate connected with account # 3014277101.

2. David Caravantes' right to have any certified or uncertified security instrument associated with said account re-registered in David Caravantes', _and only_ David Caravantes' name.

3. David Caravantes' right of collection against Chase Home Finance, LLC liability insurance and/or bond.

4. David Caravantes' entitlement to file and execute any instruments, as power of attorney for and by Chase Home Finance, LLC, including, but not limited to, by a new certificated security or any security agreement perfected by the filing of a UCC Financing Statement with the Secretary of State in the State where David Caravantes' property is located.

5. David Caravantes' right to damages because of Chase Home Finance, LLC wrongful registration, breach of intermediary responsibility, and improper accounting of the Note asset against which Chase Home Finance, LLC issued to DAVID CARAVANTES a certified check for the original value of David Caravantes' monetary instrument/Note.

6. David Caravantes' right to have loan or debt associated with account # 3014277101, completely set off because of Chase Home Finance, LLC' wrongful registration, breach of contract/intermediary responsibility with regard to David Caravantes' monetary instrument/asset by Chase Home Finance, LLC sending confirmation of the set off of wrongful liability of David Caravantes' and issuing a certified check for the difference between the original value of David Caravantes' monetary instrument/asset and what David Caravantes' mistakenly sent to Chase Home Finance, LLC as payment for such wrongful liability.

Chase Home Finance, LLC or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this "RESPA REQUEST" in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Chase Home Finance, LLC in accordance with Chase Home Finance, LLC Articles of Incorporation, and By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corporation/National Association.

Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within twenty days. If no verified rebuttal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as Alleged Mortgage Claimant's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

**Power of Attorney:** If Chase Home Finance, LLC fail to rebut any part of this "RESPA REQUEST", Chase Home Finance, LLC agree with the granting unto DAVID CARAVANTES an unlimited **Power of Attorney** and any and all full authorization in signing and endorsing Chase Home Finance, LLC name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement, or any agreement arising from this agreement. Pre-emption of or to any bankruptcy proceeding shall not discharge any obligation(s) of this agreement.

**Consent and agreement:** Chase Home Finance, LLC consent and are in agreement with this Power of Attorney and waive any and all claims of DAVID CARAVANTES, and/or defenses and said Power of Attorney remains in effect until the satisfaction of all obligation(s) by Chase Home Finance, LLC have been satisfied.

Respectfully yours,

David Caravantes
**Authorized Representative**
**Creditor, Secured Party**
**Beneficiary**

cc:   **Federal Trade Commission**          **Office of House Enterprise Oversight (OHEO)**
      **600 Pennsylvania Ave. NW**          **1700 G Street, NW, Fourth Floor**
      **Washington, DC 20580**             **Washington, DC 20552**

      **Office of Interstate Land Sales/RESPA Division**
      **Office of Housing, Room 9146**
      **Department of Housing and Urban Development**
      **451 Seventh Street, SW**
      **Washington, DC 20410**

**State of California        )**
**                           )        ss.**
**San Diego County           )**

**The above named, "David Caravantes" appeared and upon showing identification, subscribed and**
**sworn before me,** _T. McNally_

**A Notary Public, this** _23rd_ **day of** _March_ **, 2009.** _2010_

_7/4/10_
**My commission expires**

_T McNally_
**Notary**

OFFICIAL SEAL
T. McNALLY
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 1673473
SAN DIEGO COUNTY
My Commission Exp. July 4, 2010

# Exhibit 5

**CALIFORNIA RECONVEYANCE COMPANY**
9200 Oakdale Avenue – CA2-4379
Chatsworth, CA 91311
(800)892-6902
(818)775-2258 Fax


March 26, 2010

David Caravantes
5189 Argonne Court
San Diego, CA 92117


Loan No:      3014277101
T.S. No:      740587CA
Owner(s):     DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND
              SEPARATE PROPERTY
Property:     5189  ARGONNE COURT
              SAN DIEGO, CA 92117


Dear David Caravantes:

California Reconveyance Company has received your letter dated 03/23/10 in
our office on 03/25/10.  Please be advised that we have forwarded your letter on
03/26/10, to JPMorgan Chase Bank for review and response.

Sincerely,

CALIFORNIA RECONVEYANCE COMPANY


_____
CARLA DODD, ASSET RECOVERY SPECIALIST SR.
818-775-3092

# Exhibit 6

**CHASE ⬭**

**Chase Home Finance LLC**
800 State Highway 121 Bypass
Lewisville, TX 75067

March 26, 2010

David Caravantes
5189 Argonne Court
San Diego, CA 92117

Re:    Loan Number        ******7191

Dear David Caravantes:

We are writing in response to your correspondence regarding your Qualified Written Request (QWR) for the above-mentioned mortgage. This letter was forwarded to our office on March 26, 2010, for review.

We are investigating your issues and will work to provide you with a complete and accurate response. Chase appreciates your patience in this matter.

Chase's goal is to provide the highest level of quality service. In the interim period, you may contact our Customer Care unit at 1-800-848-9380.

Sincerely,


Home Lending Executive Office/j2b

# Exhibit 7

David Caravantes
5189 Argonne Court
San Diego, CA 92117

May 10, 2010


Vrej Joukadarian
Jenny Dang
Carla Dodd
California Reconveyance Company
9200 Oakdale Ave., Mail Stop: CA2-4379
Chatsworth, CA 91311

Re:   **Advisory to Legal Action** pertaining to:
Trustee Sale No. 740587CA
Loan No. 3014277101
Title Order No. 100141544-CA-MAI


To All Named Above:

In reference to your letter dated March 26, 2010, I would like to take this opportunity to thank you for the speedy response to my QWR; however, despite not receiving a certified letter in clear violation of *Cal. Civ. Code 2923.5(b) and 2943(b)*, I have recently been advised through other means, that JP Morgan Chase is attempting to foreclose on my home. Let me be perfectly clear, any attempt to perform a non-judicial foreclosure will be met with swift and harsh legal action in Federal Court on not only JP Morgan Chase, but California Reconveyance Company and all those individuals so named above acting in concert with the illegal actions of JP Morgan Chase.

As you know we have engaged a top ranked mortgage auditing firm. Upon preliminary review of our loan documents, they have advised us that JP Morgan Chase has violated many Federal RESPA and TILA laws, including, but not limited to:

- Failure to provide two copies of Right to Cancel; 12 C.F.R. § 226.23(b)
- Failure to provide the Truth-in-Lending disclosure; 12 C.F.R. §§ 226.17, 226.18
- Failure to make all legal relationships "conspicuously known"; 12 C.F.R. 226.23(a)(3)

In addition to the above, neither you, nor JP Morgan Chase, have legal standing per UCC 3301 and Article 3 to foreclose as neither of you are the "holder in due course" of the Note and lack the ability to enforce the Note. California Reconveyance Company is acting on behalf of JP Morgan Chase, a SERVICER of this loan, not the CREDITOR and thus has no right to foreclose due to (a) lack of proof of possession/enforceability of the Note and (b) unable to prove they have been financially harmed by my default. I am fully aware of the mortgage pool that my loan was entered into, the financial gain obtained from that pool and that a **Credit Default Swap** was also involved. My litigation team will make this extremely clear in court.

In summary, we will be filing a complaint against JP Morgan Chase in Federal Court requesting the court to investigate their legal standing to foreclose as a SERVICER. **If you continue to proceed with the foreclosure process, all of you (individuals) and your company will be so named as Co-Defendants.**


Respectfully,

David Caravantes

# Exhibit 8

# CHASE ◻

Chase Home Finance LLC
800 State Highway 121 Bypass
Lewisville, TX 75067

June 3, 2010

David Caravantes
5189 Argonne Ct.
San Diego, CA 92117

Re:     Loan Number:          ******7101

Dear David Caravantes:

This letter is in response to the correspondence we received March 26, 2010, addressed to Chase Home Finance LLC (Chase) regarding the above-referenced mortgage loan serviced by Chase.

Enclosed is a copy of the Note that was signed at the origination of the loan.  It is our position that you have undertaken a valid, binding and legally enforceable obligation to Chase. Furthermore, neither you nor any employee, officer, director, agent, representative, affiliate, subsidiary, successor or assign has any authority to act on our behalf or on the behalf of any of our parent, affiliates, subsidiaries, successors or assigns.

Enclosed please find a copy of the following documents:

        Adjustable Rate Note
        Security Instrument
        HUD-1 Settlement Statement
        Good Faith Estimate
        Truth in Lending Statement
        Loan Application
        Appraisal
        Notice of Right to Cancel/Disclosures
        Loan Transaction History

Any documents or information requested but not included with this package are unavailable or considered proprietary, and will not be provided.

Page 2
Caravantes

## Account Accounting and Servicing

- The information requested under this section is proprietary and will not be provided.

## Debits and Credits

- Please refer to the enclosed loan history reconciliation for any questions regarding debits and credits.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

## Mortgage and Assignments

- Chase Home Finance LLC is the servicer of this mortgage loan.
- Any assignment of the Security Instrument, previous sellers, purchasers, assignors, and assignees would be a matter of public record.  Please review public record for this information.

## Attorney Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding attorneys' fees.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of attorneys' fees, or of our ability to assess and collect attorneys' fees.
- No interest has been charged on any attorneys' fees which may or may not have been assessed to this account.  Chase does not charge interest on any type of fees which may or may not have been assessed to this account.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

## Suspense/Unapplied Accounts

- For all questions, please refer to the enclosed loan history reconciliation.

## Late Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding late charges assessed or collected.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of late charges, or of our ability to assess and collect late charges.

Page 3
Caravantes

## Property Inspections

- Any questions regarding inspection fees assessed or collected please refer to the enclosed loan history reconciliation.
- Any questions regarding the applicability or nature of property inspection fees, or of our ability or requirement to conduct property inspections and assess and collect fees for the property inspections, please refer to the enclosed copy of the Security Instrument.

## BPO Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding fees assessed or collected in connection with any Broker's Price Opinion (BPO) that may have been ordered by Chase.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of BPO fees, or of our ability to obtain a BPO on the property, or to assess and collect BPO fees.

## Forced-Placed Insurance

- No force-placed insurance policies have been purchased for this loan.

## Servicing Related Questions/Other

- Any assignment of the Security Instrument, previous sellers, purchasers, assignors, and assignees would be a matter of public record.  Please review public record for this information.
- The investor for this loan is JPMorgan Chase Bank, N.A.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

Additionally, please be advised that the "Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent" and multiple documents included in the correspondence are invalid and are not recognized by any of the listed "Recipients."  Please immediately advise if any documents in connection with the "Default Provision(s)" or "Power of Attorney" with any agency, court or other forum has been filed.  We intend to take prompt action to see that any entity or individual with whom you have filed any such document is notified of its invalidity. Should one attempt to interfere with our lien interest in the property, we will investigate and determine the appropriate course of action, which may include initiating legal proceedings and/or reporting the situation to the appropriate government agency or law enforcement authorities.

Page 4
Caravantes

One should know that other borrowers have fallen victim to unlawful scams that include documents similar to the "Default Provision(s)" and "Power of Attorney" included with the Qualified Written Request that was sent to Chase. We are aware of advertising and other solicitations for borrowers to lodge such documents with their lender. The solicitations claim that the inclusion of "Default Provision(s)" and "Power of Attorney" will extinguish valid and legal debt obligations. These efforts are invalid, do not eliminate debt, and may be illegal. We strongly advise that the borrower consult an attorney or local law enforcement regarding any efforts to avoid your obligation, as well as the repercussions of the efforts taken so far.

Please note that foreclosure proceedings were initiated on this property. You may contact our foreclosure representative California Reconveyance Corporation at 800-892-6902 for information regarding those proceedings.

Chase's goal is to provide the highest level of quality service. If you have any questions, you may contact our Customer Service Department at 800-848-9136.

This letter shall not be deemed to be a waiver of any rights or remedies, which are expressly reserved.

Sincerely,

Chase Home Finance
Executive Resolution Group
qdw

Enclosures (9)

# Exhibit 9

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N110612
Chatsworth, CA 91311
800-892-6902

**Trustee Sale No.**   **740587CA**
Loan No.          3014277101
Title Order No.    100141544-CA-MAI

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08-15-2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 07-06-2010 at 10:00 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 08-27-2007, Book , Page , Instrument 2007-0569430,      of official records in the Office of the Recorder of SAN DIEGO County, California, executed by:  DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY STATUE, 250 EAST MAIN STREET, EL CAJON, CA

Legal Description:  LOT(S) 73 OF PARK WEST UNIT NO. 2, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF NO. 5550, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON MARCH 31, 1965.

Amount of unpaid balance and other charges: $556,616.47(estimated)

Street address and other common designation of the real property:   5189  ARGONNE COURT
                                                                     SAN DIEGO, CA 92117
                                                                     APN Number:  671-360-10
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 06-11-2010                              **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

*Deborah Brignac*

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.
DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

Exhibit

## DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

3.  It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

4.  The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank,
National Association

Name:  Ann Thorn
Title:    First Vice President

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

David Caravantes, Pro Se

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

5189 Argonne Court, SD, CA 92117, 858-490-1331

## DEFENDANTS

CALIFORNIA RECONVEYANCE COMPANY, a California corporation; WASHINGTON MUTUAL BANK, ET AL.

County of Residence of First Listed Defendant   Los Angeles
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'10 CV 1407 IEG   AJB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☒ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC Sec 1601, 12 USC 2605, 15 USC 1639, 12 CFR 226.32, 18 USC 1961

Brief description of cause:
TILA, RESPA, HOEPA AND RICO VIOLATIONS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE   7/6/10

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  1535   AMOUNT  $350—   APPLYING IFP   JUDGE   MAG. JUDGE

07-06-10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS015351
Cashier ID: mbain
Transaction Date: 07/06/2010
Payer Name: CARAVANTES V CA RECONVEYANCE C
--------------------------------
CIVIL FILING FEE
 For: CARAVANTES V CA RECONVEYANCE C
 Case/Party: D-CAS-3-10-CV-001407-001
 Amount:      $350.00
--------------------------------
CASH
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```