1  David Caravantes, Pro Se
   5189 Argonne Court
2  San Diego, California 92117
   Telephone: 858-490-1331
3  Facsimile: 858-490-9191
   E-Mail: dave@detomasenergy.com
4

FILED

10 JUL -7 PM 1:39

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              OF THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  DAVID CARAVANTES, an individual,        )   CASE NO. 10 CV 1 407   IEG  AJB
                                            )
12              Plaintiff, pro se,          )   PLAINTIFF CARAVANTES'S EX PARTE
                                            )   APPLICATION FOR TEMPORARY
13  v.                                      )   RESTRAINING ORDER AND ORDER TO
                                            )   SHOW CAUSE RE PRELIMINARY
14  CALIFORNIA RECONVEYANCE                 )   INJUNCTION; MEMORANDUM OF
    COMPANY, a California corporation;      )   POINTS AND AUTHORITIES IN SUPPORT
15  WASHINGTON MUTUAL BANK, FA, a           )   THEREOF; CERTIFICATE OF DAVID
    Federal Savings Bank organized and existing )   CARAVANTES RE NOTICE TO
16  under the laws of the United States;    )   DEFENDANTS
    JPMORGAN CHASE BANK, N.A., a            )
17  National Banking Association organized and )   DATE:
    existing under the laws of the United States; )   TIME:
18  CHASE HOME FINANCE LLC, a Delaware      )   JUDGE:
    Limited Liability Company; VREJ         )   LOCATION:
19  JOUKADARIAN, an individual; CLEMENT     )
    J. DURKIN, an individual; DEBORAH       )
20  BRIGNAC, an individual; ANN THORN, an   )
    individual; and DOES 1-20, inclusive    )
21              Defendants.                 )
                                            )
22                                          )
                                            )
23                                          )
                                            )
24                                          )

25      Plaintiff DAVID CARAVANTES (hereinafter referred to as "Plaintiff"), representing

26  himself pro se, moves this court for a temporary restraining order, pursuant to Fed. R. Civ. P.

27  Rule 65(b), restraining and enjoining Defendant CALIFORNIA RECONVEYANCE

28  COMPANY (hereinafter referred to as "CRC"), Defendant WASHINGTON MUTUAL BANK,

1  FA (hereinafter "WaMu"), and Defendant JPMORGAN CHASE BANK, N.A. (hereinafter

2  referred to as "JPMorgan"), their agents, employees, successors, attorneys, assigns, and all

3  persons in active concert and participation with it or them from engaging in or performing any

4  act to deprive Plaintiff of his residence in and possession of the real property located at 5189

5  Argonne Court, San Diego, California 92117 including, but not limited to, instituting or

6  maintaining sale proceedings on the property or from otherwise taking any steps whatsoever to

7  deprive Plaintiff of his residence in and possession of the property or to impair or degrade the

8  value of the property pending a hearing on the Order to Show Cause re Preliminary Injunction

9  requested herein.

10        Unless this application is granted, Plaintiff will suffer immediate and irreparable injury,

11  loss, and damage if the property is sold as scheduled at **10:00 a.m. on Monday, July 12, 2010**,

12  thus depriving Plaintiff of his residence in and possession of his home and property, before a

13  hearing can be had on the Order to Show Cause, as more fully set forth in my verified

14  Complaint, and in my certificate attached hereto.

15        Dated this __7__ day of __July__, 2010.

16

17                        Respectfully Submitted,

18

19

20                        DAVID CARAVANTES, Plaintiff pro se

21                        5189 Argonne Court

22                        San Diego, California 92117

23

24

25

26

27

28

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION                                                       2

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, representing himself, submits this points and authorities in support of his Application for Temporary Restraining Order ("TRO") and Preliminary Injunction, set forth in the Complaint in the instant action, filed concurrently herewith.

## I.   INTRODUCTION

Defendants WaMu and JPMorgan have continuously failed to act in a lawful manner in their transactions with Plaintiff in regards to his alleged mortgage.  As a result, Defendant CRC has noticed a foreclosure sale of Plaintiff's residence and property for July 12, 2010.  If Plaintiff's property is sold before these issues are adjudicated by this Court, Plaintiff will be left with no adequate remedy at law. Immediate injunctive relief is imperative in this case because without an order from this Court, Defendants CRC, WaMu, and JPMorgan will be able to commit what amounts to the theft of Plaintiff's home.  The pertinent facts, as alleged in Plaintiff's Complaint filed concurrently herewith, are as follows.

## II.   BACKGROUND FACTS

This case arises out of a loan and foreclosure related to the Property, of which Plaintiff is the rightful owner.  Plaintiff became the owner of legal title to the Property on or about August 15, 2007.  He acquired the Property via a loan from Defendant WaMu.  The terms of the loan were memorialized in a promissory note ("the Note"), which was in turn secured by a Deed of Trust on the Property.  The Deed of Trust was recorded in San Diego County on August 27, 2007 as instrument number 2007-0569430 ("Deed of Trust").  The Deed of Trust identified Defendant WaMu as the lender and provided that payments were to be made to Defendant WaMu. Defendant CRC was named as Trustee.

When the loan was consummated, Plaintiff did not receive required documents and disclosures, including, but not limited to, the Truth in Lending Disclosure statement containing required material disclosures and the required number of copies of the Notice of Right to Cancel containing the dates that the rescission period expires.  Plaintiff is entitled to damages for violations that occurred at the time of consummation of the loan transaction.

/ / /

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

3

1   Plaintiff's income decreased dramatically in or around 2008 when certain information

2   concerning Plaintiff was reported by the media.  Said information irreparably damaged

3   Plaintiff's reputation in his field and led to his inability to work in said field.  Plaintiff has filed a

4   separate, unrelated lawsuit concerning these damaging representations.  Plaintiff has been in and

5   out of work since that point, and has not had consistent income, though his financial situation has

6   started to improve recently.

7   In or around September 2008, as stated above, Defendant WaMu closed.  Subsequently,

8   Defendant JPMorgan purchased the assets and certain liabilities of Defendant WaMu.  Plaintiff

9   received a form letter stating that Defendant WaMu had become Defendant JPMorgan.  The

10   letter did not state anything about whether or not Defendant JPMorgan had become the

11   beneficiary under the Deed of Trust.  Plaintiff was never received notice of any change in

12   beneficiary.  Plaintiff subsequently received statements from Defendant Chase Home Finance,

13   and Plaintiff directed payments to Defendant Chase Home Finance, assuming that Defendant

14   Chase Home Finance was the new servicer.

15   In or around November 2009, Plaintiff received a letter from Chase Home Ownership

16   Preservation Office stating that many Americans are experiencing difficulty with their mortgage

17   payments, and that *if* Plaintiff was experiencing financial difficulty there were some options

18   available to him that would allegedly assist Plaintiff with making payments.  Plaintiff

19   subsequently received a few similar letters, with the most recent letter being dated June 8, 2010.

20   None of these letters discussed Plaintiff's actual financial situation, but merely listed potential

21   options and included forms for Plaintiff to complete and return with certain documentation such

22   as pay stubs.  The letters had the well-known "Chase" logo at the top, but did not specify if the

23   Chase Home Ownership Preservation Office was part of Defendant Chase Home Finance or

24   Defendant JPMorgan.  Plaintiff was aware of other individuals who had attempted to use these

25   options with other banks who had had extreme difficulty with the process, and was reluctant to

26   exercise these options, instead remaining hopeful that his financial situation would improve and

27   allow him to resume payment.  A copy of the June 8, 2010 letter is attached hereto as Exhibit 1.

28   / / /

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION                                                                                          4

1    On or about January 25, 2010, Defendant Chase Home Finance mailed to Plaintiff a letter

2  titled "Notice of Collection Activity" alleging that Plaintiff was in default under the terms of the

3  Note.  The letter did not attempt to discuss any options available to Plaintiff to avoid foreclosure

4  other than paying the full amount allegedly due.  A copy of the Notice of Collection Activity is

5  attached hereto as Exhibit 2.

6    On or about March 10, 2010, Defendant CRC recorded a Notice of Default on the

7  Property ("Notice of Default").  In this Notice of Default, which was executed on March 2, 2010,

8  Defendant WaMu is identified as the beneficiary under the Deed of Trust.  Notably, the Notice of

9  Default states that the "beneficial interest under said Deed of Trust and the obligations secured

10  thereby are presently held by the beneficiary" and that the "present beneficiary" had executed

11  and delivered to Defendant CRC as Trustee a Declaration and Demand for Sale.  The Notice of

12  Default was signed by Defendant Joukadarian on behalf of Defendant CRC, as Trustee.  A copy

13  of the Notice of Default is attached hereto as Exhibit 3.  After recordation in San Diego County,

14  California, the Notice of Default and Declaration of Compliance were mailed to Defendant

15  CRC's offices in Chatsworth, California.  Interestingly, the Notice of Default Declaration of

16  Compliance was signed by Defendant Durkin, for Defendant JPMorgan, not by Defendant

17  WaMu, which implies that Defendant JPMorgan is the current beneficiary instead of Defendant

18  WaMu.  There are no documents evidencing a substitution of beneficiary other than the

19  abovementioned form letter that Plaintiff received that stated merely that Defendant WaMu had

20  become Defendant JPMorgan.

21    The Declaration of Compliance indicates that the "mortgagee, beneficiary or authorized

22  agent tried with due diligence but was unable to contact the borrower" to discuss Plaintiff's

23  financial situation and discuss options to avoid foreclosure as required by California Civil Code

24  § 2923.5, and that more than thirty days had elapsed since due diligence was completed.  Apart

25  from the abovementioned, nonspecific letters to Plaintiff from Chase Home Ownership

26  Preservation Office, neither Defendant WaMu, Defendant JPMorgan, nor Defendant Chase

27  Home Finance sent any letters or made any phone calls to Plaintiff concerning his personal

28  financial situation and options to avoid foreclosure that were specifically available to him. The

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

1  only documents Plaintiff has received concerning his personal financial situation are the Notice

2  of Collection Activity, the Notice of Default, and the Notice of Trustee's Sale (discussed below).

3  Even if the nonspecific letters qualify as an attempt to contact Plaintiff to discuss his financial

4  situation and options to avoid foreclosure, the most recent letter was dated June 8, 2010, such

5  that thirty days have not elapsed since due diligence was attempted.

6          In or around March, 2010, Plaintiff began investigating his legal rights concerning the

7  foreclosure and retained a mortgage auditing firm, and on March 23, 2010, Plaintiff sent a

8  Qualified Written Request ("QWR") letter via certified mail to Defendants CRC, JPMorgan, and

9  Chase Home Finance.  This letter clearly stated that it was a "RESPA Qualified Written Request,

10  Complaint, Dispute of Alleged Debt, Request for Verification, Validation, and TILA Request,"

11  and made several specific requests for documentation and information concerning the loan

12  transaction at issue in this case.  A copy of the QWR is attached hereto as Exhibit 4.   On or

13  around March 26, 2010, Defendant CRC sent a letter to Plaintiff acknowledging receipt of the

14  QWR and stating that Defendant CRC had forwarded the letter to Defendant JPMorgan.  Also on

15  or around March 26, 2010, Defendant Chase Home Finance sent a letter to Plaintiff

16  acknowledging receipt of the QWR and stating that a further response would be forthcoming.

17  Copies of the acknowledgement letters sent by Defendant CRC and Defendant Chase Home

18  Finance are attached hereto as Exhibits 5 and 6, respectively.

19          On May 10, 2010, Plaintiff sent a letter to Defendant CRC and Defendant Joukadarian, as

20  well as Carla Dodd and Jenny Dang, all of whom were named as described above on

21  documentation Plaintiff had received from Defendant CRC.  In this letter, Plaintiff informed

22  these defendants that he had retained the mortgage auditing firm, that the firm had informed

23  Plaintiff that Defendant JPMorgan had violated numerous laws in regards to the loan documents,

24  that neither Defendant CRC nor Defendant JPMorgan have standing to foreclose and that neither

25  can demonstrate that they have been harmed by Plaintiff's default, and that Defendants CRC and

26  Joukadarian, as well as Carla Dodd and Jenny Dang, would be named as co-defendants in a

27  lawsuit against Defendant JPMorgan if Defendant CRC proceeds with the foreclosure process.

28  A copy of the aforementioned letter is attached hereto as Exhibit 7.

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION                                                                                    6

On or around June 3, 2010, Defendant Chase Home Finance sent an incomplete response to the QWR in which it repeatedly stated that information or documentation requested was proprietary or unavailable.  As the response was signed with an illegible scrawl, Plaintiff has no way to determine who prepared the response in order to attempt to clarify the statements made in the response or obtain further information.  This response stated that Defendant JPMorgan is the "investor," but does not define this term or state that Defendant JPMorgan was the beneficiary, and states that Defendant Chase Home Finance is the servicer.  A copy of the response to the QWR is attached hereto as Exhibit 8.

Defendant CRC executed a Notice of Trustee's Sale ("Notice of Sale") on June 11, 2010. The copy received by Plaintiff does not indicate if or when the Notice of Sale was recorded.  The Notice of Sale was posted on Plaintiff's door on or about June 11, 2010, and Plaintiff received a copy in the mail on or about June 12, 2010.  A copy of the Notice of Sale and what purports to be the declaration that Defendant JPMorgan is exempt from notice requirements under California Civil Code Section 2923.53 are attached hereto as Exhibit 9.  The Notice of Sale states that the sale is scheduled to take place on July 12, 2010, at 10:00 a.m., and is signed by Defendant Brignac for Defendant CRC, as Trustee, using a stamp or electronic signature of some kind.  The Notice of Sale requests that, after recordation in San Diego County, California, the Notice of Sale and declaration be mailed to Defendant CRC's offices in Chatsworth, California.

The Notice of Sale was accompanied by what appears to be the declaration required by California Civil Code Section 2923.54 stating whether or not the mortgage loan servicer has an exemption under California Civil Code Section 2923.53 that is current and valid on the date the Notice of Sale is filed.  Interestingly, this declaration was neither signed nor dated.  It merely states, type-written:

> JP Morgan Chase Bank,
>
> National Association
>
> Name:  Ann Thorn
>
> Title:  First Vice President

/ / /

1  This language makes it appear as though Defendant JPMorgan is the servicer of the Note rather

2  than Defendant Chase Home Finance.

3        Because of the confusing language in the Notice of Default and Notice of Sale, it is

4  difficult to determine whether Defendant WaMu or Defendant JPMorgan directed Defendant

5  CRC to conduct the Trustee's Sale of the Property, ostensibly to collect the unpaid balance on

6  the Note secured by the Deed of Trust.  On June 28, 2010, Plaintiff contacted Defendant

7  JPMorgan via telephone to inquire about postponement of the trustee's sale and give notice that

8  the instant lawsuit was going to be filed, including notice of the Application for TRO.  Defendant

9  JPMorgan told Plaintiff that he would have to talk to Defendant CRC regarding postponement

10  and the Application for TRO, as Plaintiff CRC is handling the sale.  Plaintiff then called

11  Defendant CRC regarding same.  Defendant CRC told Plaintiff that they would need advice from

12  Defendant JPMorgan regarding postponement of the sale, and told Plaintiff that he needed to

13  speak to Elmer Bernal regarding postponement and the Application for TRO.  Plaintiff

14  subsequently left a voicemail for Mr. Bernal concerning same.  As of the present date, Plaintiff

15  has been unable to speak with Mr. Bernal.  Due to the imminence of the foreclosure sale,

16  Plaintiff has been left with no other choice but to file the instant Application and the Complaint

17  in order to prevent the unlawful sale of his home.

18        Because (1) Plaintiff is likely to prevail on the merits of the case at trial, as described

19  below, (2) Plaintiff's loss of his home constitutes irreparable injury as a matter of law, (3) the

20  harm suffered by Plaintiff if he loses his home clearly outweighs the minimal hardship

21  Defendants CRC, WaMu, and JPMorgan may suffer if the sale is postponed and defendants

22  ultimately prevail, (4) public interest favors granting the instant Application, (5) specific facts in

23  the Complaint clearly show that Plaintiff will suffer immediate and irreparable injury before

24  Defendants CRC, WaMu, and JPMorgan can be heard in opposition, and Plaintiff, as his own

25  attorney, has certified in writing his efforts to give notice and the reasons why if such notice he

26  has given is insufficient, why notice should not be required, Plaintiff respectfully requests that

27  this Court grant the instant Application and restrain Defendants CRC, WaMu, and JPMorgan

28  from proceeding with the foreclosure sale of Plaintiff's home.

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

# III.   ARGUMENT

The purpose of a temporary restraining order ("TRO") is to preserve the status quo pending a full hearing on a preliminary injunction. *Bronco Wine Co. v. U.S. Dept. of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996). A party seeking a TRO must satisfy the same test that is required for the issuance of a preliminary injunction. Id.  A party seeking preliminary injunctive relief under Federal Rule of Civil Procedure Rule 65 must show (A) a likelihood of success on the merits, (B) a significant threat of irreparable harm, (C) that the balance of hardships favors the applicant, and (D) whether any public interest favors granting an injunction. *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003)(citing *Dollar Rent-a-Car of Wash., Inc. v. Travelers Indem. Co.,* 774 F.2d 1371, 1374 (9th Cir. 1985)) *vacated and remanded on other grounds* by *Gonzalez v. Raich*, 545 U.S. 1 (2005).  Rule 65 also states that a TRO may be issued without written or oral notice to the adverse party or its attorney if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. Pro. Rule 65(b)(1).

   A.   Because Defendants CRC, WaMu, and JPMorgan lack standing to foreclose and Defendants violated several provisions of TILA, RESPA,  HOEPA, and RICO and other laws of the State of California, Plaintiff is likely to prevail on the merits at trial.

Because of the overwhelming hardship to Plaintiffs, the correct balancing test requires they only establish a serious question going to the merits and a "fair chance" that they will prevail. *Miller v. California Pacific Medical Center*, 19 F.3d 449, 450 (9th Cir. 1994).  *See Sun Microsystems Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1119 (9th Cir. 1999) ("the greater the relative hardship to the moving party, the less probability of success must be shown"). Plaintiff's Complaint seeks several forms of relief, including rescission of the Notice of Default, Substitution of Trustee, and Notice of Sale and/or declaratory relief that said documents are invalid and cancellation of the Deed of Trust.  Should the sale proceed, the Complaint will be

1    amended to request that the sale be set aside.  The bases for this relief include the lack of

2    standing of Defendants CRC and JPMorgan to enforce the Note and foreclose on the loan and

3    sell the Property and assorted violations of TILA, RESPA, HOEPA, RICO, and state law

4    associated with the loan transactions between Plaintiff and Defendants CRC, WaMu, JPMorgan,

5    and Chase Home Finance.

6         The bases for rescinding or declaring invalid the Notice of Default and Notice of Sale, or

7    setting aside the trustee's sale if it takes place, are irregularities in the aforementioned documents

8    and that Defendants CRC, WaMu, and JPMorgan are not the people entitled to enforce the Note

9    and the security interest in the Deed of Trust or otherwise lack the power to do so, which would

10   render the foreclosure sale unlawful and void as a matter of law.  In the present case, these

11   irregularities in connection with the Notice of Default and Notice of Sale that prevent Defendants

12   CRC, WaMu, and JPMorgan from being able to foreclose under the Note and Deed of Trust.

13        First, the Notice of Default is improper because the Declaration of Compliance is

14   supposed to be signed by the present beneficiary, but this declaration was signed by Defendant

15   Durkin for Defendant JPMorgan, who is at most the servicer and not the beneficiary as described

16   in the Notice of Default.  The servicer does not have the power to enforce the Note or the Deed

17   of Trust unless they hold the note. CAL. COMMERCIAL CODE § 3301.  There is no record of

18   Defendant JPMorgan becoming the holder of the note, unless it can so become simply by signing

19   the declaration.  Furthermore, "due diligence" under California Civil Code § 2923.5(g) requires

20   that the mortgagee, beneficiary or authorized agent first attempt to contact the borrower through

21   first-class mail, followed by three attempts to contact the borrower by telephone.  Even if the

22   abovementioned non-specific letters qualify as due diligence letters under this section, none of

23   the Defendants attempted to contact Plaintiff by telephone.

24        Second, the Notice of Sale is improper because it was required to be accompanied by a

25   declaration stating whether or not the mortgage servicer had an exemption from the notice

26   requirements that was current and valid as of the date the Notice of Sale was filed pursuant to

27   California Civil Code Section 2923.54.  As noted above, this declaration was neither signed nor

28   dated by Defendant Thorn for Defendant JPMorgan, and thus does not demonstrate that

1  Defendant Thorn had personal knowledge in June 2010 of whether or not there was a current and

2  valid exemption in June of 2010 when the Notice of Sale was executed.  Furthermore, if it is

3  determined that Defendant Chase Home Finance is the servicer and not Defendant JPMorgan,

4  there is no declaration pertaining to Defendant Chase Home Finance as servicer at all, thus

5  rendering the declaration of Notice of Sale invalid.

6        Due to the foregoing, Defendants CRC, WaMu, and/or JPMorgan cannot lawfully

7  conduct the sale on July 12, 2010. Therefore, the decision on the critical issue of whether these

8  defendants have standing to foreclose should not be postponed until after a foreclosure sale has

9  deprived Plaintiff of his home.[1]

10        In addition to the likelihood of success on the merits concerning the defendants' standing,

11  Plaintiff has also established a serious question going to the merits and a reasonable likelihood of

12  success on various federal law claims under statutes such as TILA, RESPA, HOEPA, and RICO.

13  For example, in the present case, the loan transaction between Plaintiff and Defendant WaMu is

14  a mortgage loan covered by RESPA.

15        Plaintiff is not certain at this time exactly which Defendant – JPMorgan or Chase Home

16  Finance – was actually the servicer of the loan at any given time after Defendant WaMu was

17  purchased by Defendant JPMorgan, although he believed that the loan servicer was Defendant

18  Chase Home Finance at the time of the Notice of Sale.  However, due to the conspiratorial nature

19  of the misdeeds alleged herein, and also due to Defendant JPMorgan's and Defendant Chase

20  Home Finance's general failure to properly advise Plaintiff as to the roles and identities of

21  various entities that were purportedly handling his loan at any given time, these allegations are

22  made as to Defendant JPMorgan and Defendant Chase Home Finance, in addition to Defendant

23  WaMu as the original servicer.

24        Defendant WaMu violated RESPA at the time of closing on the sale of the Property by

25  failing to correctly and accurately comply with disclosure requirements.  Specifically, Defendant

26

27  [1]  The California Supreme Court, on this issue of whether such a party can foreclose has stated "the note carried with the security and the trust deed was merely an incident of the debt and could only foreclosed by the owner of the note *Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d 284, 291 (1954).

28

1   WaMu: failed to disclose all affiliated business arrangements pursuant to 24 C.F.R § 3500.15;

2   failed to provide transfer servicing disclosure at or prior to closing pursuant to 24 C.F.R. §

3   3500.21; and failed to conspicuously make known to Plaintiff the legal relationships between the

4   parties. In addition, pursuant to 12 U.S.C. § 2605(e)(2), after conducting an investigation in

5   response to a QWR, a servicer *shall* provide the borrower with a written explanation or

6   clarification that includes: (1) "to the extent applicable, a statement of the reasons for which the

7   servicer believes the account of the borrower is correct as determined by the servicer"; and (2)

8   "information requested by the borrower or an explanation of why the information requested is

9   unavailable or cannot be obtained by the servicer."

10       As discussed above, it is unclear whether Defendant Chase Home Finance or Defendant

11   JPMorgan is the servicer. However, in response to Plaintiff's QWR, Defendant Chase Home

12   Finance did not provide a statement of the reasons for which they believe Plaintiff's account is

13   correct – they merely state that it is their position that Plaintiff has undertaken a "valid, binding

14   and legally enforceable obligation to Chase." Defendant Chase Home Finance also did not

15   provide all information requested by Plaintiff or, if not provided, any explanation of *why* the

16   information is unavailable or cannot be obtained except to state that "[a]ny documents or

17   information requested but not included with this package are unavailable or considered

18   proprietary, and will not be provided." Defendant JPMorgan did not provide any response to the

19   QWR. Due to the foregoing, Plaintiff has shown a likelihood of success on the merits of his

20   claims under RESPA.

21       Furthermore, In the course of the transaction described herein, Defendants WaMu and

22   JPMorgan violated TILA in numerous ways, including, but not limited to: failing to deliver

23   good faith estimates of disclosures (preliminary TILDS) within three days of the loan application

24   pursuant to 12 C.F.R. § 226.19(a); failing to make required disclosures clearly and conspicuously

25   in writing; failing to provide two copies of the completed Right to Cancel pursuant to 12 C.F.R.

26   § 226.23(b); failing to provide Hazard Insurance disclosure pursuant to 12 C.F.R. § 226.4(d)(2);

27   failure to provide the Consumer Handbook on Adjustable Rate Mortgages ("CHARM") within

28   three days of the application pursuant to 12 C.F.R. § 226.19(b); placing terms prohibited by

1 | statute into the transaction; and failing to disclose all finance charge details and the annual
2 | percentage rate based upon properly calculated and disclosed finance charges and amounts
3 | financed.

4 |      Due to these violations, Plaintiff has a continuing right to rescind the loan transaction for
5 | up to three years after consummation of the transaction. "[O]nce the court finds a violation, no
6 | matter how technical, it has no discretion with respect to liability." *In re Porter*, 961 F.2d 1066,
7 | 1078 (3d. Cir. 1992); *Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 898 (3d Cir.
8 | 1990). "Any misgivings creditors may have about the technical nature of the requirements
9 | should be addressed to Congress or the Federal Reserve Board, not the courts. A strict
10 | interpretation furthers the congressional goal of standardizing terminology and procedures in
11 | credit transactions." *April v. Union Mortgage Co.,* 709 F.Supp. 809, 811 (N.D. III).

12 |      There are numerous other causes of action set out in the Complaint for which Plaintiff
13 | would demonstrate a probability of success on the merits. At the very least Plaintiff has
14 | established serious questions going to the merits, and as set forth below, the balance of hardships
15 | tip heavily in favor of Plaintiffs. That establishes the propriety of an injunction. *Sun*
16 | *Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1119 (9th Cir. 1999); *Demarest v. Quick*
17 | *Loan Funding, Inc.,* 2009 WL 940377 at 9 (C.D. Cal. 2009).

18 |     B.   <u>Because real property is considered unique and case law holds that wrongful loss of</u>
19 |           <u>a home is irreparable harm as a matter of law, Plaintiff clearly will suffer</u>
20 |           <u>irreparable harm if the foreclosure sale is not postponed.</u>

21 |      Loss of one's home constitutes irreparable injury as a matter of law, *Demarest vs. Quick*
22 | *Loan Funding, Inc. 009 WI 940377 at 9 (C.D. Cal. 2009); Johnson v. U.S. Department of*
23 | *Agriculture* 734 F.24 774, 789 (11th Cir. 1984) ("irreparable injury is suffered when one is
24 | wrongfully ejected from his home. Real property and especially a home is unique"), and if the
25 | foreclosure sale goes forward, Plaintiff will do just that – lose his home. Plaintiff's home is
26 | considered unique under the law, and if it is sold, he will not be able to purchase the same home
27 | anywhere else. The imminent prospect of permanently losing his home presents a threat of
28 | irreparable harm.

C.   Because the balancing of hardships weighs so heavily in Plaintiff's favor due to the minimal, speculative injury that may result to Defendants if injunctive relief is granted and the great irreparable harm Plaintiff would suffer if it is not, injunctive relief should be granted.

The standard for granting a preliminary injunction requires balancing the plaintiff's likelihood of success on the merits against the relative hardships to the parties. *Benda v. Grand Lodge Int'l Assoc. Machinists*, 584 F.2d, 308, 315 (9th Cir. 1978).  This balancing is a continuum wherein the required showing of irreparable harms varies inversely with the probability of success. *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1155 (9th Cir. 2006); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).

Here the balance of hardship strongly favors Plaintiff.  He will lose his home on July 6, 2010, if an injunction does not issue, thus suffering imminent, irreparable harm.  By contrast, Defendants will suffer no serious hardship; their security in the home will remain. (*Demarest v. Quick Loan Funding, Inc.,* 2009 WL 940377 at 9(C.D. Cal. 2009)).  The only potential harm to Defendants might be financial, and even that is only assuming that they could find a buyer for the house before this case would go to trial.  This potential harm is certainly not irreparable. *Bland v. Carone Family Trust*, 2007 WL 951344, at 3 (S.D. Cal.2007) ("The Court find irreparable harm if plaintiffs'' residence is sold prior to determining the merits of plaintiffs' claims.").  In fact, numerous courts have found this injury enough by itself to mandate preliminary injunctive relief. *See e.g. Nichols v. Deutsche Bank Nat. Trust Co.,* 2007 WI. 4181111, at 2 (S.D. Cal. 2007); *United Church of Med. Ctr. V. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir 1982) ("A piece of property is always considered unique, and its loss is always an irreparable injury."); *Johnson v. U.S. Department of Agriculture,* 734 F.2d, 774 789 (11th Cir. 1984) ("irreparable injury is suffered when one is wrongfully ejected from his home.  Real property and especially a home is unique").  The balance of the respective harms, therefore, weighs in Plaintiffs' favor – indeed it does so as a matter of law.

/ / /

/ / /

D.   Because the public has an interest in preventing foreclosure by persons lacking legal right and an interest in lenders and their agents complying with statutory requirements concerning foreclosure, public interest favors granting injunction.

Allowing Defendants CRC, WaMu, and JPMorgan to foreclose and sell Plaintiff's house without determining whether or not they have the right to do so clearly undermines the public's interest in preventing foreclosures by people lacking legal right and in forcing lenders to comply with all statutory requirements concerning the lending and foreclosure process. To allow Plaintiff to be forced out of his home in this manner would violate all notions of public policy and frustrate the legislative intent of the statutes to protect the homeowners. Moreover, if the defendants are unable to sell the Property at a reasonable price in the near future, the Property will sit vacant and neglected, potentially causing a nuisance and driving down local property values. Clearly it is in the public's interest to prevent such a result.

E.   Because the Complaint is verified and clearly states that foreclosure sale is scheduled to be held in two days and would result in Plaintiff's loss of his house, Plaintiff has shown that immediate and irreparable injury would result to Plaintiff before the defendants could be heard in opposition. Plaintiff has also certified in writing the efforts he has made to give notice and the reasons  why notice should not be required. Thus, the Court may grant the TRO ex parte.

Rule 65 also states that a TRO may be issued without written or oral notice to the adverse party or its attorney if "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Plaintiff has filed a verified complaint that specifically states that the foreclosure sale that would deprive Plaintiff of his home is scheduled to take place on July 6, 2010. This is clearly an immediate injury, and, as discussed above, an irreparable injury. Plaintiff has also submitted a certificate in which he has stated that he has been in contact with or attempted to contact Defendants CRC and JPMorgan, and that any further notice should not be required due to his good faith efforts to contact the

1  defendants and the immediacy of the sale.  Therefore, the Court may issue the TRO ex parte.

2        F.    The Bond Requirement Should be Waived.

3        While the literal language of Federal Rule of Civil Procedure 65(c) suggests that a

4  restraining order will not be issued without security by the applicant, a district court has wide

5  discretion in setting the amount of a bond.  *See Connecticut Gen. Life Inc. Co. v. New Images of*

6  *Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).  "The district court may dispense with the filing

7  of a bond when it concludes there is no realistic likelihood of Plaintiff will suffer the irreparable

8  harm of losing his home, which constitutes irreparable injury as a matter of law.  *Demarest vs.*

9  *Quick Loan Funding, Inc. 009 WI 940377 at 9 (C.D. Cal. 2009)*; *Johnson v. U.S. Department of*

10  *Agriculture* 734 F.24 774, 789 (11th Cir. 1984) ("irreparable injury is suffered when one is

11  wrongfully ejected from his home.  Real property and especially a home is unique").

12  Additionally, here there is no realistic harm to Defendants from a restraint of the foreclosure

13  proceedings.  If Defendants' position that the loans were valid is correct, then the loans are

14  secured by the very property in question; additional security is not appropriate or warranted.

15  *Phleger v. Countrywide Home Loans, Inc.,* 207 WL 4105672 at 6 (N.D. Cal. 2007).  Moreover,

16  Plaintiff is currently maintaining the Property, which is actually beneficial to Defendants, and

17  Plaintiff has a high likelihood of success on the merits, which tips strongly in favor of minimal to

18  no bond at all. *Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir.

19  1985).  Plaintiff requests that the interest in the Property, combined with Plaintiff's maintenance

20  of the property, constitute sufficient security to meet the requirements of Rule 65(c), and that no

21  additional security shall be required from Plaintiff.

22  **IV.**    **CONCLUSION**

23        Plaintiff respectfully submits that he has shown that a TRO, and then a preliminary

24  injunction, should issue because while comparatively great and irreparable harm will certainly

25  come from denying the requested relief, only speculative, minimal injury may occur to

26  Defendants CRC, WaMu, and JPMorgan if the request is granted.  Furthermore, Plaintiff

27  respectfully submits that on its face, Plaintiff's case has sufficient merit to warrant a finding that

28  the status quo should be preserved until the controversy can be fully adjudicated.  There is no

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION                                                          

1 | basis for not granting the requested relief, especially where the balance of the hardships tips so

2 | overwhelmingly in favor of Plaintiff.

3 |      Plaintiff requests that the Court grant the TRO and then the preliminary injunction in

4 | order to restrain and enjoin Defendants CRC, WaMu, and JPMorgan, and their agents, assigns,

5 | employees, officers, attorneys, and representatives, and those in active concert or participation

6 | with them, pending trial of this action, from engaging in or performing any act to deprive

7 | Plaintiff of his residence in and possession of the real property located at 5189 Argonne Court,

8 | San Diego, California 92117, including but not limited to instituting or maintaining sale

9 | proceedings on the residence or from otherwise taking any steps whatsoever to deprive Plaintiff

10 | of his residence in and possession of the Property or impair or degrade the value of the Property.

11 |      Dated this ___7___ day of ___July___, 2010.

12 |                                 Respectfully Submitted,

DAVID CARAVANTES, Plaintiff pro se
5189 Argonne Court
San Diego, California 92117

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION                                           17

## CERTIFICATE OF DAVID CARAVANTES RE NOTICE

### (Fed. R. Civ. P. 65(b))

I, DAVID CARAVANTES, am the Plaintiff and I am representing myself in the above-captioned action.  I make this certification to the Court pursuant to Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure:

      1.     For the reasons stated in the verified Complaint, the Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, I will suffer irreparable injury if I were required to give a full 14 days of notice of this request for a restraining order as required by Rule 6(c)(1) of the Federal Rules of Civil Procedure.

      2.     Despite the fact that time is of the essence, on June 28, 2010, I contacted Defendant JPMorgan via telephone to inquire about postponement of the trustee's sale and give notice that the instant lawsuit was going to be filed, including notice of the Application for TRO.  Defendant JPMorgan told me that I would have to talk to Plaintiff CRC regarding postponement and the Application for TRO, as Defendant CRC is handling the sale.  I then called Defendant CRC regarding same.  Defendant CRC told me that they would need advice from Defendant JPMorgan regarding postponement of the sale, and told me that I needed to speak to Elmer Bernal regarding postponement and the Application for TRO.  I subsequently left a voicemail for Mr. Bernal concerning same.  As of the present date, I have been unable to speak with Mr. Bernal.

      6.     I have taken all reasonable steps available to me to give the Defendants I am seeking to restrain the best possible notice.  In the event this notice is considered deficient, I argue that extraordinary circumstances justify a temporary restraining order without notice to the Defendants because, as shown in the verified Complaint, I will lose my house on July 12, 2010, if Defendants are not restrained, and loss of one's house is irreparable harm as a matter of law.  The harm, if any, that would inure to Defendants if the TRO is granted is minimal, as they would retain any and all security interest in my house.

/ / /

---

PLAINTIFF'S APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    I state under penalty of perjury that all of the facts set out in this certificate are true and

2  correct to the best of my personal knowledge.

3    Dated this _7_ of _July_ , 2010.

4                                  Respectfully Submitted,

5

6

7                                  DAVID CARAVANTES, Plaintiff pro se

# Exhibit 1

**CHASE** 
Homeownership Preservation Office
3415 Vision Drive
OH4-7305
Columbus, OH 43219

June 8, 2010

DAVID CARAVANTES
5189 ARGONNE CT
SAN DIEGO CA 92117-1054          24014

Dear David,

    More and more Americans are struggling to keep up with their mortgage payments. If you are experiencing financial difficulty, you have a variety of options that might help you get back on track, and keep you out of foreclosure.

    As the enclosed flyer explains, you have an opportunity to meet in person with specialists from Chase, your lender, at a local event.  We'll walk through the options available, and work out the best solution to your current needs.  This event is just one part of Chase's overall efforts to help our valued customers who are struggling in these challenging economic times.  We're working with partners across the country – HUD approved non-profit counseling agents and local community leaders – to provide free foreclosure prevention assistance to homeowners who need help.

    **When you come to the event, please bring a short letter explaining why you need assistance at this time, and include how long you believe you will not be able to make your monthly payments.  Also, please bring the documentation listed on the back of this letter.  With this information in hand, we'll be able to help you faster.**

    If you are struggling, it's easy to start to feel as if you simply have no way out... but it doesn't have to be that way.  You have options and you have a chance to get the help you need.  Please join us at this upcoming event, and let's work together to help you through these challenging times.  The enclosed flyer has all the details you need.

Sincerely,

CHASE Homeownership Center – La Mesa, CA

---

**Can't Make This Event?  You Do Have Other Options...**

If you are experiencing financial difficulty, we have a variety of options that might help you keep your monthly payments up to date, and keep you out of foreclosure -- but we need to talk to you to as quickly as possible.  Call us today at **1-619-469-4996** -- the sooner you contact us the more options you'll have.

# Exhibit 2

Chase Home Finance LLC
FL5-7730
PO BOX 44090
Jacksonville, FL 32231-4090

January 25, 2010

**CHASE**

001184

DAVID  CARAVANTES
5189  ARGONNE CT
SAN DIEGO  CA  92117-1054

## NOTICE OF COLLECTION ACTIVITY

RE: 3014277101
    5189  Argonne Ct
    San Diego  CA 92117

Dear Borrower:

The records of Chase Home Finance LLC ("Chase") indicate that you have failed to make the required monthly payments under the terms of your Note ("Note") and related Mortgage or Deed of Trust, whichever is applicable ("Security Instrument") since 09/01/2009.  As of today's date the total amount due and owing ("Total Amount Due") is:

| | |
|---|---|
| Principal & Interest Payments: | $14080.65 |
| Escrow: | $795.15 |
| Late Charges: | $563.21 |
| Outstanding Fees: | $32.55 |
| Corporate Advance: | $0.00 |
| Credits: | $0.00 |
| Total Amount Due: | $15471.56 |

You may cure this default within thirty (30) days from date of letter.  However, the amount that you owe may increase between the date of this letter and the date you reinstate the loan.  This is because of interest, late charges, advances and other amounts that may continue to accrue or will be incurred. You will also owe the amount of any monthly or other payments and late charges that may fall due after the date of this letter.  **Therefore, you may not rely on the amount shown above to be sufficient to cure your loan delinquency after today.**  It is necessary for you to contact Chase at the address or telephone number on this letter to verify the exact amount necessary to cure your delinquency and reinstate your loan no more than 24 hours before you make any payment.

Failure to cure the default within the 30-day period may result in Chase declaring the entire outstanding principal balance, accrued interest and any other fees and charges due under the terms of the Note and Security Instrument to be immediately due ("Acceleration").  If this amount is not immediately paid at such time, Chase may exercise any and all remedies available under the terms of the Note and Security Instrument and applicable law, including the commencement of foreclosure proceedings which may result in the sale of your property.

After acceleration, you will have the right to assert any grounds you may have to prove the non-existence of a default.  You may also reinstate your loan.  In addition, you will have the right in any related foreclosure proceedings to assert any defense to acceleration, the foreclosure action and, if applicable, the eventual sale of your property pursuant to a court order or trustee power of sale.

# Exhibit 3

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:   **$18.00**

RECORDED ON:   **March 10, 2010**

AS DOCUMENT NO:   **10-116987**

BY:   **s/ Jenny Dang**

LSI TITLE COMPANY (CA)

_Space above this line for recorder's use only_

---

Trustee Sale No. 740587CA   Loan No. 3014277101   Title Order No. 100141544-CA-MAI

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $22,751.54 as of March 02, 2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.



Trustee Sale No. 740587CA   Loan No. 3014277101   Title Order No. 100141544-CA-MAI

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.** NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 08-15-2007, executed by DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 08-27-2007, Book , Page , Instrument 2007-0569430 of official records in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust. APN: 671-360-10 Situs: 5189 ARGONNE COURT, , SAN DIEGO, CA 92117 Including the note(s) for the sum of $520,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 09/01/2009 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

SEE ATTACHED DECLARATION

DATE: March 02, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____
VREJ JOUKADARIAN
Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A
DEBT COLLECTOR ATTEMPTING TO COLLECT A
DEBT. ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.

**Borrowers:**      DAVID CARAVANTES

**Property Address:**      5189 ARGONNE CT, SAN DIEGO CA 92117

**Loan Number:**      3014277101

# DECLARATION OF COMPLIANCE
### *(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐    The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒    The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐    The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

     ☐    The real property is not an owner-occupied single family residence.

     ☐    The loan was not originated between January 1, 2003 and December 31, 2007.

     ☐    The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

     ☐    The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

     ☐    The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

                                JP Morgan Chase Bank, National Association

Date:    03/01/10                           *Clement J. Durkin*
City/State: Jacksonville, Florida             Clement J. Durkin



# Exhibit 4

David Caravantes
5189 Argonne Court
San Diego, CA 92117

March 23, 2010

JPMorgan Chase Bank
National Association
7301 Bay Meadows Way
Jacksonville, FL 32256

Certified Mail Number
7009 2250 0001 9577 8491

Chase Home Finance, LLC
FL5-7730
PO BOX 44090
Jacksonville, FL 32231-4090

Certified Mail Number
7009 2250 0001 9577 8484

California Reconveyance Company
9200 Oakdale Ave.
Mail Stop: N110612
Chatsworth, CA 91311

Certified Mail Number
7009 2250 0001 9577 8453

MERS, Inc.
PO BOX 2026
Flint, MI 48501-2026

Certified Mail Number
7009 2250 0001 9577 8477

## RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF ALLEGED DEBT, REQUEST FOR VERIFICATION, VALIDATION, and TILA REQUEST

NOTICE TO THE PRINCPALS IS NOTICE TO THE AGENTS
NOTICE TO THE AGENTS IS NOTICE TO THE PRINCIPAL

This letter is a "Qualified Written Request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500, Regulation Z § 226 and the Gramm Leach Bliley Act.

REF:  Alleged Account # **3014277101**, hereinafter referred to as the "Alleged Loan", is the reference for all questions and requests described below.

Chase Home Finance, LLC is herein referred to as "Alleged Mortgage Claimant" is the reference for all questions and requests described below.

To Whom It May Concern:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

It is my understanding that your company may have been accused or engaged in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about such

practices this mortgage company or anyone who has any interest in this matter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and disadvantaged, poor, elderly and minority Americans. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of your possession of the <u>original security instrument</u>, otherwise referred to the "promissory note" and/or "Deed of Trust" regarding any alleged loan associated with Alleged Account # 3014277101, Chase Home Finance, LLC.  **Your failure to supply me with the original security instrument, will be positive confirmation that you never created and owned one.**

I also hereby demand that you promptly provide documentation of a chain of transfer between you, the Alleged Mortgage Claimant and wherever the security is now. Should you fail to provide evidence the security instrument, I <u>will be forceed to dispute the validity of your lawful ownership, funding, entitlement right, and the current alleged debt you allege I owe.</u> By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

**To independently validate any alleged debt, I need to conduct a complete exam, audit, review and accounting of any alleged debt from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the following requests.**

I also request that you conduct your own investigation and audit of this account since its inception to validate any alleged debt you currently claim I owe. I would like you to validate said alleged debt so that it is accurate to the penny.

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements or refuse to conduct a full audit and investigation of any alleged loan associated with said account. I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

1. Increased the amounts of alleged monthly payments;
2. Increased the principal balance I allegedly owe;
3. Increased any alleged escrow payments;
4. Increased the amounts applied and attributed toward alleged interest on this account;
5. Decreased the proper amounts applied and attributed toward the alleged principal on this account; and/or
6. Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing or lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of Alleged Account # 3014277101, Chase Home Finance, LLC by mortgage auditing and predatory servicing and lending experts. This exam and audit shall review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a **Qualified Written Request** under the **Real Estate Settlement Procedures Act (RESPA)**, codified as **Title 12 § 2605(e)(1)(B)(e) and Regulation X § 24 C.F.R §3500.21(f)2** of the United States Code as well as a request under the Truth In Lending Act [TILA] 15 U.S.C. § 1601 et. seq. RESPA provides substantial penalties and fines for non-compliance. Under RESPA you must answer my questions in full within (20) days of receiving this qualified written request.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested must demonstrate:

A.  That the loan was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and especially, the Federal Trade Commission Act, Section 5, which identifies Unfair and Deceptive Acts and Practices (UDAP) and the appropriate CA statutes;

B.  That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

C.  That the claimed legitimate holder in due course of any alleged monetary instrument/deed of trust/mortgage instrument/asset, who is holding such alleged note in compliance with statutes, State and Federal laws, and is entitled to the benefits of any payments;

D.  That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original alleged loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

E.  That each servicer and/or sub-servicer of said alleged loan account in accordance with statute, laws and the terms of any alleged mortgage, monetary instrument/deed of trust/mortgage instrument, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

F.  That each and every servicer and/or sub-servicer in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

G.  That this mortgage account has been credited, debited, adjusted, amortized, charged correctly, and disclosed fully, commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

H.  That interest and principal properly calculated and correctly applied to this loan;

I.  That the principal balance has been properly calculated, amortized and accounted for and has never at any time been charged, assessed or collected of fees or expenses, from this account or any other related account arising out of the alleged loan transaction, that were not disclosed or obligated to me in any agreement.

In order to validate said alleged debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, **certified**, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on the alleged loan, account, or my name.

As such, please send to me, at the address above, copies of the documents, front and back, requested below as soon as possible:

1. Any certified or uncertified security, front and back, used for the funding of Alleged Account # 3014277101;
2. Any and all "Pool Agreement(s)" or "servicing agreements", and any and all documents pertaining thereto, the nominal lender and any Government Sponsored Entity, hereinafter ("GSE"), or other party who could claim an interest in the alleged loan;
3. Any and all "Deposit Agreement(s)" regarding Alleged Account # 3014277101, or the "Pool Agreement" including Alleged Account # 3014277101 between Chase Home Finance, LLC and any GSE;
4. Any and all "Servicing Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
5. Any and all "Custodial Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party who could claim an interest in the alleged loan;
6. Any and all "Master Purchasing Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
7. Any and all "Issuer Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
8. Any and all "Commitment to Guarantee" agreement(s), and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
9. Any and all "Release of Document agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
11. Any and all "Servicer's Escrow Custodial Account", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties including any GSE or other party, who could claim an interest in the alleged loan;
12. Any and all "Release of Interest" agreement(s), and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;
13. Any Trustee agreement(s), and any and all documents pertaining thereto regarding this account or any and all pool accounts, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party who could claim an interest in the alleged loan;
14. Any documentation evidencing any trust relationship regarding any Mortgage/Deed of trust and any Note relating to this matter;
15. Any and all document(s) establishing the appointment any Trustee of record for the Mortgage/Deed of Trust and any Note;

16. Any and all document(s) establishing the date of any appointment of any Trustee Mortgage/Deed of Trust and any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s);

17. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

18. Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

19. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

20. Any documentation evidencing that this Mortgage/Deed of Trust is not a constructive trust, or any other form of trust;

21. All data, information, notations, text, figures and information contained in any mortgage servicing and accounting computer systems including, but not limited to, Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above;

22. All descriptions and legends of all Codes used in your mortgage servicing and accounting system, so that the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work;

23. All documentation of assignments, transfers, alonge, or other documents evidencing a transfer, sale or assignment of this mortgage, monetary instrument, or other document that secures payment by me to this obligation in this account from the inception of his account to the present date, including any such assignment on Mortgage Electronic Registration System, hereinafter, "MERS";

24. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage, including any such assignments on MERS;

25. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from inception of this account to the present date;

26. The front and back of each and every cancelled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account;

27. All escrow analyses conducted on this account from the inception of this account until the date of this letter;

28. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.;

29. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account;

30. All letters, statements and documents sent to me by your company;

31. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

32. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company;

33. All letters, statements and documents contained in said account file, including any servicers or sub-servicers of this mortgage from the inception of this account to the present date;

34. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument;

35. All copies of property inspection reports, appraisals, BPOs and reports done on my property;

36. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date;

37. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date;

38. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date;

39. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date;

40. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date;

So that I can conduct the audit and review of this account, and determine all proper amounts due, I further request the answers (in writing) to following questions concerning the servicing and accounting of this mortgage account from its inception to the present date:

## ACCOUNT ACCOUNTING AND SERVICING SYSTEMS

1. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that my experts can decipher the data provided.

2. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS AND CREDITS

1. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

## MORTAGAGE AND ASSIGNMENTS

1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt has been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date?

2. If NO, why not?

3. Is your company the servicers of this mortgage account or the holder in due course and the beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been records in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date?

5. If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on said alleged account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1. Have attorney fees ever been assessed to this account from the inception of this account to the present date?

2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3. Have attorney fees ever been charged to this account from the inception of this account to the present date?

4. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5. Have attorney fees ever been collected from this account from the inception of this account to the present date?

6. If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7. Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or security instrument or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9. Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10. Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13. Has interest been charged on any attorney fees assessed or charged to this account?

14. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account?

15. How much total in attorney fees have been assessed to this account from the inception to the present date?

16. How much total in attorney fees have been collected from this account from the inception to the present date?

17. How much total in attorney fees have been charged from the inception to the present date?

18. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date?
2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.
3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS?
2. Has any previous servicers or sub-servicers of this alleged mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS?
3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time?
4. Are late fees considered interest?
5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.
6. Were any of these expenses or damages charged or assessed to this account in any other way?
7. If yes, please describe what expenses or damages were charged or assessed to this account.
8. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.
9. Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.
10. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust, or security instrument or any agreement I signed that authorized the assessment or collection of late fees.
11. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.
12. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.
13. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.
14. Has interest been charged on any late fee assessed or charged to this account?
15. Is interest allowed to be assessed or charged on late fees to this account?
16. Have any late charges been assessed to this account?

17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19. Have late charges been collected on this account from the inception of this account to the present date?

20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

## PROPERTY INSPECTIONS

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on my property from the inception of this account to the present date?

2. If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3. If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4. Please tell me the price charged for each property inspection.

5. Please tell me the date of each property inspection.

6. Please tell me the name and address of each company and person who conducted each property inspection on my property.

7. Please tell me why property inspections were conducted on my property.

8. Please tell me how property inspections are beneficial to me.

9. Please tell me how property inspections are protective of my property.

10. Please explain to me your policy on property inspections.

11. Do you consider the payment of inspection fees as a cost of collection?

12. If yes, why?

13. Do you use property inspections to collect debts?

14. Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe?

15. If yes, please answer when and why?

16. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust security instrument or any agreement I signed that authorized the assessment or collection of property inspection fees.

17. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance?

18. If yes, why?

19. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee?

20. If yes, why?

21. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?
25. Has interest been charged on any inspection fees assessed or charged to this account?
26. If yes, when and how much was charged?
27. Is interest allowed to be assessed or charged on inspection fees to this account?
28. How much total in inspection fees have been assessed to this account from the inception of this account to the present date?
29. How much total in inspection fees has been collected on this account from the inception of this account to the present date?
30. Please forward to me copies of all property inspections made on my property in this mortgage account file.
31. Has any fee charged or assessed for property inspections been placed into an escrow account?

## BPO FEES

1. Have any BPOs (Broker Price Opinions) been conducted on my property?
2. If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.
3. Please tell me the price of each BPO.
4. Please tell me who conducted the BPO.
5. Please tell me why BPOs were conducted on my property.
6. Please tell me how BPOs are beneficial to me.
7. Please tell me how BPOs are protective of my property.
8. Please explain your policy on BPOs.
9. Have any BPO fees been assessed to this account?
10. If yes, how much in total BPO fees have been assessed to this account?
11. Have any BPO fees been charged to this account?
12. If yes, how much in total BPO fees have been charged to this account?
13. Please tell me specifically, in writing, the clause, provision, paragraph, section or sentence, if any, in the note, mortgage, deed of trust or any agreement I signed or executed that authorized the assessment, charge or collection of a BPO fee from me.
14. Please send to me copies of all BPO reports that have been done on my property.
15. Has any fee charged or assessed for a BPO been placed into an escrow account?

## FORCE-PLACED INSURANCE

1. Have you placed or ordered any force-placed insurance policies on my property?
2. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed, security instrument or note.
3. Please tell me the price of each policy.
4. Please tell me the agent for each policy.
5. Please tell me why each policy was placed on my property.
6. Please tell me how the policies are beneficial to me.
7. Please tell me how the policies are protective of my property.
8. Please explain to me your policy on force-placed insurance.
9. Have any force-placed insurance fees been assessed to this account?
10. If yes, how much in total force-placed insurance fees have been assessed to this account.
11. Have any force-placed insurance fees been charged to this mortgage or escrow account?
12. If yes, how much in total force-placed insurance fees have been charged to this mortgage or escrow account?
13. Please identify for me in writing the clause, provision, paragraph, section or sentence of any note, mortgage, deed of trust, security instrument or any agreement I signed or executed that authorized the assessment, charge or collection of force-placed insurance fees from me.
14. Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15. Do you have any relationship with the carrier that issued any policies on my
16. Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.
17. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired?
18. Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question concerning the servicing of this account from its inception to the present date.

1. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?
2. Did the originator or previous servicers of this account have a warehouse account agreement or contract with your company or an affiliate of your company?
3. Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.
4. Please identify for me where the **originals of this entire account file** are currently located and how they are being stored, kept and protected.
5. **Where is the original monetary instrument or mortgage that I signed located?** Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.
6. Where is the original deed of trust/security instrument or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.
7. Since the inception of this account/loan, has there been any assignment of my monetary instrument/asset to any other party? <u>If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.</u>
8. Since the inception of this account/loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.
9. Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.
10. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this alleged mortgage account.
11. Has this alleged mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this alleged mortgage has been a part of from the inception of this account to the present date.
12. Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this alleged mortgage account is located?
13. Has there been any electronic assignment of this alleged mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned mortgage servicing rights to this account

as well as the beneficial interest to the payments of alleged principal and alleged interest on this alleged loan.

14. Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17. How much was paid for this individual mortgage account by you, or any company you represent?

18. If part of a mortgage pool, what was the principal balance used by you, and your company to determine payment for this individual mortgage loan?

19. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

20. To whom did you issue a check or payment for obtaining this a mortgage loan?

21. Please provide me with copies of the front and back of any and all canceled checks.

22. Did any investor approve of the foreclosure of my property?

23. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24. Please identify all persons who would approve the foreclosure of my property.

Please produce the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document requests and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA request for accounting and legal records and Dispute of Debt letter will be sent to Federal Trade Commission (FTC), Housing and Urban Development (HUD), Office of Thrift Supervision, all relevant state and federal regulators and other consumer advocates, as well as my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct any abuse(s) or scheme(s) that may be uncovered and documented.

## Default Provision(s) under this QUALIFIED WRITTEN REQUEST

"Chase Home Finance, LLC, or any agents, transfers or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points contained here in this RESPA REQUEST", agrees and consents to including, but not limited to, any violations of law, and/or immediate termination/removal of any and all right, title and interest (liens) in any property or collateral connected to DAVID CARAVANTES or Account #3014277101, and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST.

1. David Caravantes' right, due to breach of contract and fiduciary responsibility by fraud and/or misrepresentation, to revocation and rescission of any and all power(s) of attorney or appointment of Chase Home Finance, LLC may have or may have had in connection with Account #3014277101, and any property and/or real estate connected with account # 3014277101.

2. David Caravantes' right to have any certified or uncertified security instrument associated with said account re-registered in David Caravantes', and only David Caravantes' name.

3. David Caravantes' right of collection against Chase Home Finance, LLC liability insurance and/or bond.

4. David Caravantes' entitlement to file and execute any instruments, as power of attorney for and by Chase Home Finance, LLC, including, but not limited to, by a new certificated security or any security agreement perfected by the filing of a UCC Financing Statement with the Secretary of State in the State where David Caravantes' property is located.

5. David Caravantes' right to damages because of Chase Home Finance, LLC wrongful registration, breach of intermediary responsibility, and improper accounting of the Note asset against which Chase Home Finance, LLC issued to DAVID CARAVANTES a certified check for the original value of David Caravantes' monetary instrument/Note.

6. David Caravantes' right to have loan or debt associated with account # 3014277101, completely set off because of Chase Home Finance, LLC' wrongful registration, breach of contract/intermediary responsibility with regard to David Caravantes' monetary instrument/asset by Chase Home Finance, LLC sending confirmation of the set off of wrongful liability of David Caravantes' and issuing a certified check for the difference between the original value of David Caravantes' monetary instrument/asset and what David Caravantes' mistakenly sent to Chase Home Finance, LLC as payment for such wrongful liability.

Chase Home Finance, LLC or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this "RESPA REQUEST" in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Chase Home Finance, LLC in accordance with Chase Home Finance, LLC Articles of Incorporation, and By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corporation/National Association.

Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within twenty days. If no verified rebuttal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as Alleged Mortgage Claimant's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

**Power of Attorney:** If Chase Home Finance, LLC fail to rebut any part of this "RESPA REQUEST", Chase Home Finance, LLC agree with the granting unto DAVID CARAVANTES an unlimited **Power of Attorney** and any and all full authorization in signing and endorsing Chase Home Finance, LLC name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement, or any agreement arising from this agreement. Pre-emption of or to any bankruptcy proceeding shall not discharge any obligation(s) of this agreement.

**Consent and agreement:** Chase Home Finance, LLC consent and are in agreement with this Power of Attorney and waive any and all claims of DAVID CARAVANTES, and/or defenses and said Power of Attorney remains in effect until the satisfaction of all obligation(s) by Chase Home Finance, LLC have been satisfied.

Respectfully yours,

**David Caravantes**
**Authorized Representative**
**Creditor, Secured Party**
**Beneficiary**

cc:   **Federal Trade Commission**           **Office of House Enterprise Oversight (OHEO)**
       **600 Pennsylvania Ave. NW**       **1700 G Street, NW, Fourth Floor**
       **Washington, DC 20580**           **Washington, DC 20552**

       **Office of Interstate Land Sales/RESPA Division**
       **Office of Housing, Room 9146**
       **Department of Housing and Urban Development**
       **451 Seventh Street, SW**
       **Washington, DC 20410**

**State of California**     )
                   )    ss.
**San Diego County**     )

**The above named, "David Caravantes" appeared and upon showing identification, subscribed and sworn before me,** _____

**A Notary Public, this** _____ **day of** _____ **, 2009.**

_____
**My commission expires**

_____
**Notary**

OFFICIAL SEAL
T. MCNALLY
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1673573
SAN DIEGO COUNTY
My Commission Exp. July 4, 2010

# Exhibit 5

**CALIFORNIA RECONVEYANCE COMPANY**
9200 Oakdale Avenue – CA2-4379
Chatsworth, CA 91311
(800)892-6902
(818)775-2258 Fax


March 26, 2010

David Caravantes
5189 Argonne Court
San Diego, CA 92117


Loan No:      3014277101
T.S. No:       740587CA
Owner(s):    DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND
                   SEPARATE PROPERTY
Property:     5189  ARGONNE COURT
                   SAN DIEGO, CA 92117


Dear David Caravantes:

California Reconveyance Company has received your letter dated 03/23/10 in
our office on 03/25/10.  Please be advised that we have forwarded your letter on
03/26/10, to JPMorgan Chase Bank for review and response.

Sincerely,

CALIFORNIA RECONVEYANCE COMPANY


_____
CARLA DODD, ASSET RECOVERY SPECIALIST SR.
818-775-3092

# Exhibit 6

# CHASE ○

**Chase Home Finance LLC**
800 State Highway 121 Bypass
Lewisville, TX 75067

March 26, 2010

David Caravantes
5189 Argonne Court
San Diego, CA 92117

Re:    Loan Number         ******7191

Dear David Caravantes:

We are writing in response to your correspondence regarding your Qualified Written Request (QWR) for the above-mentioned mortgage.  This letter was forwarded to our office on March 26, 2010, for review.

We are investigating your issues and will work to provide you with a complete and accurate response.  Chase appreciates your patience in this matter.

Chase's goal is to provide the highest level of quality service.  In the interim period, you may contact our Customer Care unit at 1-800-848-9380.

Sincerely,


Home Lending Executive Office/j2b

# Exhibit 7

David Caravantes
5189 Argonne Court
San Diego, CA 92117

May 10, 2010

Vrej Joukadarian
Jenny Dang
Carla Dodd
California Reconveyance Company
9200 Oakdale Ave., Mail Stop: CA2-4379
Chatsworth, CA 91311

Re:   **Advisory to Legal Action** pertaining to:
Trustee Sale No. 740587CA
Loan No. 3014277101
Title Order No. 100141544-CA-MAI

To All Named Above:

In reference to your letter dated March 26, 2010, I would like to take this opportunity to thank you for the speedy response to my QWR; however, despite not receiving a certified letter in clear violation of *Cal. Civ. Code 2923.5(b) and 2943(b)*, I have recently been advised through other means, that JP Morgan Chase is attempting to foreclose on my home. Let me be perfectly clear, any attempt to perform a non-judicial foreclosure will be met with swift and harsh legal action in Federal Court on not only JP Morgan Chase, but California Reconveyance Company and all those individuals so named above acting in concert with the illegal actions of JP Morgan Chase.

As you know we have engaged a top ranked mortgage auditing firm. Upon preliminary review of our loan documents, they have advised us that JP Morgan Chase has violated many Federal RESPA and TILA laws, including, but not limited to:

- Failure to provide two copies of Right to Cancel; 12 C.F.R. § 226.23(b)
- Failure to provide the Truth-in-Lending disclosure; 12 C.F.R. §§ 226.17, 226.18
- Failure to make all legal relationships "conspicuously known"; 12 C.F.R. 226.23(a)(3)

In addition to the above, neither you, nor JP Morgan Chase, have legal standing per UCC 3301 and Article 3 to foreclose as neither of you are the "holder in due course" of the Note and lack the ability to enforce the Note. California Reconveyance Company is acting on behalf of JP Morgan Chase, a SERVICER of this loan, not the CREDITOR and thus has no right to foreclose due to (a) lack of proof of possession/enforceability of the Note and (b) unable to prove they have been financially harmed by my default. I am fully aware of the mortgage pool that my loan was entered into, the financial gain obtained from that pool and that a **Credit Default Swap** was also involved. My litigation team will make this extremely clear in court.

In summary, we will be filing a complaint against JP Morgan Chase in Federal Court requesting the court to investigate their legal standing to foreclose as a SERVICER. **If you continue to proceed with the foreclosure process, all of you (individuals) and your company will be so named as Co-Defendants.**

Respectfully,

David Caravantes

# Exhibit 8

# CHASE ⬡

Chase Home Finance LLC
800 State Highway 121 Bypass
Lewisville, TX 75067

June 3, 2010

David Caravantes
5189 Argonne Ct.
San Diego, CA 92117

Re:   Loan Number:      ******7101

Dear David Caravantes:

This letter is in response to the correspondence we received March 26, 2010, addressed to Chase Home Finance LLC (Chase) regarding the above-referenced mortgage loan serviced by Chase.

Enclosed is a copy of the Note that was signed at the origination of the loan.  It is our position that you have undertaken a valid, binding and legally enforceable obligation to Chase. Furthermore, neither you nor any employee, officer, director, agent, representative, affiliate, subsidiary, successor or assign has any authority to act on our behalf or on the behalf of any of our parent, affiliates, subsidiaries, successors or assigns.

Enclosed please find a copy of the following documents:

> Adjustable Rate Note
> Security Instrument
> HUD-1 Settlement Statement
> Good Faith Estimate
> Truth in Lending Statement
> Loan Application
> Appraisal
> Notice of Right to Cancel/Disclosures
> Loan Transaction History

Any documents or information requested but not included with this package are unavailable or considered proprietary, and will not be provided.

Page 2
Caravantes

## Account Accounting and Servicing

- The information requested under this section is proprietary and will not be provided.

## Debits and Credits

- Please refer to the enclosed loan history reconciliation for any questions regarding debits and credits.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

## Mortgage and Assignments

- Chase Home Finance LLC is the servicer of this mortgage loan.
- Any assignment of the Security Instrument, previous sellers, purchasers, assignors, and assignees would be a matter of public record.  Please review public record for this information.

## Attorney Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding attorneys' fees.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of attorneys' fees, or of our ability to assess and collect attorneys' fees.
- No interest has been charged on any attorneys' fees which may or may not have been assessed to this account.  Chase does not charge interest on any type of fees which may or may not have been assessed to this account.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

## Suspense/Unapplied Accounts

- For all questions, please refer to the enclosed loan history reconciliation.

## Late Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding late charges assessed or collected.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of late charges, or of our ability to assess and collect late charges.

Page 3
Caravantes

## Property Inspections

- Any questions regarding inspection fees assessed or collected please refer to the enclosed loan history reconciliation.
- Any questions regarding the applicability or nature of property inspection fees, or of our ability or requirement to conduct property inspections and assess and collect fees for the property inspections, please refer to the enclosed copy of the Security Instrument.

## BPO Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding fees assessed or collected in connection with any Broker's Price Opinion (BPO) that may have been ordered by Chase.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of BPO fees, or of our ability to obtain a BPO on the property, or to assess and collect BPO fees.

## Forced-Placed Insurance

- No force-placed insurance policies have been purchased for this loan.

## Servicing Related Questions/Other

- Any assignment of the Security Instrument, previous sellers, purchasers, assignors, and assignees would be a matter of public record.  Please review public record for this information.
- The investor for this loan is JPMorgan Chase Bank, N.A.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

Additionally, please be advised that the "Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent" and multiple documents included in the correspondence are invalid and are not recognized by any of the listed "Recipients."  Please immediately advise if any documents in connection with the "Default Provision(s)" or "Power of Attorney" with any agency, court or other forum has been filed.  We intend to take prompt action to see that any entity or individual with whom you have filed any such document is notified of its invalidity.  Should one attempt to interfere with our lien interest in the property, we will investigate and determine the appropriate course of action, which may include initiating legal proceedings and/or reporting the situation to the appropriate government agency or law enforcement authorities.

Page 4
Caravantes

One should know that other borrowers have fallen victim to unlawful scams that include documents similar to the "Default Provision(s)" and "Power of Attorney" included with the Qualified Written Request that was sent to Chase. We are aware of advertising and other solicitations for borrowers to lodge such documents with their lender. The solicitations claim that the inclusion of "Default Provision(s)" and "Power of Attorney" will extinguish valid and legal debt obligations. These efforts are invalid, do not eliminate debt, and may be illegal. We strongly advise that the borrower consult an attorney or local law enforcement regarding any efforts to avoid your obligation, as well as the repercussions of the efforts taken so far.

Please note that foreclosure proceedings were initiated on this property. You may contact our foreclosure representative California Reconveyance Corporation at 800-892-6902 for information regarding those proceedings.

Chase's goal is to provide the highest level of quality service. If you have any questions, you may contact our Customer Service Department at 800-848-9136.

This letter shall not be deemed to be a waiver of any rights or remedies, which are expressly reserved.

Sincerely,

Chase Home Finance
Executive Resolution Group
qdw

Enclosures (9)

Exhibit 9

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N110612
Chatsworth, CA 91311
800-892-6902

**Trustee Sale No.   740587CA**
Loan No.            3014277101
Title Order No.     100141544-CA-MAI

_____

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08-15-2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 07-06-2010 at 10:00 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 08-27-2007, Book , Page , Instrument 2007-0569430,       of official records in the Office of the Recorder of SAN DIEGO County, California, executed by: DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY STATUE, 250 EAST MAIN STREET, EL CAJON, CA

Legal Description: LOT(S) 73 OF PARK WEST UNIT NO. 2, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF NO. 5550, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON MARCH 31, 1965.

Amount of unpaid balance and other charges: $556,616.47(estimated)

Street address and other common designation of the real property:   5189 ARGONNE COURT
                                                                    SAN DIEGO, CA 92117
                                                                    APN Number:  671-360-10
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 06-11-2010                         **SEE ATTACHED EXHIBIT**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

*Deborah Brignac*

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.
DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

Exhibit

### DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

3.   It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.54 that is current and valid on the date the notice of sale is filed; and

4.   The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

JPMorgan Chase Bank,
National Association

Name: Ann Thorn
Title:   First Vice President