# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CARAVANTES, an individual, | CASE NO. 10-CV-1407 - IEG (AJB) |
| Plaintiff, | ORDER: |
| vs. | (1) GRANTING TEMPORARY RESTRAINING ORDER; and |
| CALIFORNIA RECONVEYANCE COMPANY, a California corporation; WASHINGTON MUTUAL BANK, F.A., a Federal Savings Bank organized and existing under the laws of the United States; JPMORGAN CHASE BANK, N.A., a National Banking Association organized and existing under the laws of the United States; CHASE HOME FINANCE LLC, a Delaware Limited Liability Company; VREJ JOUKADARIAN, an individual; CLEMENT J. DURKIN, an individual; DEBORAH BRIGNAC, an individual; ANN THORN, an individual; and DOES 1-20, inclusive, | (2) TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED. [Doc. No. 5] |
| Defendants. | |

Currently before the Court is Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, filed on July 7, 2010 ("TRO Motion"). Plaintiff seeks to enjoin Defendants from proceeding with the Trustee's Sale of his property, which is currently scheduled for Monday, July 12, 2010 at 10:00 a.m. (TRO Motion, at 2.)

**BACKGROUND**

Plaintiff became the owner of property located at 5189 Argonne Court, San Diego, CA 92117 on or about August 15, 2007. He acquired the property via a loan from Defendant Washington Mutual Bank, F.A. ("WaMu"). The corresponding Deed of Trust was recorded in San Diego on August 27, 2007. The Deed of Trust identified Defendant WaMu as the lender and Defendant California Reconveyance Company ("CRC") as the trustee. Plaintiff alleges that when the loan was consummated, he did not receive all of the required documents and disclosures, including the Truth in Lending Disclosure statement containing required material disclosures and the required number of copies of the Notice of Right to Cancel containing the date that the rescission period expires.

Subsequently, Plaintiff appears to have experienced problems in making his loan payments when his income decreased dramatically in 2008. In September 2008, after Defendant WaMu closed, Plaintiff alleges he received a form letter stating that Defendant WaMu had become Defendant JPMorgan Chase Bank ("JPMorgan"). The letter did not state anything about whether Defendant JPMorgan was now the beneficiary under the Deed of Trust, nor has Plaintiff received any other notice of any change in beneficiary. Plaintiff subsequently received statements from Defendant Chase Home Finance ("Chase"), and he directed payments to Defendant Chase, assuming that Chase was the new servicer of his loan.

In or around November 2009, Plaintiff received a letter from Chase Home Ownership Preservation Office stating that many Americans are experiencing difficulty with their mortgage payments and that *if* Plaintiff was experiencing financial difficulty, there were some options available to him that would assist him with making payments. Plaintiff subsequently received several of such letters. (See, e.g., TRO Motion, Ex. 1.) According to Plaintiff, none of these letters discussed Plaintiff's actual financial situation.

On January 25, 2010, Defendant Chase mailed to Plaintiff a letter titled "Notice of Collection Activity," alleging Plaintiff was in default under the terms of his loan. (Id., Ex. 2.) The letter did not attempt to discuss any options available to Plaintiff to avoid foreclosure other than paying the full amount allegedly due. On March 10, 2010, Defendant CRC recorded a Notice of Default on Plaintiff's property. (Id., Ex. 3.) The Notice of Default was accompanied by a Declaration of Compliance, which

stated that the undersigned "tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed." (Id.) However, according to Plaintiff, except for the generic letters discussed above, none of Defendants sent any letters or made any phone calls to Plaintiff concerning his personal financial situation and options to avoid foreclosure that were specifically available to him.

In March 2010, Plaintiff retained a mortgage auditing firm to analyze his loan. On March 23, 2010, Plaintiff sent a Qualified Written Request ("QWR") letter to Defendants CRC, JPMorgan, and Chase. (Id., Ex. 4.) The letter made several requests for documentation and information concerning Plaintiff's loan. Defendant CRC acknowledged the receipt of the letter on March 26, 2010 and stated that it forwarded the letter to Defendant JPMorgan. (Id., Ex. 5.) Also on March 26, 2010, Defendant Chase acknowledged the receipt of Plaintiff's letter and indicated that a further response would be forthcoming. (Id., Ex. 6.) On June 3, 2010, Defendant Chase responded to Plaintiff's letter, providing some of the requested information and indicating that other information was being withheld because it was either proprietary or unavailable. (Id., Ex. 8.)

On June 11, 2010, Defendant CRC executed a Notice of Trustee's Sale, indicating that the sale was scheduled for July 6, 2010 at 10:00 a.m. (Id., Ex. 9.) The sale was subsequently postponed until July 12, 2010 at 10:00 a.m. The Notice of Trustee's Sale was accompanied by a Declaration Pursuant to California Civil Code Section 2923.54, indicating that the undersigned loan servicer has complied with the requirements under Section 2923.54. (Id.) In order to postpone the sale, Plaintiff alleges he attempted to contact Defendant JPMorgan by telephone on June 28, 2010. (Id., at 8.) Defendant JPMorgan allegedly told Plaintiff that he would have to talk to Defendant CRC regarding postponement of the sale and any application for a temporary restraining order ("TRO"). (Id.) Plaintiff then called Defendant CRC regarding the same, but was told that CRC would need advice from Defendant JPMorgan regarding postponement of the sale. (Id.) Plaintiff was also told that he needed to speak with Elmer Bernal regarding postponement and the application for a TRO. (Id.) Plaintiff then left a voicemail for Mr. Bernal regarding the same. (Id.) As of the filing of his TRO Motion, Plaintiff alleges that he has been unable to speak with Mr. Bernal. (Id.)

**LEGAL STANDARD**

Under Rule 65(b) of Federal Rules of Civil Procedure, the Court may issue a TRO if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." The purpose of the TRO is "preserving the status quo and preventing irreparable harm just so long as necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local No. 70, 415 U.S. 423, 439 (1974) (citations omitted).

In general, the showing required for a TRO is the same as for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Following the Supreme Court's decision in Winter v. Nat. Res. Def. Council, Inc., — U.S. —, 129 S.Ct. 365 (2008), a party seeking a preliminary injunction must demonstrate "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter, 129 S.Ct. at 374). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Indep. Liv. Cntr. of Southern Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 651 (9th Cir. 2009) (quoting Winter, 129 S.Ct. at 376) (internal quotation marks omitted).

**DISCUSSION**

In this case, based on the facts currently before the Court, it appears likely that Plaintiff will succeed on the merits of some his claims. For example, Plaintiff's thirteenth cause of action alleges a violation of California Civil Code § 2923.5. Pursuant to Section 2923.5(a)(1), the lender may not file a Notice of Default without first contacting the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, or demonstrating "due diligence" in attempting to contact the borrower. In order to demonstrate "due diligence," the statute requires the lender to first send a first-class mail letter to the borrower, and then to try to reach him by phone "at least three times at different hours and on different days." CAL. CIV. CODE § 2923.5(g)(1), (g)(2)(A). In this case, taking Plaintiff's allegations as true, Defendants have not satisfied the "due diligence"

required under the statute.

Similarly, Plaintiff's fourteenth cause of action alleges a violation of California Civil Code § 2923.54, which requires a Notice of Sale to include a specific declaration from the servicer.[1] In the present case, although the Notice of Sale did include a declaration from Ann Thorn on behalf of Defendant JPMorgan that appears to comply with Section 2923.54, (see TRO Motion, Ex. 9), that declaration was neither signed nor dated. Moreover, the Court cannot determine at this time whether this statement qualifies as a "declaration" as required by Section 2923.54, because it was not certified as true under penalty of perjury under the laws of the State of California.[2] See CAL. CIV. PROC. CODE § 2015.5; Kulshrestha v. First Union Commercial Corp., 33 Cal. 4th 601, 606 (2004).

Likewise, Plaintiff's first cause of action alleges Defendant WaMu failed to provide Plaintiff with the mandatory Truth in Lending Disclosure statements and notice of the borrower's rights to rescind, specifying the date on which the three-day rescission period expires. Based on the facts currently before the Court, this disclosure failure arguably violates the Truth in Lending Act ("TILA")

---

[1] Section 2923.54(a) provides:

(a) A notice of sale filed pursuant to Section 2924f shall include a declaration from the mortgage loan servicer stating both of the following:

> (1) Whether or not the mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed.
>
> (2) Whether the timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

[2] Section 2015.5 of the California Code of Civil Procedure provides in pertinent part:

Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California.

1  and Regulation Z. See 15 U.S.C. § 1635(a); 12 C.F.R. 226.23(b). Accordingly, because Plaintiff is still
2  within the three-year period set forth in TILA and Regulation Z, see 15 U.S.C. § 1635(f); 12 C.F.R.
3  § 226.23(a)(3), Plaintiff can properly seek rescission of the loan for these violations. See Semar v.
4  Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 704 (9th Cir. 1986) ("Technical or minor
5  violations of TILA or Reg Z, as well as major violations, impose liability on the creditor and entitle
6  the borrower to rescind.").

7      Finally, based on the facts alleged, the Court is satisfied that the other factors also weigh in
8  favor of granting a TRO. First, courts have found that a loss of one's personal residence constitutes
9  an irreparable harm. See, e.g., Demarest v. Quick Loan Funding, Inc., No. CV09-01687 MMM (SSx),
10 2009 WL 940377, at *9 (C.D. Cal. Apr. 6, 2009); Wrobel v. S.L. Pope & Associates, No. 07cv1591
11 IEG (BLM), 2007 WL 2345036, at *1 (S.D. Cal. Aug. 15, 2007). Moreover, a loss of the right to
12 rescission under TILA also constitutes an "irreparable injury." See, e.g., Demarest, 2009 WL 940377,
13 at *9; Nichols v. Deutsche Bank Nat'l Trust Co., No. 07cv2039-L (NLS), 2007 WL 4181111, at *3
14 n.1 (S.D. Cal. Nov. 21, 2007). Second, the balance of hardships appears to tip in Plaintiff's favor. See,
15 e.g., Horton v. Cal. Credit Corp. Ret. Plan, No. 09cv274-IEG-NLS, 2009 WL 700223, at *6 (S.D. Cal.
16 Mar. 16, 2009) ("It is churlish to suggest the delayed payment of a debt outweighs loss of the family
17 home."). Finally, the public interest also appears to weigh in favor of preserving the status quo, at least
18 until the Court could hold a hearing in this matter.

19 **CONCLUSION**

20     Accordingly, because based on the facts currently before the Court Plaintiff has demonstrated
21 that he is likely to succeed on the merits of at least some of his claims, and because the other factors
22 also weigh in favor of granting a TRO, the Court **ORDERS** as follows:

23     TO: DEFENDANTS, CALIFORNIA RECONVEYANCE COMPANY, a California
24 corporation; WASHINGTON MUTUAL BANK, F.A., a Federal Savings Bank organized and existing
25 under the laws of the United States; JPMORGAN CHASE BANK, N.A., a National Banking
26 Association organized and existing under the laws of the United States; CHASE HOME FINANCE
27 LLC, a Delaware Limited Liability Company; VREJ JOUKADARIAN, an individual; CLEMENT
28 J. DURKIN, an individual; DEBORAH BRIGNAC, an individual; ANN THORN, an individual

1  ("Defendants"); and, THEIR ATTORNEY(S) OF RECORD:

2  YOU AND EACH OF YOU ARE HEREBY **ORDERED TO SHOW CAUSE** on Monday, **July 26, 2010 at 10:30 a.m.** or as soon thereafter as counsel may be heard in the courtroom of the Honorable Irma E. Gonzalez, located at 940 Front Street, San Diego, CA 92101, why you, your agents, assigns, employees, officers, attorneys, and representatives and those in active concert or participation with you or them, should not be restrained and enjoined pending trial of this action from engaging in or performing any act to deprive Plaintiff of ownership and/or possession of the real property located at 5189 ARGONNE COURT, SAN DIEGO, CA 92117 ("Property"), including but not limited to instituting, prosecuting, or maintaining foreclosure or sale proceedings on the Property, from recording any deeds or mortgages regarding the Property, or from otherwise taking any steps whatsoever to deprive Plaintiff of ownership and/or possession in the Property, and in particular from proceeding with the sale of the Property scheduled for July 12, 2010.

13  PENDING HEARING on the above Order to Show Cause, you, your agents, assigns, employees, officers, attorneys, and representatives and those in active concert or participation with you or them **ARE HEREBY RESTRAINED AND ENJOINED** from engaging in or performing any act to deprive Plaintiff of ownership and/or possession of the real property located at 5189 ARGONNE COURT, SAN DIEGO, CA 92117, including but not limited to instituting, prosecuting, or maintaining foreclosure or sale proceedings on the Property, from recording any deeds or mortgages regarding the Property, or from otherwise taking any steps whatsoever to deprive Plaintiff of ownership and/or possession in the Property, and in particular from proceeding with the sale of the Property scheduled for July 12, 2010.

22  The above Temporary Restraining Order is EFFECTIVE IMMEDIATELY, the deed of trust shall remain on the Property as security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained, pursuant to the requirements of Fed. R. Civ. P. 65(c). This Order to Show Cause and supporting papers must be served on Defendants no later than Friday, **July 9, 2010**. Upon serving Defendants, Plaintiff shall file a proof of service with the Court indicating that service has been accomplished by the stated date.

28  ///

1 | Any response or opposition to this Order to Show Cause must be filed and personally served
2 | on Plaintiff or Plaintiff's counsel no later than Monday, **July 19, 2010**.
3 | **IT IS SO ORDERED.**

5 | **DATED: July 8, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**