FILED

2010 NOV -3  AM 10: 54

CLERK US D.STRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

1 | David Caravantes, Pro Se
2 | 55189 Argonne Court
3 | San Diego, California 92117
  | Tel: (858)490-1331
4 | Fax: (858)490-9191

6 | **UNITED STATES DISTRICT COURT**

7 | **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID CARAVANTES, an individual | ) Civil Case No.:  10-CV-1407-IEG (AJB) |
| | ) |
| Plaintiff, | ) |
| | ) **VERIFIED FIRST AMENDED** |
| v. | ) **COMPLAINT** |
| | ) |
| CALIFORNIA RECONVEYANCE | ) **DEMAND FOR JURY TRIAL** |
| COMPANY,  a California corporation; | ) |
| WASHINGTON MUTUAL BANK, FA, a | ) |
| Federal Savings Bank organized and existing | ) |
| under the laws of the United States; | ) |
| JPMORGAN CHASE BANK, N.A. a | ) |
| National Banking Association organized and | ) |
| existing under the laws of the United States; | ) |
| CHASE HOME FINANCE LLC, a | ) |
| Delaware Limited Liability Company, VREJ | ) |
| JOUKADARIAN, and individual, | ) |
| CLEMENT J. DURKIN, an individual, | ) |
| DEBORAH BRINGNAC, an individual, | ) |
| ANN THORN, an individual,  FEDERAL | ) |
| DEPOSIT INSURANCE CORPORATION | ) |
| aka F.D.I.C., organization of the United | ) |
| States Government, and Does 2-20 inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

1    Plaintiff DAVID CARAVANTES (hereinafter referred to as "Plaintiff"), representing

2    himself pro se, for this First Amended Complaint (hereinafter "Complaint"), against

3    Defendants CALIFORNIA RECONVEYANCE COMPANY (hereinafter "CRC"). a

4    California corporation, WASHINGTON MUTUAL, FA (hereinafter "WaMu"), a Federal

5    Savings Bank organized and existing under the laws of the United States, JPMORGAN

6    CHASE, N.A. (hereinafter "JPMorgan"), a National Banking Association organized and

7    existing under the laws of the United States, CHASE HOME FINANCE LLC (hereinafter

8    "Chase Home Finance"), a Delaware limited liability company, VREJ JOUKADARIAN

9    (hereinafter "Joukadarian"), an individual, DEBORAH BRIGNAC (hereinafter "Brignac"),

10    an individual, ANN THORN (hereinafter "Thorn"), an individual, FEDERAL DEPOSIT

11    INSURANCE CORPORATION (hereinafter "FDIC"), an agency of the United States

12    Government, and Does 2-20 inclusive.

13    **JURISDICTION AND VENUE**

14    1.      Plaintiff's claims against Defendants include violation of Federal statutes

15    commonly known as TILA and RESPA, with additional claims under California state law.

16    These claims all arise out of the same controversy and sequence of events.

17    2.      The real property which is the subjection of this Complaint is located within

18    the County of San Diego, State of California.

19    3.      This court has subject matter jurisdiction over this action under 28 U.S.C. §§

20    1331 and 1367, 15 U.S.C. §§ 1601 *et seq.*, 15 U.S.C.§ 1639, 12 U.S.C. §§ 2601 *et seq.*, and

21    18 U.S.C. §§ 1961 *et seq.*

22    4.      Venue is proper in the Southern District of California under 28 U.S.C. §

23    1391(b)(2), as it is the judicial district in which a substantial part of the events giving rise to

24    the claim occurred, and all the property that is subject of the action is situated in this

25    district.

26    **THE PARTIES**

27    5.      Plaintiff is, and at all times herein mentioned was, an individual residing in the

28    State of California, County of San Diego. He is, and at all times herein mentioned was, the

     owner and resident of the real property that is the subject of this Complaint, the location of

1   which is commonly known as 5189 Argonne Court, San Diego, California, 92117

2   (hereinafter the "Property").

3       6.      Plaintiff is informed and believes, and thereon alleges that at all times herein

4   mentioned in this Complaint, Defendant CRC was and is a California corporation, doing

5   business in San Diego County, California and provides real estate services that may be

6   regulated by RESPA, TILA, and other state and/or federal statutes, the specific extent and

7   nature of which are unknown at this time, but which are subject to discovery and with

8   respect to which the specifics will be alleged by amendment to this Complaint when

9   ascertained.

10      7.      Plaintiff is informed and believes and thereon alleges that at all times herein

11  mentioned in this Complaint, Defendant WaMu was a Federal Savings Bank organized and

12  existing under the laws of the United States.  In or around September 2008, WaMu was

13  closed by the Office of Thrift Supervision and the FDIC named receiver.  At the time the

14  subject loan was transacted, WaMu conducted wholesale consumer loan operations in San

15  Diego County, California and was in the business of originating consumer credit

16  transactions described in the Federal Truth in Lending Act ("TILA") and in the business of

17  being a "servicer" of "federally related mortgage loans" as those terms are defined in the

18  Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602(l) and 2605(i)(2).

19  Plaintiff is also informed and believes and thereon alleges that at all times herein mentioned

20  in this Complaint, Defendant WaMu was in the business of home-equity lending governed

21  by the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 and 12

22  C.F.R. §§ 226.32 *et seq*.  Plaintiff is further informed and believes and thereon alleges that

23  at all times herein mentioned, Defendant WaMu was subject to other state and/or federal

24  statutes, the specific extent and nature of which are unknown at this time, but which are

25  subject to discovery and with respect to which the specifics will be alleged by amendment

26  to this Complaint when ascertained.

27      8.      In being named "receiver" the FDIC, an agency of the United States

28  government, agreed to accept liability incurred by Defendant WaMu under a Purchase and

    Assumption Agreement ("P & A Agreement") for those claims which arose prior to the

1  FDIC being named "receiver".  Plaintiff now asserts those claims which relate to the

2  originination of his loan with WaMu against the FDIC per the P&A Agreement.

3         9.    Plaintiff is informed and believes and thereon alleges that at all times herein

4  mentioned in the Complaint, Defendant Chase Home Finance was a foreign limited liability

5  company organized and existing under the laws of Delaware and doing business in San

6  Diego County, California.  Plaintiff is further informed and believes and thereon alleges

7  that at all times herein mentioned, Defendant Chase Home Finance was and is in the

8  business of being a "servicer" of "federally related mortgage loans" as those terms are

9  defined in RESPA.  On information and belief, Plaintiff further alleges that Defendant

10  Chase Home Finance provides other real estate services that may be regulated by RESPA,

11  TILA, or other state and or federal statutes, the specific extent and nature of which are

12  unknown at this time, but which are subject to discovery and with respect to which the

13  specifics will be alleged by amendment to this Complaint when ascertained.

14        10.    Plaintiff is informed and believes and thereon alleges that Defendant

15  JPMorgan was and is a National Banking Association organized and existing under the

16  laws of the United States and doing business in San Diego County, California.   Plaintiff is

17  also informed and believes that JPMorgan acquired certain assets and liabilities from

18  WaMu with the FDIC acting as "receiver" and that Defendant JPMorgan initiates

19  foreclosure proceedings against Plaintiff and as such was and is subject to state and/or

20  federal statutes, the specific extent and nature of which are unknown at this time, but which

21  are subject to discovery and with respect to which the specifics will be alleged by

22  amendment to this Complaint when ascertained.

23        11.    Plaintiff is informed and believes and thereon alleges that Defendant

24  Joukadarian at all times herein mention in this Complaint, was an individual residing in the

25  State of California.

26        12.    Plaintiff is informed and believes and thereon alleges that Defendant Durkin,

27  at all times herein mention in this Complaint, was an individual residing in the State of

28  Florida.

1    13.    Plaintiff is informed and believes and thereon alleges that Defendant Brignac

2  at all times herein mention in this Complaint, was an individual residing in the State of

3  California.

4    14.    Plaintiff is informed and believes and thereon alleges that Defendant Thorn at

5  all times herein mention in this Complaint, was an individual residing in the State of

6  Florida.

7    15.    Plaintiff is ignorant of the true names and capacities of the defendants sued

8  herein under fictitious names Does 2-20, inclusive, and Plaintiff will amend this Complaint

9  to allege such names and capacities as soon as the y are ascertained.  Plaintiff is informed

10  and believes and thereon alleges that each of said fictitiously named defendants is

11  responsible in some manner for the acts complained of herein.

12                                    **FACTUAL BACKGROUND**

13    16.    This case arises out of a loan and foreclosure related to the Property, of which

14  Plaintiff is the rightful owner.

15    17.    Plaintiff became the owner of legal title to the Property on or about August 15,

16  2007.  He acquired the Property via a loan from Defendant WaMu.  The terms of the loan

17  were memorialized in a promissory note ("the Note"), which was in turned secured by a

18  Deed of Trust on the Property.

19    18.    The Deed of Trust was recorded in San Diego County on August 27, 2007 as

20  instrument number 2007-0569430 ("Deed of Trust").  The Deed of Trust identified

21  Defendant WaMu as the lender and provided that payments were to be made to Defendant

22  WaMu.  Defendant CRC was named as Trustee.

23    19.    When the loan was consummated, Plaintiff did not receive required documents

24  and disclosures, including, but not limited to, the Truth in Lending Disclosure statement

25  containing the required material disclosures and the required number of copies of the

26  Notice of Right to Cancel containing the dates that the rescission period expires.

27    20.    Plaintiff's income decreased dramatically in or around 2008 when certain

28  information concerning Plaintiff was reported by the media.  Said information irreparably

damaged Plaintiff's reputation in his field and led to his inability to work in said field.

1    Plaintiff has filed a separate, unrelated lawsuit concerning these damaging representations.

2    Plaintiff has been in and out of work since that point, and has not had consistent income,

3    though his financial situation is currently starting to improve.

4         21.    In or around September 2008, as stated above, defendant WaMu closed.

5    Subsequently, Defendant JPMorgan purchased the assets and certain liabilities of

6    Defendant WaMu.  Plaintiff received a form letter stating that Defendant WaMu has

7    become Defendant JPMorgan.  Plaintiff subsequently received statements from Defendant

8    Chase Home Finance, and Plaintiff directed payments to Defendant Chase Home Finance,

9    assuming that Defendant Chase Home Finance was the new servicer.

10         22.    In or around November 2009, Plaintiff received a letter from Chase Home

11    Ownership Preservation Office stating that many Americans are experiencing difficulty

12    with their mortgage payments, and that if Plaintiff was experiencing difficulty there were

13    some options available to him that would allegedly assist Plaintiff with making payments.

14    Plaintiff received similar letters, the most recent being June 8, 2010 (See Exhibit 1). None

15    of these letters directly discussed Plaintiff's actual financial situation.

16         23.    On or about January 25, 2010, Defendant Chase Home Finance mailed to

17    Plaintiff a letter titled "Notice of Collection Activity" alleging that Plaintiff was in default

18    under the terms of the Note.  The letter did not attempt to discuss any option available to

19    Plaintiff to avoid foreclosure other that paying the full amount allegedly due.  A copy of the

20    notice is attached as Exhibit 2.

21         24.    On or about March 10, 2010, Defendant CRC recorded a Notice of Default on

22    the Property ("Notice of Default").  In this Notice of Default, which was executed on

23    March 2, 2010, Defendant WaMu is identified as the beneficiary under the Deed of Trust.

24    The Notice of Default states that the "beneficial interest under said Deed of Trust and the

25    obligation secured thereby are presently held by the beneficiary" and that the "present

26    beneficiary" had executed and delivered to Defendant CRC as Trustee a Declaration and

27    Demand for Sale.  The Notice of Default was signed by Defendant Joukadarian on behalf of

28    CRC, as Trustee.  A copy of the Notice of Default is attached hereto as Exhibit 3.  After

1  recordation in San Diego County, California, the Notice of Default and Declaration of
2  Compliance were mailed to Defendant CRC's office in Chatsworth, California.

3      25.    The "Declaration of Compliance" attached to the Notice of Default was signed
4  by Defendant Durkin, for Defendant JPMorgan, not by Defendant WaMu, which implies
5  that Defendant JPMorgan is the current beneficiary instead of Defendant WaMu.  There are
6  no documents evidencing a substitution of beneficiary other than the abovementioned form
7  letter that Plaintiff received that stated merely that Defendant WaMu had become
8  Defendant JPMorgan.  Furthermore it is Plaintiff's belief that Defendant Durkin had no
9  personal knowledge of the contents of the declaration he or she signed under penalty of
10 perjury.

11     26.    The Declaration of Compliance indicates that the "mortgagee, beneficiary or
12 authorized agent tried with due diligence but was unable to contact the borrower" to discuss
13 Plaintiff's financial situation and discuss options to avoid foreclosure as required by
14 California Civil Code § 2923.5, and that more than thirty days had elapsed since due
15 diligence was completed.

16     27.    With the exception of the nonspecific, mass-mailed letters referenced above,
17 Plaintiff did not receive any other letters, phone calls, personal visits, or any other form of
18 communication from any defendant regarding his personal financial situation and options to
19 avoid foreclosure that were specifically available to Plaintiff.  The only documents Plaintiff
20 received concerning his personal financial situation are the Notice of Collections Activity,
21 the Notice of Default, and the Notice of Trustee's Sale.  Even if these nonspecific letters
22 qualify as an attempt to contact Plaintiff to discuss his financial situation and options to
23 avoid foreclosure, the most recent letter was dated June 8, 2010, such that thirty days had
24 not elapsed prior to recording the Notice of Default since due diligence was attempted.

25     28.    In or around March 2010, Plaintiff began investigating his legal rights
26 concerning the foreclosure and retained a mortgage auditing firm.

27     29.    On March 23, 2010, Plaintiff sent a Qualified Written Request ("QWR") letter
28 via certified mail to Defendant CRC, JPMorgan, and Chase Home Finance.  This letter
   clearly stated that it was a "RESPA Qualified Written Request, Complaint, Dispute of

1   Alleged Debt, Request for Verification, Validation, and TILA Request," and made several

2   specific requests for documentation and information concerning the loan transaction at

3   issue in this case.  A copy of the QWR is attached hereto as Exhibit 4.

4      30.  On or around March 26, 2010, Defendant CRC sent a letter to Plaintiff

5   acknowledging receipt of the QWR and stating that Defendant CRC had forwarded the

6   letter to JPMorgan.  Also on or around the same time, Defendant Chase Home Finance sent

7   a letter to Plaintiff Acknowledging receipt of the QWR and stating that a further response

8   would be forthcoming.  Copies of the acknowledgment letters from Defendant CRC and

9   Defendant Chase Home Finance are attached hereto as Exhibits 5 and 6, respectively.

10      31.  On May 10, 2010, Plaintiff sent a letter to Defendant Joukadarian, as well as

11   Carla Dodd and Jenny Dang, all of whom were named as described above on

12   documentation Plaintiff had received from Defendant CRC.  In this letter, Plaintiff

13   informed these defendants that he had retained the mortgage auditing firm, that the firm had

14   informed Plaintiff that Defendant JPMorgan had violated numerous laws in regards to the

15   loan documents, that neither Defendant CRC nor Defendant JPMorgan have standing to

16   foreclose and that neither can demonstrate that they have been harmed by Plaintiff's

17   default, and that Defendants CRC, Joukadarian, Carla Dodd and Jenny Dang, would be

18   named as co-defendants in a lawsuit against Defendant JPMorgan if Defendant CRC

19   proceeds with the foreclosure.  A Copy of the aforementioned letter is attached as exhibit 7.

20      32.  On or around June 3, 2010, Defendant Chase Home Finance sent an

21   incomplete response to the QWR in which it repeatedly stated that information or

22   documentation requested was proprietary or unavailable.  As the response was signed with

23   an illegible scrawl, Plaintiff has no way to determine who prepared the response in order to

24   attempt to clarify the statements made in the response or obtain further information.  A

25   copy of the response to the QWR is attached hereto as Exhibit 8.

26      33.  Defendant CRC executed a Notice of Trustee's Sale ("Notice of Sale") on

27   June 11, 2010.  The copy received by Plaintiff does not indicate if or when the Notice of

28   Sale was recorded.  This Notice of Sale was posted on Plaintiff's door on or about June 11,

2010, and Plaintiff received a copy in the mail on or about June 12, 2010.  A copy of the

8
FIRST AMENDED COMPLAINT

1  Notice of Sale and what purports to be the declaration by Defendant JPMorgan is exempt
2  from the notice requirement under California Civil Code § 2923.53 are attached hereto as
3  Exhibit 9.

4      34.    The Notice of Sale states that the sale is scheduled to take place on July 6,
5  2010, at 10:00 a.m., and is signed by Defendant Brignac for Defendant CRC, as Trustee,
6  using a stamp or electronic signature of some kind.  The Notice of Sale requests that, after
7  recordation in San Diego County, California, the Notice of Sale and declaration be mailed
8  to Defendant CRC's office in Chatsworth, California.

9      35.    The Notice of Sale was accompanied by what appears to be the declaration
10  required by California Civil Code § 2923.54 stating whether or not the mortgage loan
11  servicer has an exemption under California Civil Code § 2923.53 that is current and valid
12  on the date the Notice of Sale is filed.  This Declaration was neither signed nor dated,
13  however it did identify Ann Thorn as First Vice President for Defendant JPMorgan.  It is
14  Plaintiff's belief that Defendant Thorn had no personal knowledge of this document when
15  she allegedly executed it.

16      36.    Based upon the facts previously stated, it is difficult to determine whether
17  Defendant WaMu or Defendant JPMorgan or Defendant FDIC directed Defendant CRC to
18  conduct the Trustee's Sale of the Property, ostensibly to collect the unpaid balance on the
19  Note secured by the Deed of Trust.  Plaintiff is informed and believes and thereon alleges,
20  based on the language contained in the Notice of Default as stated above the fact that
21  Plaintiff received nothing from Defendant WaMu, Defendant JPMorgan or Defendant
22  FDIC stating that Defendant JPMorgan was the new beneficiary.

23      37.    As such, it is Plaintiff's belief that Defendant JPMorgan is not and was not the
24  holder of the Note, nor is it in possession of the Note properly endorsed to it, nor was it or
25  is it otherwise entitled by law to initiate a non-judicial foreclosure under the Deed of Trust
26  or to direct Defendant CRC to foreclose and sell the property due to irregularities that
27  render the Notice of Default and subsequent Notice of Sale invalid.

28      38.    Plaintiff is informed and believes and thereon alleges that Defendants CRC,
    and JPMorgan knew or reasonably should have known that they have no right to foreclose

1   and conduct a sale due to irregularities in the Notice of Default and Notice of Sale that

2   render them invalid.

3        39.    Plaintiff alleged on information and belief those Defendants, and each of them,

4   in so acting in this case and with respects to numerous other mortgages or Deed of Trust

5   security instruments, engaged in a pattern and practice of utilizing the non-judicial

6   foreclosure procedures of California to foreclose on properties when they do not have the

7   legal right to do so. This is evidenced by the fact that Defendants have attempted to exempt

8   themselves from providing the proper disclosures. On information and belief, Plaintiff

9   alleges that Defendants engage in this practice relying on the assumption that property

10  owners affected generally do not have the legal or financial wherewithal to contest

11  Defendants alleged right to foreclose.

12       40.    On information and belief, Plaintiff alleges Defendant JPMorgan is

13  committing the acts alleged in this Complaint and are engaged in a pattern of unlawful

14  activity. They have failed to respond to a valid QWR request, by attempting to claim the

15  information is proprietary or unavailable. It would only be unavailable due to Defendants'

16  own negligence or intentional misconduct. The Defendants have instituted a common plan

17  or scheme in that they have divided the procedure of foreclosure, claimed exemption from

18  foreclosure statutes, and have made the process more difficult to understand in an attempt

19  to deprive home owners of their rights all for the benefit of Defendants' pecuniary gain.

20       41.    Plaintiff alleges on information and belief that Defendants, in dealing with the

21  severe decline of the real estate market, have chosen to foreclose on as many properties as

22  possible in order to retain those property until the market rises again because most of the

23  properties being foreclosed on are reverting back to Defendants or other foreclosing lending

24  institutions.

25  **FIRST CAUSE OF ACTION**

26  **Violations of Truth In Lending Act- 15 U.S.C. §§ 1601 *et se q*.**

27  **(Against Defendant FDIC and WaMu)**

28       42.    Plaintiff repeats, realleges, and incorporates by reference each and every

allegation set forth above.

10
FIRST AMENDED COMPLAINT

43.   The loan transaction at issue is a consumer credit transaction subject to the provisions of TILA.

44.   Defendant WaMu is a "creditor" as that term is defined by 15 U.S.C. § 1602. The transaction wherein Defendant WaMu extended credit to Plaintiff and such credit was secured by an interest purportedly held by defendant WaMu in the Property.

45.   As a consumer credit transaction, Defendant WaMu was required to provide to Plaintiff mandatory Truth in Lending Disclosure statements and notice of the borrower's right to rescind, specifying the date on which the three-day rescission period expires.  If the lending institution fails to provide the rescission information, the borrower may rescind the loan within three years after it was consummated.  15 U.S.C. § 1635(a) and (f); 12 C.F.R. § 226.23(b)(5).  If the borrower timely exercises his right to rescind, the security interest giving rise to the right of rescission becomes void. *Id.*

46.   In the course of the transaction described herein, Defendant WaMu violated TILA in numerous ways, including, but not limited to: failing to deliver good faith estimates of disclosure (preliminary TILDS) within three days of the loan application pursuant to 12 C.F.R § 226.19(a); failing to make required disclosures clearly and conspicuously in writing, failing to provide two copies of the completed Right to Cancel pursuant to 12 C.F.R. § 226.23(b); failing to provide Hazard Insurance disclosure pursuant to 12 C.F.R. § 226.4(d)(2); failure to provide the Consumer Handbook on Adjustable Rate Mortgages ("CHARM") within three days of the application pursuant to 12 C.F.R. § 226.19(b); placing terms prohibited by statute into the transaction,; failing to disclose all finance charge details and the annual percentage rate based upon properly calculate and disclosed finance charges and amounts financed.

47.   Because of these violations, Defendant WaMu is liable to Plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and cost in accordance with 15 U.S.C. § 1640(a); statutory damages, reasonable attorney's fees, and such other relief as the Court may deem just and proper.

48.   As a result of Defendant WaMu's misconduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, which he is entitled to

1    recover.  Moreover, Defendant WaMu's misconduct was willful, malicious, and

2    outrageous, and therefore punitive damages are warranted and demanded.

3        49.     WaMu is a closed, insured depository institution.  Defendant F.D.I.C., through

4    the P & A agreement have accepted appointment as receiver for WaMu.  As such

5    Defendant FDIC "steps into the shoes' of the failed [financial institution] and operates as its

6    successor.  O'Melveny & Myers v. F.D.I.C., 512 U.S. 86(1994); see also 12 U.S.C.

7    §1821(d)(2)(A)(i).

8        50.     As such Defendant FDIC is liable to Plaintiff for damages caused by

9    Defendant WaMu.

10       51.     Pursuant to Civil Code Section 1559, Plaintiffs may enforce the Contract's

11    provisions.

12       52.     Plaintiffs seek damages according to proof and reserve their rights to seek

13    equitable remedies to prevent the sale of their home.

14                          **SECOND CAUSE OF ACTION**

15              **Violations of RESPA- 12 U.S.C. §§ 2601 *et seq***

16      **(Against Defendants WaMu, FDIC, JPMorgan, and Chase Home Finance)**

17       53.     Plaintiff repeats, realleges, and incorporates by reference each and every

18    allegation set forth above.

19       54.     The loan transaction between Plaintiff and Defendant WaMu is a mortgage

20    loan covered by RESPA.

21       55.     A violation of RESPA is also made unlawful under California state law by

22    Financial Code § 50505, which states: " Any person who violates any provision of

23    [RESPA] or any regulation promulgated thereunder, violates this division [ California

24    Residential Mortgage Lending Act]."

25       56.     Defendant WaMu violated RESPA at the time of Closing on the sale of the

26    Property by failing to correctly and accurately comply with disclosure requirements.

27    Specifically, Defendant WaMu: failed to disclose all affiliated business arrangements

28    pursuant to 24 C.F.R.§ 3500.15; failed to provide transfer serving disclosure at or prior to

1  closing pursuant to  24 C.F.R.§ 3500.21; and failed to conspicuously make known to
2  Plaintiff the legal relationships between the parties.

3        57.    Plaintiff is informed and believes and thereon alleges that Defendant WaMu
4  has engaged in a pattern or practice of non-compliance with the requirements of the
5  mortgage servicer provision of RESPA. Also, Plaintiff is informed and believes and thereon
6  alleges that this pattern was caused by Defendant WaMu's attempt to streamline the
7  mortgage process in order to increase the profits it made during the housing boom.  If
8  Defendant WaMu had accurately and completely complied with the disclosure
9  requirements, Plaintiff, and other similarly situated persons, might asked more questions
10  regarding the loan origination process, would have refused to endorse a loan that was
11  extremely detrimental to them, or simply would have taken more time to consider the
12  consequences.  To avoid this Defendant WaMu did not comply.

13        58.    As a result of defendant WaMu's failure to comply with RESPA, Plaintiff has
14  suffered and continues to suffer damages and cost of suit.  Plaintiff is entitled to recover
15  statutory damages of $1,000, and actual damages in an amount to be determined at trial,
16  and costs and reasonable attorney's fees.  As a result of the P&A agreement referenced
17  above, Defendant FDIC, acting as the "receiver" for WaMu absorbs WaMu's liabilities as
18  they relate to RESPA violation committed during the inception of the loan.

19        59.    As an additional RESPA violation, pursuant to 12 U.S.C. § 2605 (e)(2), after
20  conducting an investigation in response to a QWR, a servicer shall provide the borrower
21  with a written explanation or clarification that includes: (1) "to the extent applicable, a
22  statement of the reasons for which the servicer believes the account of the borrower is
23  correct as determined by the servicer"; and (2) "information requested by the borrower or
24  an explanation of why the information requested is unavailable or cannot be obtained by the
25  servicer."

26        60.    As discussed above, it is unclear whether Defendant Chase Home Finance or
27  Defendant JPMorgan is the servicer and Plaintiff therefore alleges this cause of action
28  against both parties but will amend his complaint at a later date after discovery reveals
   which entity is the actual "servicer" of Plaintiff's loan.  However, in response to Plaintiff's

1  QWR, Defendant Chase Home Finance did not provide a statement of reasons for which

2  they believe Plaintiff's account is correct - they merely state that it is their position that

3  Plaintiff has undertaken a "valid, binding and legally enforceable obligation to Chase."

4  Defendant Chase Home Finance also did not provide all information requested by Plaintiff

5  or, if not provided, any explanation of why the information is unavailable or cannot be

6  obtained except to state that "[a]ny documents or information requested but not included

7  with this package are unavailable or considered proprietary, and will not be provided".

8      61.    There has not been compliance by Defendant Chase Home Finance with

9  respects to the QWR. They failed to respond adequately. The fact that the information is

10 "unavailable" only furthers Plaintiff's belief that Defendants intend to purposefully avoid

11 their statutory requirements. The Defendants are more sophisticated and knowledgeable

12 about the loan and if any information is in fact unavailable it is because of the Defendants

13 own negligence or intentional disposal.

14     62.    Due to Defendant Chase Home Finance's inadequate response, Plaintiff was

15 unable to assert his statutory rights without filing this Complaint.

16     63.    Plaintiff is informed and believes and thereon alleges that JPMorgan is liable

17 for its agent, Defendant Chase Home Finance, lack of adequate disclosure, which have

18 caused the Plaintiff damage.

19     64.    Defendant JPMorgan failed to send any response to Plaintiff's QWR.

20     65.    Plaintiff has suffered damages as a result of Defendant WaMu's RESPA

21 violations in failing to provide adequate disclosures and failing to provide required

22 documents at the closing of the loan. Specifically, Plaintiff may have declined the loan

23 product WaMu offered to him had he been made provided all required disclosures. Had

24 Plaintiff declined the loan product, Plaintiff would not be facing foreclosure. These

25 damages flow to Defendant FDIC as "receiver."

26     66.    Plaintiff has suffered damages as a result of Defendant Chase Home Finance's

27 inadequate response to his QWR and Defendant JPMorgan's failure to provide any sort of

28 response to Plaintiff's QWR in that Plaintiff is now facing a foreclosure without having any

understanding as to who holds his promissory note and the accompanying right to

1    foreclose.  As a result Plaintiff has incurred costs in filing fees, a loan audit, and legal

2    consultation in order to get determine his rights under the loan documents he signed.

3    Defendant Chase Home Finance and Defendant JPMorgan's refusal to comply to Plaintiff's

4    QWR request under RESPA has forced Plaintiff to file the present action so that he may

5    demand the information previously requested through the discovery process and will have

6    legal recourse in the event Defendants response to his discovery mirrors their response to

7    his QWR.  Furthermore, Plaintiff is facing a foreclosure and believes that the foreclosing

8    entity does not hold the legal authority to foreclose.  Some of the inquiries in Plaintiff's

9    QWR specifically ask for information relating to assignment or transfer in the beneficial

10   interest of the loan.  Plaintiff did not receive any adequate responses to these requests and

11   therefore if Plaintiff's home is indeed foreclosed upon, the lack of response on Defendants

12   part as herein described would be a contributing factor in Plaintiff suffering a foreclosure of

13   his home.

14        67.    Plaintiff is therefore entitled to statutory damages, actual damages to be

15   determined at the time of trial, reasonable costs and attorney's fees, and any amount of

16   damages this Court deems reasonable.

17                        **THIRD CAUSE OF ACTION**

18        **Violations of HOEPA – 15 U.S.C. § 1639 and 12 C.F.R. §§ 226.32 *et seq.***

19                    **(Against Defendants WaMu and FDIC)**

20        68.    Plaintiff repeats, realleges, and incorporates by reference each and every

21   allegation set forth above.

22        69.    Under HOEPA, a special disclosure notice must be delivered to the consumer

23   at least three (3) business days prior to the closing of the loan. 15 U.S.C. § 1639 (b); 12

24   C.F.R. § 226.31(c).  The notice must inform the consumer that the homeowner is not bound

25   to enter into the loan, and that if the homeowner does enter the loan, the homeowner could

26   lose his home and money he has invested in the home.

27        70.    HOEPA also requires that the lender notify the buyer of the regular monthly

28   (or other period) payment and the mount of any balloon payment.  HOEPA further requires

     for variable-rate transactions the lender must provide a statement that the interest rate and

1  the monthly payment may increase, and provide the mount of the single maximum monthly

2  payment, based on the maximum interest rate required to be disclosed under 12 C.F.R. §

3  226.30.

4      71.    Here, there is no evidence demonstrating that Defendant WaMu sent a

5  HOEPA disclosure to Plaintiff.  There is no evidence that Defendant WaMu notified

6  Plaintiff of the regular payment and balloon payment.  Furthermore there is no evidence

7  that Defendant WaMu provided the statement that the interest rate and monthly payment

8  may increase or provide the amount of the single monthly payment based on the maximum

9  interest rate.  Had these disclosures been made, Plaintiff could have negotiated the terms, or

10  sought more favorable terms elsewhere.

11      72.    Defendant FDIC is liable for Wamu's actions against Plaintiff under the P & A

12  agreement as the "receiver" for WaMu.

13  **FOURTH CAUSE OF ACTION**

14  **Civil Conspiracy**

15  **(Against Defendants CRC, JPMorgan, and Chase Home Finance)**

16      73.    Plaintiff repeats, realleges, and incorporates by reference each and every

17  allegation set forth above.

18      74.    Plaintiff is informed and believes, and thereon alleges, that Defendants CRC,

19  WaMu, FDIC as "receiver" for WaMu, JPMorgan, and Chase Home Finance conspired and

20  agreed to implement a scheme to defraud and victimize Plaintiff through the unlawful acts

21  alleged herein.

22      75.    A cause of action for Civil Conspiracy requires that the Plaintiff prove (1) the

23  formation and operation of the conspiracy, (2) wrongful acts done pursuant to the

24  conspiracy, and (3) damages resulting to the plaintiff from the act. Applied Equip. Corp v.

25  Litton Saudi Arabia Ltd.,  869 P.2d 454.

26      76.    Plaintiff is informed and believes that a conspiracy was created by the

27  Defendants in order to take advantage of unsophisticated home buyers for monetary gain.

28  Each Defendant engaged in separate acts in the conspiracy.

77.     WaMu as a lending institution provided highly unfavorable loans to home buyers.  They securitized the notes related to such loans in order to avoid liability for subprime loans.  The FDIC did not actively participate in the execution of such loans, however absorbs WaMu's liabilities as "receiver" under the P&A agreement.

78.     Based on information and belief Plaintiff thereon alleges that Defendant JPMorgan recognized the great opportunity to capitalize on WaMu's predatory lending activities and specifically negotiated for the FDIC to absorb WaMu's liability in selling predatory loans to unknowing borrowers so that JPMorgan could profit on foreclosing on said borrowers without having to face the predatory lending causes of action which JPMorgan knew or reasonably should have known WaMu could be liable for.

79.     Plaintiff is informed and believes and based thereon alleges that after the balloon burst on predatory lending, JPMorgan, in an attempt to control the foreclosed properties enlisted the assistance of Chase Home Finance and CRC to institute unlawful foreclosures as quickly as possible. The goal of this conspiracy was to maintain control of these distressed properties in order to later sell them once the market price for such properties has increased.

80.     Plaintiff is informed and believes and based thereon alleges that JPMorgan owns and operates Chase Home Finance and therefore in order to maximize their profits to Plaintiff's detriment, JPMorgan encouraged Chase Home Finance to fail to offer Plaintiff any options to avoid foreclosure.

81.     Plaintiff is informed and believes and based thereon alleges  that CRC maintained willful blindness and failed to exercise due diligence because they rely on Defendant JPMorgan Chase for the majority of their business.  Ultimately the Defendants, because of their conspiracy did not act in good faith to help the Plaintiff avoid foreclosure.

82.     Plaintiff is informed and believes and based thereon alleges that all Defendants named in this conspiracy stands to profit more from foreclosing on the subject property than they do from offering Plaintiff options to avoid foreclosure and therefore conspired amongst each other to execute a foreclosure which they knew or reasonably should have known violated state and  / or federal law as previously described.

83.     As such Plaintiff has been damaged by the conspiracy because he was subject to a highly unfavorable loan, was denied his statutory rights, and has now had to file this action to attempt to stop the foreclosure of his home.

## FIFTH CAUSE OF ACTION

### Unfair Business Practices-California Business and Professions Code § 17200
### (Against All Defendants)

84.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth above.

85.     Plaintiff is informed and believes and thereon alleges that Defendants committed, unlawful, and/ or fraudulent business practices as defined by California Business and Professions Code § 17200 based on the facts stated above and those reiterated below.

86.     WaMu (and accordingly the FDIC) engaged in unfair practices by encouraging and selling subprime loans products which they knew or reasonably should have known would eventually put Plaintiff in a position where he would default.

87.     JPMorgan and Chase Home Financial engaged in business practices that are unlawful and unfair by failing to adequately respond to Plaintiff's QWR. They also acted fraudulently by stating that certain information was "proprietary" or "unavailable." Plaintiff alleges and believes that Defendant could have responded to Plaintiff's QWR but chose not to because said information would have exposed the conspiracy or would have been otherwise damaging.  Furthermore, said act is unfair because Defendant JPMorgan, being a sophisticated lending institution, has far more resources to hide, mislead, or otherwise deceive Plaintiff and other similarly situated persons.   Without these disclosures Plaintiff is at the mercy of Defendants.

88.     FDIC has assumed liability for any liability incurred by WaMu under the P & A Agreement.

89.     CDC has violated California Business and Professions Code § 17200 by failing to conduct a diligent investigation as to the validity of said foreclosure for pecuniary

1    gain. CDC has acted unlawfully by violating the non-judicial foreclosure process with
2    relation to verifying and properly disclosing certain information.

3         90.    Defendants Joukadarian, Durkian, Brignac and Thorn have engaged in giving
4    false and improper declarations in support of the other Defendants unlawful activities.

5         91.    As a result of Defendant's wrongful conduct, Plaintiff has suffered various
6    damages and injuries according to proof at trial.

7         92.    Plaintiff seeks restitution, disgorgement of sums wrongfully obtained, costs of
8    suit, reasonable attorney's fees, and such other and further relief as the Court may deem
9    just and proper.

10                            **SIXTH CAUSE OF ACTION**
11                   **Violation of California Civil Code § 2923.5**
12            **(Against Defendants CRC, WaMu, and JPMorgan, FDIC)**

13        93.    Plaintiff repeats, realleges, and incorporates by reference each and every
14    allegation set forth above.

15        94.    Defendants CRC, WaMu, and JPMorgan are asserting a right to conduct a
16    foreclosure sale pursuant in part of the Notice of Default and Declaration of Compliance
17    that were recorded on March 10, 2010.  Pursuant to California Civil Code § 2923.5, a
18    notice of default filed pursuant to Section 2924 shall include a declaration that the
19    mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due
20    diligence to contact the borrower as required by this section, or that no contact was required
21    pursuant to subdivision (h).

22        95.    Said defendants knew or should have known that such documents were
23    improper in that the declaration is supposed to be signed by the present beneficiary, but this
24    declaration was signed by Defendant Durkin for Defendant JPMorgan, who is at most the
25    servicer and not the beneficiary as described in the Notice of Default.  The servicer does
26    not have the power to enforce the Note or the Deed of Trust unless they hold the note.

27        96.    Furthermore, "due diligence" under California Civil Code § 2923.5(g) requires
28    that the mortgagee, beneficiary or authorized agent first attempt to contact the borrower
     through first class mail, followed by three attempts to contact the borrower by telephone.

97. Because none of the Defendants attempted to contact Plaintiff by telephone Defendants have not exercised due diligence as defined by California Civil Code § 2923.5(g).

98. Due to the foregoing, the Notice of Default is invalid and Defendants have no right to proceed with the trustee's sale scheduled for July 6, 2010. Plaintiff request that the Court grant declaratory relief by ordering the expungement of said Notice of Default from all records.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury of all issues triable as a matter of right by jury.

WHEREFORE, Plaintiff prays for judgment and an order against Defendants as follows:

A. That the judgment be entered in his favor against Defendants and each of them.

B. For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of this action.

C. For an order and judgment stating that the Deed of Trust is adjudged void and of no legal force and effect and shall be cancelled, stricken, and/or rescinded forthwith.

D. For a temporary restraining order, preliminary injunction, and permanent injunction directing Defendants WaMu, JPMorgan, Chase Home Finance, and CRC or anyone acting under or in concert with them from collecting on the subject loan or from selling the Property at Trustee's Sale.

E. For an order stating that Defendants engaged in unfair business practices.

F. For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices.

G. For an order declaring that the Notice of Default and Notice of Sale are invalid and ordering the expungement of said Notice of Default and notice of sale from all records.

H. For compensatory and statutory damages, attorney's fee and costs according to proof at trial.

I. For exemplary damages in an amount sufficient to punish Defendants' wrongful
   conduct and deter further misconduct.

J. For such other and further relief as the Court may deem just and proper.

Dated this _3_ day of _November,_ 2010

Respectfully Submitted,

DAVID CARAVANTES,
PRO SE PLAINTIFF

# VERIFICATION

I,  DAVID CARAVANTES, the undersigned, certify and declare that I have read the foregoing FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL and know its contents.  I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This verification was signed in the City of San Diego, California.

Dated: 11/03/2010

DAVID CARAVANTES

# Exhibit 1



**CHASE** ●
Homeownership Preservation Office
3415 Vision Drive
OH4-7305
Columbus, OH 43219

June 8, 2010

DAVID CARAVANTES
5189 ARGONNE CT
SAN DIEGO CA 92117-1054                    24014

Dear David,

More and more Americans are struggling to keep up with their mortgage payments. If you are experiencing financial difficulty, you have a variety of options that might help you get back on track, and keep you out of foreclosure.

As the enclosed flyer explains, you have an opportunity to meet in person with specialists from Chase, your lender, at a local event. We'll walk through the options available, and work out the best solution to your current needs. This event is just one part of Chase's overall efforts to help our valued customers who are struggling in these challenging economic times. We're working with partners across the country – HUD approved non-profit counseling agents and local community leaders – to provide free foreclosure prevention assistance to homeowners who need help.

**When you come to the event, please bring a short letter explaining why you need assistance at this time, and include how long you believe you will not be able to make your monthly payments. Also, please bring the documentation listed on the back of this letter. With this information in hand, we'll be able to help you faster.**

If you are struggling, it's easy to start to feel as if you simply have no way out... but it doesn't have to be that way. You have options and you have a chance to get the help you need. Please join us at this upcoming event, and let's work together to help you through these challenging times. The enclosed flyer has all the details you need.

Sincerely,

CHASE Homeownership Center – La Mesa, CA

---

**Can't Make This Event?  You Do Have Other Options…**

If you are experiencing financial difficulty, we have a variety of options that might help you keep your monthly payments up to date, and keep you out of foreclosure -- but we need to talk to you to as quickly as possible. Call us today at **1-619-469-4996** -- the sooner you contact us the more options you'll have.

# Exhibit 2

Chase Home Finance LLC
FL5-7730
PO BOX 44090
Jacksonville, FL 32231-4090

January 25, 2010



001184

DAVID   CARAVANTES
5189   ARGONNE CT
SAN DIEGO   CA   92117-1054

## NOTICE OF COLLECTION ACTIVITY

RE: 3014277101
    5189  Argonne Ct
    San Diego  CA 92117

Dear Borrower:

The records of Chase Home Finance LLC ("Chase") indicate that you have failed to make the required monthly payments under the terms of your Note ("Note") and related Mortgage or Deed of Trust, whichever is applicable ("Security Instrument") since 09/01/2009.  As of today's date the total amount due and owing ("Total Amount Due") is:

| | |
|---|---:|
| Principal & Interest Payments: | $14080.65 |
| Escrow: | $795.15 |
| Late Charges: | $563.21 |
| Outstanding Fees: | $32.55 |
| Corporate Advance: | $0.00 |
| Credits: | $0.00 |
| Total Amount Due: | $15471.56 |

You may cure this default within thirty (30) days from date of letter.  However, the amount that you owe may increase between the date of this letter and the date you reinstate the loan.  This is because of interest, late charges, advances and other amounts that may continue to accrue or will be incurred. You will also owe the amount of any monthly or other payments and late charges that may fall due after the date of this letter.  **Therefore, you may not rely on the amount shown above to be sufficient to cure your loan delinquency after today.**  It is necessary for you to contact Chase at the address or telephone number on this letter to verify the exact amount necessary to cure your delinquency and reinstate your loan no more than 24 hours before you make any payment.

Failure to cure the default within the 30-day period may result in Chase declaring the entire outstanding principal balance, accrued interest and any other fees and charges due under the terms of the Note and Security Instrument to be immediately due ("Acceleration").  If this amount is not immediately paid at such time, Chase may exercise any and all remedies available under the terms of the Note and Security Instrument and applicable law, including the commencement of foreclosure proceedings which may result in the sale of your property.

After acceleration, you will have the right to assert any grounds you may have to prove the non-existence of a default.  You may also reinstate your loan.  In addition, you will have the right in any related foreclosure proceedings to assert any defense to acceleration, the foreclosure action and, if applicable, the eventual sale of your property pursuant to a court order or trustee power of sale.

# Exhibit 3

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:   **$18.00**

RECORDED ON:   March 10, 2010

AS DOCUMENT NO:   10-116987

BY:   s/ Jenny Dang

LSI TITLE COMPANY (CA)

_____

Space above this line for recorder's use only

Trustee Sale No. 740587CA   Loan No. 3014277101   Title Order No. 100141544-CA-MAI

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may
have the legal right to bring your account in good standing by paying all of your past due payments plus
permitted costs and expenses within the time permitted by law for reinstatement of your account, which
is normally five business days prior to the date set for the sale of your property. No sale date may be set
until three months from the date this notice of default may be recorded (which date of recordation
appears on this notice).

This amount is $22,751.54 as of March 02, 2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in the
note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to
reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a
condition to reinstatement that you provide reliable written evidence that you paid all senior liens,
property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay. You may not have to pay the entire unpaid portion of your account, even though
full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the
notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to,
among other things, (1) provide additional time in which to cure the default by transfer of the property
or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits
a longer period, you have only the legal right to stop the sale of property by paying the entire amount
demanded by your creditor.



Trustee Sale No. 740587CA   Loan No. 3014277101   Title Order No. 100141544-CA-MAI

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY** is the duly appointed Trustee under a Deed of Trust dated 08-15-2007, executed by DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK,  FA, as Beneficiary Recorded 08-27-2007, Book , Page , Instrument 2007-0569430 of official records in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust. APN: 671-360-10 Situs: 5189 ARGONNE COURT, , SAN DIEGO, CA 92117 Including the note(s) for the sum of $520,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 09/01/2009 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

SEE ATTACHED DECLARATION

DATE: March 02, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

VREJ JOUKADARIAN
Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A
DEBT COLLECTOR ATTEMPTING TO COLLECT A
DEBT. ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.

**Borrowers:**          DAVID CARAVANTES

**Property Address:**   5189 ARGONNE CT, SAN DIEGO CA 92117

**Loan Number:**        3014277101

# DECLARATION OF COMPLIANCE
### *(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐   The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5.  Thirty days or more have elapsed since the borrower was contacted.

☒   The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐   The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

     ☐   The real property is not an owner-occupied single family residence.

     ☐   The loan was not originated between January 1, 2003 and December 31, 2007.

     ☐   The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

     ☐   The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

     ☐   The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

JP Morgan Chase Bank, National Association

Date:   03/01/10

City/State:  Jacksonville, Florida          Clement J. Durkin



# Exhibit 4

David Caravantes
5189 Argonne Court
San Diego, CA 92117

March 23, 2010

JPMorgan Chase Bank
National Association
7301 Bay Meadows Way
Jacksonville, FL 32256

Certified Mail Number
7009 2250 0001 9577 8491

Chase Home Finance, LLC
FL5-7730
PO BOX 44090
Jacksonville, FL 32231-4090

Certified Mail Number
7009 2250 0001 9577 8484

California Reconveyance Company
9200 Oakdale Ave.
Mail Stop: N110612
Chatsworth, CA 91311

Certified Mail Number
7009 2250 0001 9577 8453

MERS, Inc.
PO BOX 2026
Flint, MI 48501-2026

Certified Mail Number
7009 2250 0001 9577 8477

**RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF ALLEGED DEBT, REQUEST FOR VERIFICATION, VALIDATION, and TILA REQUEST**

NOTICE TO THE PRINCPALS IS NOTICE TO THE AGENTS
NOTICE TO THE AGENTS IS NOTICE TO THE PRINCIPAL

**This letter is a "Qualified Written Request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500, Regulation Z § 226 and the Gramm Leach Bliley Act.**

REF:   Alleged Account # **3014277101**, hereinafter referred to as the "Alleged Loan", is the reference for all questions and requests described below.

<u>Chase Home Finance, LLC</u> is herein referred to as "Alleged Mortgage Claimant" is the reference for all questions and requests described below.

To Whom It May Concern:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

It is my understanding that your company may have been accused or engaged in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about such

practices this mortgage company or anyone who has any interest in this matter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and disadvantaged, poor, elderly and minority Americans. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of your possession of the <u>original security instrument</u>, otherwise referred to the "promissory note" and/or "Deed of Trust" regarding any alleged loan associated with Alleged Account # 3014277101, Chase Home Finance, LLC. **Your failure to supply me with the original security instrument, will be positive confirmation that you never created and owned one.**

I also hereby demand that you promptly provide documentation of a chain of transfer between you, the Alleged Mortgage Claimant and wherever the security is now. Should you fail to provide evidence the security instrument, I <u>will be forceed to dispute the validity of your lawful ownership, funding, entitlement right, and the current alleged debt you allege I owe.</u> By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

**To independently validate any alleged debt, I need to conduct a complete exam, audit, review and accounting of any alleged debt from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the following requests.**

I also request that you conduct your own investigation and audit of this account since its inception to validate any alleged debt you currently claim I owe. I would like you to validate said alleged debt so that it is accurate to the penny.

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements or refuse to conduct a full audit and investigation of any alleged loan associated with said account. I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

1. Increased the amounts of alleged monthly payments;
2. Increased the principal balance I allegedly owe;
3. Increased any alleged escrow payments;
4. Increased the amounts applied and attributed toward alleged interest on this account;
5. Decreased the proper amounts applied and attributed toward the alleged principal on this account; and/or
6. Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing or lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of Alleged Account # 3014277101, Chase Home Finance, LLC by mortgage auditing and predatory servicing and lending experts. This exam and audit shall review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a **Qualified Written Request** under the **Real Estate Settlement Procedures Act (RESPA)**, codified as **Title 12 § 2605(e)(1)(B)(e)** and **Regulation X § 24 C.F.R §3500.21(f)2** of the United States Code as well as a request under the Truth In Lending Act [TILA] 15 U.S.C. § 1601 et. seq. RESPA provides substantial penalties and fines for non-compliance. Under RESPA you must answer my questions in full within (20) days of receiving this qualified written request.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested must demonstrate:

A. That the loan was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and especially, the Federal Trade Commission Act, Section 5, which identifies Unfair and Deceptive Acts and Practices (UDAP) and the appropriate CA statutes;

B. That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

C. That the claimed legitimate holder in due course of any alleged monetary instrument/deed of trust/mortgage instrument/asset, who is holding such alleged note in compliance with statutes, State and Federal laws, and is entitled to the benefits of any payments;

D. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original alleged loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

E. That each servicer and/or sub-servicer of said alleged loan account in accordance with statute, laws and the terms of any alleged mortgage, monetary instrument/deed of trust/mortgage instrument, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

F. That each and every servicer and/or sub-servicer in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

G. That this mortgage account has been credited, debited, adjusted, amortized, charged correctly, and disclosed fully, commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

H. That interest and principal properly calculated and correctly applied to this loan;

I. That the principal balance has been properly calculated, amortized and accounted for and has never at any time been charged, assessed or collected of fees or expenses, from this account or any other related account arising out of the alleged loan transaction, that were not disclosed or obligated to me in any agreement.

In order to validate said alleged debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, **certified**, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on the alleged loan, account, or my name.

As such, please send to me, at the address above, copies of the documents, front and back, requested below as soon as possible:

1. Any certified or uncertified security, front and back, used for the funding of Alleged Account # 3014277101;

2. Any and all "Pool Agreement(s)" or "servicing agreements", and any and all documents pertaining thereto, the nominal lender and any Government Sponsored Entity, hereinafter ("GSE"), or other party who could claim an interest in the alleged loan;

3. Any and all "Deposit Agreement(s)" regarding Alleged Account # 3014277101, or the "Pool Agreement" including Alleged Account # 3014277101 between Chase Home Finance, LLC and any GSE;

4. Any and all "Servicing Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

5. Any and all "Custodial Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party who could claim an interest in the alleged loan;

6. Any and all "Master Purchasing Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

7. Any and all "Issuer Agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

8. Any and all "Commitment to Guarantee" agreement(s), and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

9. Any and all "Release of Document agreement(s)", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

11. Any and all "Servicer's Escrow Custodial Account", and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties including any GSE or other party, who could claim an interest in the alleged loan;

12. Any and all "Release of Interest" agreement(s), and any and all documents pertaining thereto, between the nominal lender at any alleged loan closing, and any party or parties, including any GSE or other party, who could claim an interest in the alleged loan;

13. Any Trustee agreement(s), and any and all documents pertaining thereto regarding this account or any and all pool accounts, between the nominal lender at any alleged loan closing and any party or parties, including any GSE or other party who could claim an interest in the alleged loan;

14. Any documentation evidencing any trust relationship regarding any Mortgage/Deed of trust and any Note relating to this matter;

15. Any and all document(s) establishing the appointment any Trustee of record for the Mortgage/Deed of Trust and any Note;

16. Any and all document(s) establishing the date of any appointment of any Trustee Mortgage/Deed of Trust and any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s);

17. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

18. Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

19. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

20. Any documentation evidencing that this Mortgage/Deed of Trust is not a constructive trust, or any other form of trust;

21. All data, information, notations, text, figures and information contained in any mortgage servicing and accounting computer systems including, but not limited to, Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above;

22. All descriptions and legends of all Codes used in your mortgage servicing and accounting system, so that the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work;

23. All documentation of assignments, transfers, alonge, or other documents evidencing a transfer, sale or assignment of this mortgage, monetary instrument, or other document that secures payment by me to this obligation in this account from the inception of his account to the present date, including any such assignment on Mortgage Electronic Registration System, hereinafter, "MERS";

24. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage, including any such assignments on MERS;

25. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from inception of this account to the present date;

26. The front and back of each and every cancelled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account;

27. All escrow analyses conducted on this account from the inception of this account until the date of this letter;

28. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.;

29. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account;

30. All letters, statements and documents sent to me by your company;

31. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

32. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company;

33. All letters, statements and documents contained in said account file, including any servicers or sub-servicers of this mortgage from the inception of this account to the present date;

34. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument;

35. All copies of property inspection reports, appraisals, BPOs and reports done on my property;

36. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date;

37. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date;

38. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date;

39. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date;

40. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date;

So that I can conduct the audit and review of this account, and determine all proper amounts due, I further request the answers (in writing) to following questions concerning the servicing and accounting of this mortgage account from its inception to the present date:

## ACCOUNT ACCOUNTING AND SERVICING SYSTEMS

1. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that my experts can decipher the data provided.

2. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS AND CREDITS

1. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

## MORTAGAGE AND ASSIGNMENTS

1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt has been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date?

2. If NO, why not?

3. Is your company the servicers of this mortgage account or the holder in due course and the beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been records in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date?

5. If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on said alleged account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1. Have attorney fees ever been assessed to this account from the inception of this account to the present date?

2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3. Have attorney fees ever been charged to this account from the inception of this account to the present date?

4. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5. Have attorney fees ever been collected from this account from the inception of this account to the present date?

6. If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7. Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or security instrument or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9. Please detail and list for me in writing each separate attorney fee <u>assessed</u> from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10. Please detail and list for me in writing each separate attorney fee <u>collected</u> from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11. Please detail and list for me in writing any <u>adjustments</u> in attorney fees <u>assessed</u> and on what date such adjustment was made and the reason for such adjustment.

12. Please detail and list for me in writing any <u>adjustments</u> in attorney fees <u>collected</u> and on what date such adjustment was made and the reason for such adjustment.

13. Has interest been charged on any attorney fees assessed or charged to this account?

14. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account?

15. How much total in attorney fees have been assessed to this account from the inception to the present date?

16. How much total in attorney fees have been collected from this account from the inception to the present date?

17. How much total in attorney fees have been charged to this account from the inception to the present date?

18. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date?
2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.
3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS?
2. Has any previous servicers or sub-servicers of this alleged mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS?
3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time?
4. Are late fees considered interest?
5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.
6. Were any of these expenses or damages charged or assessed to this account in any other way?
7. If yes, please describe what expenses or damages were charged or assessed to this account.
8. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.
9. Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.
10. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust, or security instrument or any agreement I signed that authorized the assessment or collection of late fees.
11. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.
12. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.
13. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.
14. Has interest been charged on any late fee assessed or charged to this account?
15. Is interest allowed to be assessed or charged on late fees to this account?
16. Have any late charges been assessed to this account?

17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19. Have late charges been collected on this account from the inception of this account to the present date?

20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

## PROPERTY INSPECTIONS

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on my property from the inception of this account to the present date?

2. If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3. If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4. Please tell me the price charged for each property inspection.

5. Please tell me the date of each property inspection.

6. Please tell me the name and address of each company and person who conducted each property inspection on my property.

7. Please tell me why property inspections were conducted on my property.

8. Please tell me how property inspections are beneficial to me.

9. Please tell me how property inspections are protective of my property.

10. Please explain to me your policy on property inspections.

11. Do you consider the payment of inspection fees as a cost of collection?

12. If yes, why?

13. Do you use property inspections to collect debts?

14. Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe?

15. If yes, please answer when and why?

16. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust security instrument or any agreement I signed that authorized the assessment or collection of property inspection fees.

17. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance?

18. If yes, why?

19. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee?

20. If yes, why?

21. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?
25. Has interest been charged on any inspection fees assessed or charged to this account?
26. If yes, when and how much was charged?
27. Is interest allowed to be assessed or charged on inspection fees to this account?
28. How much total in inspection fees have been assessed to this account from the inception of this account to the present date?
29. How much total in inspection fees has been collected on this account from the inception of this account to the present date?
30. Please forward to me copies of all property inspections made on my property in this mortgage account file.
31. Has any fee charged or assessed for property inspections been placed into an escrow account?

## BPO FEES

1. Have any BPOs (Broker Price Opinions) been conducted on my property?
2. If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.
3. Please tell me the price of each BPO.
4. Please tell me who conducted the BPO.
5. Please tell me why BPOs were conducted on my property.
6. Please tell me how BPOs are beneficial to me.
7. Please tell me how BPOs are protective of my property.
8. Please explain your policy on BPOs.
9. Have any BPO fees been assessed to this account?
10. If yes, how much in total BPO fees have been assessed to this account?
11. Have any BPO fees been charged to this account?
12. If yes, how much in total BPO fees have been charged to this account?
13. Please tell me specifically, in writing, the clause, provision, paragraph, section or sentence, if any, in the note, mortgage, deed of trust or any agreement I signed or executed that authorized the assessment, charge or collection of a BPO fee from me.
14. Please send to me copies of all BPO reports that have been done on my property.
15. Has any fee charged or assessed for a BPO been placed into an escrow account?

## FORCE-PLACED INSURANCE

1. Have you placed or ordered any force-placed insurance policies on my property?
2. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed, security instrument or note.
3. Please tell me the price of each policy.
4. Please tell me the agent for each policy.
5. Please tell me why each policy was placed on my property.
6. Please tell me how the policies are beneficial to me.
7. Please tell me how the policies are protective of my property.
8. Please explain to me your policy on force-placed insurance.
9. Have any force-placed insurance fees been assessed to this account?
10. If yes, how much in total force-placed insurance fees have been assessed to this account.
11. Have any force-placed insurance fees been charged to this mortgage or escrow account?
12. If yes, how much in total force-placed insurance fees have been charged to this mortgage or escrow account?
13. Please identify for me in writing the clause, provision, paragraph, section or sentence of any note, mortgage, deed of trust, security instrument or any agreement I signed or executed that authorized the assessment, charge or collection of force-placed insurance fees from me.
14. Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15. Do you have any relationship with the carrier that issued any policies on my
16. Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.
17. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired?
18. Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question concerning the servicing of this account from its inception to the present date.

1. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2. Did the originator or previous servicers of this account have a warehouse account agreement or contract with your company or an affiliate of your company?

3. Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4. Please identify for me where the **originals of this entire account file** are currently located and how they are being stored, kept and protected.

5. **Where is the original monetary instrument or mortgage that I signed located?** Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

6. Where is the original deed of trust/security instrument or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

7. Since the inception of this account/loan, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8. Since the inception of this account/loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9. Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this alleged mortgage account.

11. Has this alleged mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this alleged mortgage has been a part of from the inception of this account to the present date.

12. Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this alleged mortgage account is located?

13. Has there been any electronic assignment of this alleged mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned mortgage servicing rights to this account

as well as the beneficial interest to the payments of alleged principal and alleged interest on this alleged loan.

14. Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17. How much was paid for this individual mortgage account by you, or any company you represent?

18. If part of a mortgage pool, what was the principal balance used by you, and your company to determine payment for this individual mortgage loan?

19. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

20. To whom did you issue a check or payment for obtaining this a mortgage loan?

21. Please provide me with copies of the front and back of any and all canceled checks.

22. Did any investor approve of the foreclosure of my property?

23. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24. Please identify all persons who would approve the foreclosure of my property.

Please produce the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document requests and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA request for accounting and legal records and Dispute of Debt letter will be sent to Federal Trade Commission (FTC), Housing and Urban Development (HUD), Office of Thrift Supervision, all relevant state and federal regulators and other consumer advocates, as well as my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct any abuse(s) or scheme(s) that may be uncovered and documented.

## Default Provision(s) under this QUALIFIED WRITTEN REQUEST

"Chase Home Finance, LLC, or any agents, transfers or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points contained here in this RESPA REQUEST", agrees and consents to including, but not limited to, any violations of law, and/or immediate termination/removal of any and all right, title and interest (liens) in any property or collateral connected to DAVID CARAVANTES or Account #3014277101, and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST.

1. David Caravantes' right, due to breach of contract and fiduciary responsibility by fraud and/or misrepresentation, to revocation and rescission of any and all power(s) of attorney or appointment of Chase Home Finance, LLC may have or may have had in connection with Account #3014277101, and any property and/or real estate connected with account # 3014277101.

2. David Caravantes' right to have any certified or uncertified security instrument associated with said account re-registered in David Caravantes', <u>and only</u> David Caravantes' name.

3. David Caravantes' right of collection against Chase Home Finance, LLC liability insurance and/or bond.

4. David Caravantes' entitlement to file and execute any instruments, as power of attorney for and by Chase Home Finance, LLC, including, but not limited to, by a new certificated security or any security agreement perfected by the filing of a UCC Financing Statement with the Secretary of State in the State where David Caravantes' property is located.

5. David Caravantes' right to damages because of Chase Home Finance, LLC wrongful registration, breach of intermediary responsibility, and improper accounting of the Note asset against which Chase Home Finance, LLC issued to DAVID CARAVANTES a certified check for the original value of David Caravantes' monetary instrument/Note.

6. David Caravantes' right to have loan or debt associated with account # 3014277101, completely set off because of Chase Home Finance, LLC' wrongful registration, breach of contract/intermediary responsibility with regard to David Caravantes' monetary instrument/asset by Chase Home Finance, LLC sending confirmation of the set off of wrongful liability of David Caravantes' and issuing a certified check for the difference between the original value of David Caravantes' monetary instrument/asset and what David Caravantes' mistakenly sent to Chase Home Finance, LLC as payment for such wrongful liability.

Chase Home Finance, LLC or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this "RESPA REQUEST" in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Chase Home Finance, LLC in accordance with Chase Home Finance, LLC Articles of Incorporation, and By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corporation/National Association.

Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within twenty days. If no verified rebuttal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as Alleged Mortgage Claimant's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

**Power of Attorney:** If Chase Home Finance, LLC fail to rebut <u>any part</u> of this "RESPA REQUEST", Chase Home Finance, LLC agree with the granting unto DAVID CARAVANTES an unlimited **Power of Attorney** and any and all full authorization in signing and endorsing Chase Home Finance, LLC name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement, or any agreement arising from this agreement. Pre-emption of or to any bankruptcy proceeding shall not discharge any obligation(s) of this agreement.

**Consent and agreement:** Chase Home Finance, LLC consent and are in agreement with this Power of Attorney and waive any and all claims of DAVID CARAVANTES, and/or defenses and said Power of Attorney remains in effect until the satisfaction of all obligation(s) by Chase Home Finance, LLC have been satisfied.

Respectfully yours,

**David Caravantes**
**Authorized Representative**
**Creditor, Secured Party**
**Beneficiary**

cc:    **Federal Trade Commission**          **Office of House Enterprise Oversight (OHEO)**
         **600 Pennsylvania Ave. NW**      **1700 G Street, NW, Fourth Floor**
         **Washington, DC 20580**          **Washington, DC 20552**

         **Office of Interstate Land Sales/RESPA Division**
         **Office of Housing, Room 9146**
         **Department of Housing and Urban Development**
         **451 Seventh Street, SW**
         **Washington, DC 20410**

**State of California**     )
                   )    **ss.**
**San Diego County**     )

**The above named, "David Caravantes" appeared and upon showing identification, subscribed and sworn before me,** _T. McNally_

**A Notary Public, this** _2-3rd_ **day of** _March_ , **2009.**

_7/4/10_
**My commission expires**

**Notary**

OFFICIAL SEAL
T. McNALLY
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 1672473
SAN DIEGO COUNTY
My Commission Exp. July 4, 2010

# Exhibit 5

**CALIFORNIA RECONVEYANCE COMPANY**
9200 Oakdale Avenue – CA2-4379
Chatsworth, CA 91311
(800)892-6902
(818)775-2258 Fax


March 26, 2010

David Caravantes
5189 Argonne Court
San Diego, CA 92117


| | |
|---|---|
| Loan No: | 3014277101 |
| T.S. No: | 740587CA |
| Owner(s): | DAVID CARAVANTES, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY |
| Property: | 5189 ARGONNE COURT SAN DIEGO, CA 92117 |

Dear David Caravantes:

California Reconveyance Company has received your letter dated 03/23/10 in our office on 03/25/10.  Please be advised that we have forwarded your letter on 03/26/10, to JPMorgan Chase Bank for review and response.

Sincerely,

CALIFORNIA RECONVEYANCE COMPANY



_____
CARLA DODD, ASSET RECOVERY SPECIALIST SR.
818-775-3092

# Exhibit 6



**Chase Home Finance LLC**
800 State Highway 121 Bypass
Lewisville, TX 75067

March 26, 2010

David Caravantes
5189 Argonne Court
San Diego, CA 92117

Re:     Loan Number          ******7191

Dear David Caravantes:

We are writing in response to your correspondence regarding your Qualified Written Request (QWR) for the above-mentioned mortgage.  This letter was forwarded to our office on March 26, 2010, for review.

We are investigating your issues and will work to provide you with a complete and accurate response.  Chase appreciates your patience in this matter.

Chase's goal is to provide the highest level of quality service.  In the interim period, you may contact our Customer Care unit at 1-800-848-9380.

Sincerely,


Home Lending Executive Office/j2b

# Exhibit 7

David Caravantes
5189 Argonne Court
San Diego, CA 92117

May 10, 2010

Vrej Joukadarian
Jenny Dang
Carla Dodd
California Reconveyance Company
9200 Oakdale Ave., Mail Stop: CA2-4379
Chatsworth, CA 91311

Re:   **Advisory to Legal Action** pertaining to:
Trustee Sale No. 740587CA
Loan No. 3014277101
Title Order No. 100141544-CA-MAI

To All Named Above:

In reference to your letter dated March 26, 2010, I would like to take this opportunity to thank you for the speedy response to my QWR; however, despite not receiving a certified letter in clear violation of *Cal. Civ. Code 2923.5(b) and 2943(b)*, I have recently been advised through other means, that JP Morgan Chase is attempting to foreclose on my home. Let me be perfectly clear, any attempt to perform a non-judicial foreclosure will be met with swift and harsh legal action in Federal Court on not only JP Morgan Chase, but California Reconveyance Company and all those individuals so named above acting in concert with the illegal actions of JP Morgan Chase.

As you know we have engaged a top ranked mortgage auditing firm. Upon preliminary review of our loan documents, they have advised us that JP Morgan Chase has violated many Federal RESPA and TILA laws, including, but not limited to:

- Failure to provide two copies of Right to Cancel; 12 C.F.R. § 226.23(b)
- Failure to provide the Truth-in-Lending disclosure; 12 C.F.R. §§ 226.17, 226.18
- Failure to make all legal relationships "conspicuously known"; 12 C.F.R. 226.23(a)(3)

In addition to the above, neither you, nor JP Morgan Chase, have legal standing per UCC 3301 and Article 3 to foreclose as neither of you are the "holder in due course" of the Note and lack the ability to enforce the Note. California Reconveyance Company is acting on behalf of JP Morgan Chase, a SERVICER of this loan, not the CREDITOR and thus has no right to foreclose due to (a) lack of proof of possession/enforceability of the Note and (b) unable to prove they have been financially harmed by my default. I am fully aware of the mortgage pool that my loan was entered into, the financial gain obtained from that pool and that a **Credit Default Swap** was also involved. My litigation team will make this extremely clear in court.

In summary, we will be filing a complaint against JP Morgan Chase in Federal Court requesting the court to investigate their legal standing to foreclose as a SERVICER. **If you continue to proceed with the foreclosure process, all of you (individuals) and your company will be so named as Co-Defendants.**

Respectfully,

David Caravantes

# Exhibit 8

# CHASE ⬡

Chase Home Finance LLC
800 State Highway 121 Bypass
Lewisville, TX 75067

June 3, 2010


David Caravantes
5189 Argonne Ct.
San Diego, CA 92117


Re:     Loan Number:        ******7101

Dear David Caravantes:

This letter is in response to the correspondence we received March 26, 2010, addressed to Chase
Home Finance LLC (Chase) regarding the above-referenced mortgage loan serviced by Chase.

Enclosed is a copy of the Note that was signed at the origination of the loan.  It is our position
that you have undertaken a valid, binding and legally enforceable obligation to Chase.
Furthermore, neither you nor any employee, officer, director, agent, representative, affiliate,
subsidiary, successor or assign has any authority to act on our behalf or on the behalf of any of
our parent, affiliates, subsidiaries, successors or assigns.

Enclosed please find a copy of the following documents:

> Adjustable Rate Note
> Security Instrument
> HUD-1 Settlement Statement
> Good Faith Estimate
> Truth in Lending Statement
> Loan Application
> Appraisal
> Notice of Right to Cancel/Disclosures
> Loan Transaction History

Any documents or information requested but not included with this package are unavailable or
considered proprietary, and will not be provided.

Page 2
Caravantes

## Account Accounting and Servicing

- The information requested under this section is proprietary and will not be provided.

## Debits and Credits

- Please refer to the enclosed loan history reconciliation for any questions regarding debits and credits.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

## Mortgage and Assignments

- Chase Home Finance LLC is the servicer of this mortgage loan.
- Any assignment of the Security Instrument, previous sellers, purchasers, assignors, and assignees would be a matter of public record.  Please review public record for this information.

## Attorney Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding attorneys' fees.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of attorneys' fees, or of our ability to assess and collect attorneys' fees.
- No interest has been charged on any attorneys' fees which may or may not have been assessed to this account.  Chase does not charge interest on any type of fees which may or may not have been assessed to this account.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

## Suspense/Unapplied Accounts

- For all questions, please refer to the enclosed loan history reconciliation.

## Late Fees

- Please refer to the enclosed loan history reconciliation for any questions regarding late charges assessed or collected.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of late charges, or of our ability to assess and collect late charges.

Page 3
Caravantes

**Property Inspections**

- Any questions regarding inspection fees assessed or collected please refer to the enclosed loan history reconciliation.
- Any questions regarding the applicability or nature of property inspection fees, or of our ability or requirement to conduct property inspections and assess and collect fees for the property inspections, please refer to the enclosed copy of the Security Instrument.

**BPO Fees**

- Please refer to the enclosed loan history reconciliation for any questions regarding fees assessed or collected in connection with any Broker's Price Opinion (BPO) that may have been ordered by Chase.
- Please refer to the enclosed copy of the Security Instrument for any questions regarding the applicability or nature of BPO fees, or of our ability to obtain a BPO on the property, or to assess and collect BPO fees.

**Forced-Placed Insurance**

- No force-placed insurance policies have been purchased for this loan.

**Servicing Related Questions/Other**

- Any assignment of the Security Instrument, previous sellers, purchasers, assignors, and assignees would be a matter of public record. Please review public record for this information.
- The investor for this loan is JPMorgan Chase Bank, N.A.
- Some of the information requested under this section is either proprietary or unavailable, and will not be provided.

Additionally, please be advised that the "Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent" and multiple documents included in the correspondence are invalid and are not recognized by any of the listed "Recipients." Please immediately advise if any documents in connection with the "Default Provision(s)" or "Power of Attorney" with any agency, court or other forum has been filed. We intend to take prompt action to see that any entity or individual with whom you have filed any such document is notified of its invalidity. Should one attempt to interfere with our lien interest in the property, we will investigate and determine the appropriate course of action, which may include initiating legal proceedings and/or reporting the situation to the appropriate government agency or law enforcement authorities.

Page 4
Caravantes

One should know that other borrowers have fallen victim to unlawful scams that include documents similar to the "Default Provision(s)" and "Power of Attorney" included with the Qualified Written Request that was sent to Chase. We are aware of advertising and other solicitations for borrowers to lodge such documents with their lender. The solicitations claim that the inclusion of "Default Provision(s)" and "Power of Attorney" will extinguish valid and legal debt obligations. These efforts are invalid, do not eliminate debt, and may be illegal. We strongly advise that the borrower consult an attorney or local law enforcement regarding any efforts to avoid your obligation, as well as the repercussions of the efforts taken so far.

Please note that foreclosure proceedings were initiated on this property. You may contact our foreclosure representative California Reconveyance Corporation at 800-892-6902 for information regarding those proceedings.

Chase's goal is to provide the highest level of quality service. If you have any questions, you may contact our Customer Service Department at 800-848-9136.

This letter shall not be deemed to be a waiver of any rights or remedies, which are expressly reserved.

Sincerely,

Chase Home Finance
Executive Resolution Group
qdw

Enclosures (9)

# Exhibit 9

one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 06-11-2010                              **SEE ATTACHED EXHIBIT**

Case 3:10-cv-01407-IEG -AJB  Document 1  Filed 07/06/10  Page 72 of 73

JS 44 (Rev. 12/07)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

David Caravantes, Pro Se

**DEFENDANTS**

CALIFORNIA RECONVEYANCE COMPANY, a California corporation; WASHINGTON MUTUAL BANK, ET AL.

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Los Angeles
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

5189 Argonne Court, SD, CA 92117, 858-490-1331

Attorneys (If Known)

'10 CV 1407 IEG  AJB

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC Sec 1601, 12 USC 2605, 15 USC 1639, 12 CFR 226.32, 18 USC 1961

Brief description of cause:
TILA, RESPA, HOEPA AND RICO VIOLATIONS

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  7/6/10

SIGNATURE OF ATTORNEY OF RECORD  DC

**FOR OFFICE USE ONLY**

RECEIPT #  1535  AMOUNT  $350—  APPLYING IFP  JUDGE  MAG. JUDGE

CF  PD 07-06-10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS015351
Cashier ID: mbain
Transaction Date: 07/06/2010
Payer Name: CARAVANTES V CA RECONVEYANCE C
-----------------------------------
CIVIL FILING FEE
 For: CARAVANTES V CA RECONVEYANCE C
 Case/Party: D-CAS-3-10-CV-001407-001
 Amount:        $350.00
-----------------------------------
CASH
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```

**PROOF OF SERVICE BY MAIL**
**Caravantes v. California Reconveyance Company, et al**
**Case Number: 10-CV-1407-IEG (AJB)**

David Caravantes
55189 Argonne Court
San Diego, California 92117
Tel: (858)490-1331
Fax: (858)490-9191

I reside in the County of San Diego, State of California.  I am over the age of eighteen years and not a party to this action. My business address is 3895 Pacific Highway, San Diego, CA 92110.

On November 3, 2010, I served the foregoing document described as **VERIFIED FIRST COMPLAINT** on interested parties in said action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Attn.: John M. Sorich
S. Christopher Yoo
Lauren M. Takos
Adorno, Yoss, Alvarado & Smith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707

BY MAIL AS FOLLOWS: I deposited with the U.S. Postal Service with postage thereon fully prepaid at San Diego, California on the date listed below.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in the affidavit.

STATE-I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXECUTED ON November 3, 2010, at San Diego, California.

Signed: _____
Print Name

1