# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CARAVANTES, an individual,<br><br>                      Plaintiff,<br><br>  vs.<br><br>CALIFORNIA RECONVEYANCE COMPANY, a California corporation; WASHINGTON MUTUAL BANK, FA, a Federal Savings Bank organized and existing under the laws of the United States; CHASE HOME FINANCE LLC, a Delaware Limited Liability Company; VREJ JOUKADARIAN, an individual, CLEMENTS J. DURKIN, an individual, DEBORAH BRIGNAC, an individual, ANN THORN, an individual, and DOES 1-20, inclusive,<br><br>                      Defendants. | CASE NO. 10-CV-1407 - IEG (AJB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 20] |

      This is a mortgage case. Plaintiff's First Amended Complaint ("FAC") asserts six causes of action arising from Defendants' conduct in issuing and servicing a mortgage loan, as well as their conduct in initiating non-judicial foreclosure proceedings when Plaintiff defaulted on the loan. [Doc. No. 18.] Presently before the Court is a motion to dismiss brought by certain Defendants: California Reconveyance Company; JPMorgan Chase Bank, N.A., an acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC acting as receiver; Chase Home Finance LLC; and Deborah Brignac (collectively "Defendants" or "the moving Defendants"). [Doc. No. 20.] Defendants seek dismissal of three of Plaintiff's causes of action. [*Id.*] For the reasons described below, the Court **GRANTS** Defendants' motion.

# BACKGROUND

Plaintiff became the owner of property located at 5189 Argonne Court, San Diego, CA 92117 on or about August 15, 2007. [*See* FAC ¶¶ 5, 17.] He acquired the property via a loan from Defendant Washington Mutual Bank, F.A. ("WaMu"). [*Id.* ¶ 18.] The corresponding Deed of Trust was recorded in San Diego on August 27, 2007. [*Id.*] The Deed of Trust identified Defendant WaMu as the lender and Defendant California Reconveyance Company ("CRC") as the trustee. [*Id.*]

Plaintiff appears to have experienced problems in making his loan payments when his income decreased dramatically in 2008. [*Id.* ¶ 20.] In September 2008, after Defendant WaMu closed, Plaintiff alleges he received a form letter stating that Defendant WaMu had become Defendant JPMorgan Chase Bank, N.A. ("JPMorgan"). [*Id.* ¶ 21.] Plaintiff subsequently received statements from Defendant Chase Home Finance LLC ("Chase"), and he directed payments to Chase, assuming that Chase was the new servicer of his loan. [*Id.*]

In or around November 2009, Plaintiff received a letter from the Chase Home Ownership Preservation Office stating that many Americans are experiencing difficulty with their mortgage payments and that if Plaintiff was experiencing financial difficulty, there were some options available to him that would assist him with making payments. [*Id.* ¶ 22.] Plaintiff subsequently received several additional letters of the same nature. [*Id.*] According to Plaintiff, none of these letters discussed Plaintiff's actual financial situation. [*Id.*]

On January 25, 2010, Defendant Chase mailed Plaintiff a letter titled "Notice of Collection Activity," alleging Plaintiff was in default under the terms of his loan. [*Id.* ¶ 23.] The letter did not attempt to discuss any options available to Plaintiff to avoid foreclosure other than paying the full amount allegedly due. [*Id.*] On March 10, 2010, Defendant CRC recorded a Notice of Default on Plaintiff's property. [*Id.* ¶ 24.] The Notice of Default was accompanied by a Declaration of Compliance signed by Defendant Durkin for JPMorgan. [*Id.* ¶ 25.] The Declaration of Compliance indicates that the "mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower" to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code § 2923.5, and that

more than thirty days had elapsed since due diligence was completed. [*Id.* ¶ 26.] However, except for the generic letters discussed above, none of the Defendants sent any letters or made any phone calls to Plaintiff concerning his personal financial situation and options to avoid foreclosure that were specifically available to him. [*Id.* ¶ 27.]

In March 2010, Plaintiff began investigating his legal rights concerning the foreclosure and retained a mortgage auditing firm. [*Id.* ¶ 28.] On March 23, 2010, Plaintiff sent a Qualified Written Request ("QWR") letter to Defendants CRC, JPMorgan, and Chase. [*Id.* ¶ 29.] The letter made several requests for documentation and information concerning Plaintiff's loan. [*Id.*] Defendant CRC acknowledged the receipt of the letter on March 26, 2010 and stated that it forwarded the letter to Defendant JPMorgan. [*Id.* ¶ 30.] Also on March 26, 2010, Defendant Chase acknowledged the receipt of Plaintiff's letter and indicated that a further response would be forthcoming. [*Id.*] On June 3, 2010, Chase responded to Plaintiff's letter, providing some of the requested information and indicating that other information was being withheld because it was either proprietary or unavailable. [*Id.* ¶ 32.]

On June 11, 2010, Defendant CRC executed a Notice of Trustee's Sale, indicating that the sale was scheduled for July 6, 2010 at 10:00 a.m. [*Id.* ¶¶ 33, 34.] The Notice of Trustee's Sale was accompanied by a Declaration Pursuant to California Civil Code Section 2923.54, stating that the undersigned loan servicer had complied with the requirements under Section 2923.54. [*Id.* ¶ 35.]

Based on the foregoing, Plaintiff cannot determine who directed Defendant CRC to conduct the Trustee's Sale of the Property. [*Id.* ¶ 36.] Plaintiff contends he never received anything indicating that JPMorgan was the new beneficiary. [*Id.*] As such, Plaintiff believes Defendant JPMorgan is not and was not the holder of the Note, in possession of the Note, or otherwise entitled by law to initiate a non-judicial foreclosure under the Deed of Trust or to direct Defendant CRC to foreclose and sell the property. [*Id.* ¶ 37.]

Plaintiff filed suit in July 2010. The Court issued a temporary restraining order and preliminary injunction, [Doc. Nos. 6 and 10], and later granted in part and denied in part Defendants' motion to dismiss, [Doc. No. 17.] Plaintiff filed the FAC in November 2010, [Doc.

1  No. 18], and Defendants filed the present motion soon thereafter, [Doc. No. 20]. When the parties
2  indicated at oral argument that their dispute might be resolved were Plaintiff to obtain a loan
3  modification, the Court postponed ruling on the motion and directed the parties to discuss loan
4  modification options before the Magistrate Judge. Those discussions may yet prove fruitful, but
5  the Court must nevertheless keep the case moving by issuing the present Order.

## DISCUSSION

### I.    Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**II.   Analysis**[1]

    **A.   Second Cause of Action: Real Estate Settlement Procedures Act (RESPA)**

Plaintiff alleges the moving Defendants violated RESPA by failing to adequately respond to his Qualified Written Request ("QWR") letter. [*See* FAC ¶¶ 59-64, 66-67.]

A QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that -- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Upon receipt of a QWR, a loan servicer must provide a letter of acknowledgment within twenty business days and a response within sixty business days. 12 U.S.C. § 2605(e)(1)-(3). The requirements for an adequate response are limited. "Section 2605 only requires servicers to respond to a proper QWR by correcting the account discrepancy, explaining why the account is correct, or if the information is unavailable, by providing contact information for someone who can assist the borrower with her inquiry." *Simila v. American Sterling Bank*, 2010 WL 3988171, at *3 (S.D. Cal. Oct. 12, 2010) (citation omitted).

A loan servicer who fails to adequately respond to a QWR may be liable for actual or statutory damages, or both, as well as reasonable costs and attorney's fees. 12 U.S.C. § 2605(f)(1)(A)-(B). To recover actual damages, a plaintiff must state allegations demonstrating pecuniary loss. *See, e.g.*, *Amaral v. Wachovia Mortgage Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010) (dismissing RESPA claim because Plaintiff's damages allegation did not amount to a factual allegation, only a conclusory statement of law); *Garcia v. Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (same). To recover statutory damages (up to $1,000), a plaintiff must plead a pattern or practice of noncompliance with RESPA. *Lal v. Am. Home*

---

[1] Plaintiff's FAC contains six causes of action, but the moving Defendants seek dismissal of three causes of action only. Plaintiff's first and third causes of action are directed exclusively to WaMu and FDIC, [Doc. No. 18], and the Court previously held Plaintiff adequately alleged that Defendants violated California Civil Code § 2923.5, [Doc. No. 17]. Accordingly, the Court addresses only Plaintiff's second, fourth, and fifth causes of action here (alleging violation of RESPA, civil conspiracy and unfair business practices, respectively).

1 *Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010).

2     Defendants maintain Plaintiff's allegations fail to demonstrate that he suffered pecuniary loss as a result of JPMorgan and Chase's alleged failure to adequately respond to his QWR letter. [*See* Defs.' Mot. at 3.] In addition, Defendants contend Plaintiff has not alleged facts demonstrating entitlement to statutory damages, noting Plaintiff's pattern and practice allegations are directed to WaMu and noting the absence of allegations suggesting Defendants made it a regular practice to ignore the provisions of RESPA. [*Id.* at 4.]

    The Court agrees that Plaintiff has not adequately pleaded entitlement to statutory damages. Plaintiff does not allege the moving Defendants engaged in a pattern or practice of noncompliance with RESPA, instead directing his pattern and practice allegations to WaMu (and FDIC as receiver). [*See* FAC ¶¶ 53-67.]

    Likewise, the Court agrees that Plaintiff has not adequately pleaded pecuniary losses. Plaintiff contends he has "incurred costs in filing fees, a loan audit, and legal consultation in order to [] determine his rights under the loan documents he signed." [FAC ¶ 66.] To the extent Plaintiff maintains Defendant's response interfered with his ability to determine the status of his account, Plaintiff has not alleged a pecuniary loss. *See Joern v. Ocwen Loan Servicing, LLC*, 2010 WL 3516907, at *3 (E.D. Wash. Sept. 2, 2010).

    More fundamentally, RESPA does not require loan servicers to respond to broad requests for information in a QWR. Under RESPA, Defendants were required to explain and correct any discrepancy identified by Plaintiff or, if the information was unavailable, to provide contact information for an individual or office capable of providing further assistance. *See* 12 U.S.C. § 2605(e)(2)(A)-(C); *Simila v. American Sterling Bank*, 2010 WL 3988171, at *3 (S.D. Cal. Oct. 12, 2010) (citation omitted). Plaintiff's QWR did not identify a specific discrepancy; it asked for a broad range of information pertaining to the subject loans. [*See* FAC, Ex. 4 (Plaintiff's QWR).] Defendant Chase responded by letter and appears to have provided Plaintiff with extensive

documentation.[2] [*See* FAC, Ex. 8 (Response to QWR by Defendant Chase).] Defendant Chase noted that any other information was unavailable and provided contact information for further assistance. [*See id.*] In sum, Chase adequately responded to Plaintiff's QWR.

Based on the foregoing, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's second cause of action.

### B.  Fourth Cause of Action:  Civil Conspiracy

Plaintiff alleges Defendants "conspired and agreed to implement a scheme to defraud and victimize Plaintiff through the unlawful acts alleged herein." [FAC ¶ 74.]

Civil conspiracy is "not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994). The elements of civil conspiracy are (1) the formation and operation of the conspiracy, (2) a wrongful act done pursuant to the conspiracy, and (3) damage resulting to the plaintiff from the act. *See id.* "Plaintiff must allege facts showing the role each defendant allegedly played in the conspiracy . . ." *Green v. Alliance Title*, 2010 WL 3505072, at *12 (E.D. Cal. Sept. 2, 2010); *Velasquez v. Chase Home Finance LLC*, 2010 WL 3211905, at *5 (N.D. Cal. Aug. 12, 2010).

In this case, Plaintiff's FAC alleges: that JPMorgan "specifically negotiated for the FDIC to absorb WaMu's liability in selling predatory loans to unknowing borrowers so that JPMorgan could profit on foreclosing on said borrowers without having to face the predatory lending causes of action which JPMorgan knew or reasonably should have known WaMu could be liable for"; that JPMorgan "enlisted the assistance of Chase Home Finance and CRC to institute unlawful foreclosures as quickly as possible"; and that JPMorgan encouraged Chase Home Finance to fail to offer Plaintiff any options to avoid foreclosure."

However, Plaintiff does not set forth any specific facts regarding the formation or operation of a conspiracy or a wrongful act by Defendants. JPMorgan did not commit a wrongful act in

---

[2] Defendant Chase provided the following documents: copies of the Adjustable Rate Note, Security Instrument, HUD-1 Settlement Statement, Good Faith Estimate, Truth in Lending Statement, Loan Application, Appraisal, Notice of Right to Cancel/Disclosures, and a Loan Transaction History.

seeking to avoid liability for the wrongful acts of WaMu. *See West Park Assocs. v. Butterfield Sav. & Loan Ass'n*, 60 F.3d 1452, 1459 (9th Cir. 1995) (noting the FDIC has "broad powers to allocate assets and liabilities" of a failed institution). Nor has Plaintiff alleged specific facts in support of his theory that Defendants' conduct in instituting foreclosures is unlawful. *See generally* FAC. Plaintiff's allegations do not raise his right to relief above a speculative level. *See Twombly*, 550 U.S. at 555. Because the Court is persuaded that amendment would be futile, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990), the Court **DISMISSES** Plaintiff's fourth cause of action **WITH PREJUDICE**.

### C. Fifth Cause of Action: Unfair Competition Law (UCL)

Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999).

Plaintiff's UCL claims against JPMorgan and Chase are appropriately construed as alleging unlawful business practices. Plaintiff alleges JPMorgan and Chase violated RESPA by inadequately responding to Plaintiff's QWR. Because the Court has concluded that JP Morgan and Chase did not violate RESPA, Plaintiff's UCL claim against those Defendants must fail. *See Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1011 (N.D. Cal. 2011) ("Where a plaintiff cannot state a claim under the 'borrowed' law, he or she cannot state a [claim under the UCL] either") (citation omitted).

Plaintiff also alleges that certain Defendants engaged in fraudulent business practices. He alleges that "Defendants Joukadarian, Durkian, Brignac and Thorn have engaged in giving false and improper declarations in support of the other Defendants unlawful activities." [FAC ¶ 90.] Without more, the foregoing allegation is insufficient to provide Defendants with adequate notice of the claims against them. *See Fortaleza*, 642 F. Supp. 2d at 1020 (dismissing UCL claim because plaintiff failed to allege "with 'reasonable particularity' the facts surrounding any purportedly fraudulent statements made by defendants-i.e., the who, what, where, and when of such statements").

1   Last, Plaintiff alleges Defendant CRC failed "to conduct a diligent investigation as to the
2   validity of said foreclosure for pecuniary gain." [FAC ¶ 89.] Though unclear as to which
3   particular prong of the UCL Plaintiff's allegation is directed to, the Court concludes the allegation
4   is too vague to state a plausible claim against CRC under any prong of the UCL. However, the
5   Court will allow Plaintiff to amend his complaint in order to bolster his allegations.
6   Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's fifth cause of
7   action.

## CONCLUSION

9   For the foregoing reasons, the Court **GRANTS** the moving Defendants' motion to dismiss
10  and **ORDERS** as follows:
11  –   Plaintiff's second and fifth causes of action are **DISMISSED WITHOUT**
12  **PREJUDICE**.
13  –   Plaintiff's fourth cause of action is **DISMISSED WITH PREJUDICE**.
14  **IT IS SO ORDERED.**
15  **DATED:  August 3, 2011**

*[signature]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**